## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS, L.P.** *et al.,*[1] | § | **Case No. 17-33203** |
| | § | |
| | § | **Jointly Administered** |
| **DEBTORS.** | § | |
| | § | **(Chapter 7)** |

**TRUSTEE'S EMERGENCY MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363 AND BANKRUPTCY RULES 2002, 6004, AND 6006, FOR ENTRY OF (I) ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTORS, (B) APPROVING FORM AND MANNER OF NOTICE, (C) APPROVING BREAK-UP FEE, AND (D) SCHEDULING AUCTION AND SALE HEARING, AND (II) ORDER (A) APPROVING PURCHASE AGREEMENT, (B) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (C) GRANTING RELATED RELIEF**

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY

---

[1] The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, chapter 7 trustee for the estates of the debtors in the above-captioned chapter 7 cases (collectively, the "Debtors"), files this *Emergency Motion, pursuant to Bankruptcy Code Sections 105(a) and 363, and Bankruptcy Rules 2002, 6004, and 6006, for Entry of: (I) Order (A) Approving Sale and Bidding Procedures in Connection with the Sale of Certain Assets of the Debtor, (B) Approving Form and Manner of Notice, (C) Approving Break-Up Fee, and (D) Scheduling Auction and Sale Hearing, and (II) Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (C) Granting Related Relief* (the "Motion").  In support of the Motion, the Debtor respectfully submits the following:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are §§ 105(a) and 363(b), (f), and (m) of the title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal  Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.      The Debtors' Business**

2.      Before filing for bankruptcy, the Debtors operated engineering, procurement, and construction companies that focused on modular systems design and fabrication for petroleum refiners and related industries.

2

3.      As design companies, the Debtors created or accumulated various types of intellectual property, including know-how, trade secrets, confidential or proprietary information, technical information, data, process technology, plans, drawings, blue prints, design documents, design standards, design data, project documentation, quality control records and documentation, vendor records, specifications, previous project references, estimating data (including past estimates), project control data, and tools including engineering measurement systems (collectively, "Intellectual Property").  The Debtors stored their Intellectual Property on an internal server, though in some cases specialized software was necessary to access the Intellectual Property.

4.      The Debtors operated their business from an office building in Pasadena, Texas. The building contained hundreds of computers, cubicles, desks, and similar office equipment.

5.      On May 26, 2017 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code thereby commencing the Chapter 7 Cases.

6.      Rodney D. Tow was appointed as chapter 7 trustee for the Debtors' estates on May 30, 2017.

## THE SALE PROCESS

7.      By this Motion, the Trustee seeks authority to sell certain of the Debtors' assets (collectively, the "Transferred Assets"), which are defined and described in further detail in the form of the Stalking Horse Purchase and Sale Agreement (the "Stalking Horse Purchase Agreement"), which is attached to this Motion as Exhibit A.  The Trustee believes that the procedures proposed herein with respect to the sale of the Transferred Assets (the "Sale") are the best way to maximize the value of these assets for the Debtors' estates for their creditors and stakeholders under the circumstances.

3

### A.    Background

8.    Shortly after the Petition Date, the Trustee received inquiries from several parties who were interested in purchasing the Debtors' Intellectual Property.  One of those parties, ANEAN Consulting, LLC/ KHE USA LLC (jointly, "ANEAN"), submitted a letter of intent to purchase (i) the Intellectual Property on Ventech's servers; (ii) the rights to use the "Ventech" name; and (iii) certain computer and office equipment.

9.    ANEAN agreed to serve as a stalking horse bidder during the sale process in return for a $10,000 break-up fee (the "Break-Up Fee").  Pursuant to the terms of the Stalking Horse Purchase Agreement, ANEAN has offered to acquire the Transferred Assets for $140,000.00.

10.    Other parties expressed interest but did not submit formal bids or letters of intent. This may be due to technical limitations.  Because the Intellectual Property is stored on Ventech's servers (which were left idle after the Debtors filed for bankruptcy), parties have been unable to examine or review the Intellectual Property.  Some of ANEAN's employees, however, are former employees of the Debtors and are already familiar with the content of the Debtors' Intellectual Property.

11.    If there are other potential bidders that want to conduct due diligence on the Intellectual Property, the Trustee intends set up a computer terminal that will allow potential bidders to examine the Intellectual Property.

12.    Thus, despite the lack of other letters of intent, the Trustee believes that a public auction process is necessary to ensure that the Debtors' estates obtain the best possible price for the Transferred Assets.  Specifically, the Trustee has concluded that: (a) a prompt and open sale of the Transferred Assets in which all interested buyers are encouraged to participate is the best

way to maximize value for the Debtors' estates under the circumstances and (b) the proposed

Sale Procedures described herein are the most effective method of obtaining the highest and best

offer for the Transferred Assets.

### B.    The Sale Procedures

13.    The Trustee proposes to conduct the sale of the Transferred Assets through the

sale and bidding process described below (the "Proposed Sale Process") to ensure that the

Debtors' estates realize the maximum value for the Transferred Assets.  The Transferred Assets

shall be sold to one or more purchasers (each, a "Purchaser"), as may be determined by the

Trustee in his business judgment.

14.    To optimally and expeditiously solicit, receive, and evaluate bids in a fair and

accessible manner, the Trustee has developed and proposed bid procedures to govern the Sale

(the "Sale Procedures"), which are attached as Exhibit 1 to the Sale Procedures Order attached

hereto (the "Sale Procedures Order").  The Sale Procedures are designed to encourage all entities

to put their best bids forward and to maximize the value of the Transferred Assets.

15.    The Trustee requests that this Court approve the Proposed Sale Process and the

Bidding Procedures, the material terms of which are as follows:[2]

- Sale Notice.  Within three days of the entry of an order approving these
  sale procedures (the "***Sale Procedures Order***"), the Trustee (or his
  representative) shall serve the Notice of Auction and Sale Hearing (the
  "***Sale Notice***"), substantially in the form attached hereto, by first-class
  mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery
  or electronic transmission, upon (i) the Office of the United States Trustee
  for the Southern District of Texas, and (ii) all known creditors and parties-
  in-interest in these chapter 7 cases, including (a) all parties listed on the
  Debtors' schedules, (b) all parties requesting notice in this chapter 7 case
  pursuant to Bankruptcy Rule 2002; and (c) all entities known to have

---

[2]    This summary is qualified in its entirety by the Bidding Procedures. All capitalized terms that are used
in this  summary but not otherwise defined herein shall have the meaning ascribed such term in the Bidding
Procedures. To  the extent there are any conflicts or inconsistencies between this summary and the Bidding
Procedures, the terms of  the Bidding Procedures shall govern in all respects.

asserted any claim, lien, encumbrance or interest in the Transferred Assets.

- <u>Stalking Horse Bidder</u>.  The Trustee has identified ANEAN Consulting, LLC/KHE USA LLC as a stalking horse bidder (the "***Stalking Horse Bidder***") and entered into a purchase agreement with the Stalking Horse Bidder (the "***Stalking Horse Purchase Agreement***"), which proposes to purchase the Transferred Assets for $140,000.00.  Further, the Sale Procedures Order approved a break-up fee in the amount of $10,000 for the Stalking Horse Bidder.

- <u>Qualified Bidder</u>.  Unless otherwise determined by the Trustee, in order to participate in the Bidding Process, prior to the Bid Deadline (defined below), each person or entity wishing to participate in the Bidding Process must submit to the Trustee the following information:

  (1)   An executed confidentiality agreement containing provisions satisfactory to the Trustee.

  (2)   Its most recent financial statements, current financial statements of its owners, or such other financial information, as the Trustee may reasonably determine, that demonstrates the financial capability of the party to consummate the sale of the Transferred Assets within the timeframe set forth herein and under the terms and conditions of the Stalking Horse Purchase Agreement.

  (3)   A preliminary (non-binding) written statement demonstrating, to the Trustee's satisfaction, a bona fide interest in purchasing the Transferred Assets from the Debtors, including: (i) the purchase price range (including liabilities, if any, to be assumed by the potential bidder); (ii) a description of the principal methodologies and assumptions used to arrive at the purchase price range; (iii) a description of the additional due diligence required; (iv) a description of any services or other cooperation that the prospective bidder will require from the Trustee after closing and (v) any conditions to closing that the prospective bidder may wish to impose in addition to those set forth in the Stalking Horse Purchase Agreement.

- If the Trustee determines that a party has satisfied the foregoing, then the party is a "***Qualified Bidder***."  As promptly as practicable after a prospective bidder delivers all of the materials required above, the Trustee will determine, and will notify the prospective bidder, if such prospective bidder is a Qualified Bidder.  The Stalking Horse Bidder is deemed a Qualified Bidder.

- <u>Due Diligence</u>.  The Trustee shall provide the Qualified Bidders access to

the Debtors' books and records and reasonable onsite inspection in order conduct their due diligence investigation regarding the Transferred Assets. To the extent the Transferred Assets are in electronic format, the Trustee shall provide Qualified Bidders access to a computer terminal equipped with the software necessary to access the electronic Transferred Assets. All Qualified Bidders must complete their due diligence prior to the Auction.

- <u>Qualified Bids</u>.  In order to constitute a "***Qualified Bid***," a Qualified Bidder must submit to the Trustee the following (the "***Bid Package***") by the Bid Deadline:

    (1)     A purchase agreement (a "***Alternate Purchase Agreement***") for all or part of the Transferred Assets with terms not materially more burdensome to the Trustee or the Debtors' estates than the Stalking Horse Purchase Agreement or otherwise inconsistent with these Sale Procedures, which (a) has been executed by a person with authority to irrevocably bind the bidder; (b) does not provide for the payment to the bidder of any break-up fee, topping fee, expense reimbursement or other similar arrangement; (c) is not subject to any financing contingency, any contingency relating to the completion of unperformed due diligence, any contingency relating to the approval of the bidder's board of directors or other similar internal approvals or consents, any contingency relating to a material adverse change, or any other material conditions precedent to the bidder's obligation to close; (d) is subject to acceptance by the Trustee, on behalf of the Debtors' estates, solely by the Trustee's execution of the Alternate Purchase Agreement and approval of the Alternate Purchase Agreement by the Bankruptcy Court;

    (2)     A document reflecting the differences between the Stalking Horse Purchase Agreement and the Alternate Purchase Agreement which may be prepared with a document comparison/redlining software;

    (3)     A bank account statement or other records that show the source of funds for the bidder's proposed purchase of the Transferred Assets;

    (4)     A signed statement of the bidder (a) disclosing any formal or informal agreements or understandings reached by the bidder with parties-in-interest in the Bankruptcy Case in connection with the bid (or that no such agreements or understandings exist); (b) acknowledging that if chosen as the Successful Bidder (defined below), such bidder can consummate the purchase of the Transferred Assets promptly upon approval of the Bankruptcy Court; and (c) agreeing that the bidder's offer in the Alternate Purchase Agreement is irrevocable until (3) business days after the

entry of an order of the Bankruptcy Court approving the Successful Bid (defined below); and

(5)     a deposit (the "***Earnest Money Deposit***") in an amount equal to the greater of ten percent (10%) of the purchase price and $15,000.00 made by cashier's check or by wire transfer of immediately available funds to the Trustee.  Wire transfer instructions may be obtained from the Trustee.

- For the avoidance of doubt, the Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Purchase Agreement is deemed a Qualified Bid, for all purposes in connection with the Bidding Process and the Auction.  Bank of America, N.A. ("***BANA***") shall also be deemed a Qualified Bidder with the ability to credit bid the full amount of its secured claim in the event that a Qualified Bid that exceeds the Stalking Horse initial bid is received by the Trustee before the Bid Deadline; provided, however, that the Trustee shall not consummate a sale of the assets for an amount less than the Stalking Horse bid, without the approval of BANA.

- <u>Recognition of Stalking Horse Bid</u>.  In the event that the Trustee does not receive a Qualified Bid, other than the Stalking Horse Bid, on or before the Bid Deadline, the Stalking Horse Bid shall be deemed to be the Successful Bidder.

- <u>Earnest Money Deposit</u>.  Each Earnest Money Deposit shall be held in escrow by the Trustee until three (3) business days after the closing of the sale of the Transferred Assets (the "***Earnest Money Refund Date***").  If the Successful Bidder (defined below) subsequently defaults or breaches the Successful Bidder's Alternate Purchase Agreement, then the Earnest Money Deposit submitted by such Successful Bidder, together with any accrued interest, shall be deemed forfeited and shall be retained by the Trustee for the benefit of the Debtors' estates.  Any Earnest Money Deposit paid by a bidder who is not selected as the Successful Bidder or Back-Up Bidder shall be returned by the Trustee on or before the Earnest Money Refund Date.

- <u>Bid Deadline</u>.  All Bid Packages must be submitted to (i) the Trustee's counsel, Charles M. Rubio, Diamond McCarthy LLP, 909 Fannin Street, 37th Floor, Houston, Texas 77010, (crubio@diamondmccarthy.com); and (ii) BANA's counsel, Toby L. Gerber, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201, (toby.gerber@nortonrosefulbright.com) so as to be <u>received</u> not later than 5:00 p.m. (CST) on November 13, 2017 (the "***Bid Deadline***") or such later date or time that the Trustee, in his reasonable discretion, establishes as the Bid Deadline.

- Auction.  If the Trustee receives one or more Qualified Bids in addition to the Stalking Horse bid, then on November 16, 2017 (the "***Auction Date***"), beginning at 10:00 a.m., at the offices of Diamond McCarthy LLP, 909 Fannin Street, 37th Floor, Houston, Texas 77010, or at such other location as may be designated by the Trustee, the Trustee will conduct an auction (the "***Auction***") to determine the highest or best bid.  The Trustee may conduct the Auction in the manner he determines will achieve the maximum recovery for the Debtors' estates.  Only the Trustee, BANA, and Qualified Bidders who have submitted Qualified Bids, and their respective professionals, shall be permitted to attend the Auction, and only Qualified Bidders who have submitted Qualified Bids shall be eligible to participate in (i.e., bid at) the Auction.  No later than 24 hours prior to the Auction Date, the Trustee will notify the Qualified Bidders who have submitted Qualified Bids of the terms and conditions of the then-highest and best bid for the purchase of all of the Transferred Assets (the "***Initial Bid***").  The Auction may be adjourned at any time and from time to time without further notice except by announcement of the adjourned date or dates prior to or at the Auction or any adjournment thereof.

- Auction Process.  The Trustee shall commence the Auction with the Initial Bid.  Qualified Bidders will be permitted to increase their bids and to agree to modifications to their bids in order to make their bids more favorable to the Debtors' estates, provided that each bid subsequent to the Initial Bid shall be at least $15,000 greater than the preceding bid (the "***Incremental Bid Amount***").  When evaluating the bids, the Trustee shall, in consultation with BANA, consider the financial and contractual terms of each bid and factors affecting the speed and certainty of closing with respect to each bid.  Such bidding shall continue until the Trustee concludes the Auction of the Transferred Assets.  At the conclusion of the Auction, the Trustee, in consultation with BANA, shall identify the highest and best bid (the "***Successful Bid***"), based upon the foregoing Auction process and the Trustee's determination of the highest or otherwise best bid from a qualified bidder (the "***Successful Bidder***").  The Trustee shall retain full discretion and right to determine, which bid or combination of bids, if any, constitutes the highest or otherwise best offer based on all circumstances, and which bid or combination of bids should be selected as the Successful Bid, all of which are subject to final approval by the Bankruptcy Court pursuant to the applicable provisions of the Bankruptcy Code.  All bidding shall be conducted at the Auction and no bids shall be tendered or accepted after the Auction has concluded.  The bidder that submits a Qualified Bid that the Trustee determines to be the second highest or otherwise second best offer will be the "back-up bidder" (the "***Back-Up Bidder***") and shall keep its highest bid at the Auction open for acceptance beyond the time period required by this Order (each, a "***Back-Up  Bid***") (it being understood that the Trustee shall continue to

hold in escrow the Earnest Money Deposit of any party serving as a Back-Up Bidder); provided, however, the Trustee shall not be obligated to seek approval of any such Back-Up Bid.

- <u>Objections</u>.  Except as otherwise set forth in the Sale Procedures Order, objections or responses, if any, to the Sale of the Transferred Assets, or any relief requested in the Motion other than the relief granted by the Court in the Sale Procedures Order must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; and (iv) filed with the Clerk of the Bankruptcy Court, by no later than November 14, 2017 (the "*General Objection Deadline*").

- <u>Hearing Regarding Successful Bid.</u>  The Trustee will request the Court set a hearing to consider the approval of the sale of the Transferred Assets (the "*Sale Hearing*") on or before November 30, 2017.  The Trustee will request that the Bankruptcy Court approve the Successful Bid.   The Trustee shall be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  Upon the failure to consummate the closing of the transaction contemplated by the Successful Bid because of the occurrence of a breach or default under the terms of the Successful Bid or the Successful Bidder's Alternate Purchase Agreement, the Back-Up Bid, as disclosed at the Sale Hearing, shall be deemed the Successful Bid (each, a "*Successful Back-Up Bid*") without further order of the Bankruptcy Court and the parties shall be authorized and directed to consummate the transaction contemplated by the Successful Back-Up Bid.

- <u>Closing</u>.  The Trustee will seek to close the sale of the Transferred Assets within one (1) day of the Sale Hearing.

## C.     Notice

16.     The Trustee proposes to give notice, immediately after the entry of the Sale Procedures Order, of the Sale Procedures, the Stalking Horse Purchase Agreement, the time and place of the Auction, the Sale Hearing, and the Objection Deadline to all entities known by the Trustee to have expressed an interest in a transaction with respect to the Debtors' assets since the Petition Date and upon all parties set forth in the Debtors' Service List maintained in these cases. After entry of the Sale Procedures Order, the Trustee will cause the Sale Notice, substantially in the form attached as Exhibit 2 to the Sale Procedures Order, to be served by first-class mail,

postage prepaid, facsimile, electronic transmission, or overnight mail upon: (i) the Office of the United States Trustee for the Southern District of Texas, and (ii) all known creditors and parties-in-interest in these chapter 7 cases, including (a) all parties listed on the Debtors' schedules, (b) all parties requesting notice in this chapter 7 case pursuant to Bankruptcy Rule 2002; and (c) all entities known to have asserted any claim, lien, encumbrance or interest in the Transferred Assets.

**D.     Objections**

17.     All objections to the Sale of the Transferred Assets or any relief requested in the Motion other than the relief granted by this Court in the Sale Procedures Order must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; and (iv) filed with the Clerk of the Bankruptcy Court, by no later than November 14, 2017 (the "General Objection Deadline").

## RELIEF REQUESTED AND BASIS THEREFOR

18.     By this Motion, the Trustee requests the entry of two orders concerning sales of the Transferred Assets.  First, to provide for the orderly sale of the Assets, the Trustee seeks the immediate entry of the Sale Procedures Order approving the Sale Procedures summarized above. This relief requested by the Trustee is intended to provide for a competitive bidding and auction procedure for the Transferred Assets to maximize value for estates, creditors, and other stakeholders as expeditiously as possible.

19.     Following the entry of the Sale Procedures Order, the Trustee will solicit Bids according to the Sale Procedures in hopes of receiving acceptable offers for the Transferred Assets.  In the event that more than one Qualified Bid is received prior to the Bid Deadline, the

Trustee will hold an Auction at which he will choose the Successful Bidder(s) with the highest and best Bid(s) for the Assets.

20.     Following the Bid Deadline and after the Auction, if any, the Trustee will request the entry of an order to be negotiated with the Successful Bidder and filed with the Court two (2) 2 days prior to the Sale Hearing (the "Sale Order") approving the Sale or Sales of the Assets free and clear of all liens, claims, or encumbrances to the Successful Bidder(s).

### A.     The Bidding Procedures Are Appropriate Under the Circumstances

21.     A trustee may sell, after notice and a hearing, a debtor's assets outside the ordinary course of business.  11 U.S.C. § 363.  Generally, to obtain approval of a proposed sale of assets, a trustee must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case.  *See, e.g.*, *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

22.     The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest and best return for a debtor's estate.  The Trustee submits that the foregoing Sale Procedures and the opportunity for competitive bidding embodied therein are reasonable and designed to maximize the value of the Transferred Assets and should, therefore, be approved by this Court.

23.     The Trustee believes that a prompt sale process is the best way to maximize the value of the Transferred Assets for the benefit of the Debtors' estates, creditors and other stakeholders.  Because several parties have expressed interest in the Transferred Assets since the Petition Date, the Trustee is well-positioned to conduct an auction of the Transferred Assets on the timetable set forth herein to avoid any further decline in the value of the Transferred Assets. The Transferred Assets includes Intellectual Property, and any delay in the sale process will reduce the potential value that the Trustee can obtain for the Transferred Assets.  The Trustee believes that the value of the Transferred Assets and, therefore, the consummation of the Sale or any alternative transaction, will be seriously jeopardized unless he can begin the sale process contemplated herein as expeditiously as possible.

24.     Accordingly, in the exercise of its reasonable business judgment, the Trustee has concluded that: (a) a prompt sale of the Transferred Assets is the best way to maximize value for its estate, and (b) the proposed Sale Procedures described herein are the most effective method of obtaining the highest and best offer for the Assets.

**B.     Sale of the Assets is An Exercise of the Debtor's Reasonable Business Judgment**

25.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26.     Courts have held that approval of a proposed sale of a debtor's assets under § 363 of the Bankruptcy Code outside the ordinary course of business is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee.  *See In re*

*Abbotts Dairies of Pa.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that the following non- exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value."); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

27.     The "sound business reason" test requires a trustee to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee has obtained a fair and reasonable price; and (4) good faith. *In re Titusville Country Club*, 128 B.R. at 399; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *Phoenix Steel Corp.*, 82 B.R. at 335-36; *see also Stephens Indus.*, 789 F.2d at 390; *In re Lionel Corp.*, 722 F.2d at 1071.

28.     Additionally, prior to and after enactment of the Bankruptcy Code, courts have permitted a proposed sale of a debtor's assets outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 143; *In re Lionel Corp.*, 722 F.2d at 1063 (passim); *In re Equity Funding Corp. of America*, 492 F.2d 793, 794 (9th Cir. 1974) ("Other circuits have recognized the power of the bankruptcy court under Chapter X to authorize a sale of the Debtors' property under less than emergency conditions where such sale is necessary to avoid deterioration in the value of the assets").

29.     The proposed procedures for sales of the Debtors' assets meet the "sound business reason" test.  First, sound business purposes justify the sale.  The Trustee believes that a prompt sale of the Transferred Assets by auction presents the best opportunity to realize the maximum value of the estates' assets for distribution to creditors.  The Trustee further believes that the net benefit to the Debtors' creditors may be adversely affected absent an immediate sale because the value of the Intellectual Property decreases over time.  *See In re Lionel Corp.*, 722 F.2d at 1071 (of factors for court to evaluate on motion under Section 363(b), "most important perhaps, [is] whether the asset is increasing or decreasing in value").

30.     The proposed procedures for Sale(s) of the Transferred Assets also meet the other factors of the "sound business reason" test.  As part of this Motion, the Trustee has sought to establish procedures for notice to creditors, other prospective bidders, and other parties-in-interest.  Under the circumstances of these cases, the Trustee submits that the proposed notice period satisfies the requirements of the Bankruptcy Rules, including Bankruptcy Rule 2002, and provides sufficient time for parties-in-interest to submit objections to the proposed sale and for bidders to formulate and submit competing proposals.

31.     Finally, the Trustee submits that the results of the Auction will be the product of good faith, arm's length negotiations with respect to the price and other terms of the sales of the Transferred Assets between the Trustee and highest and best bidder at the conclusion of the Auction.

32.     As set forth above, the Trustee has determined, in the exercise of his sound business judgment, that the sale of the Transferred Assets to the highest and best bidder at the Auction is appropriate and in the best interests of the Debtors' estates and creditors.  The sale of the Assets at the Auction will afford the Debtors' estates an opportunity to maximize the recoveries to creditors.  Accordingly, the Debtor requests that the Court approve the proposed procedures for sales of the Transferred Assets to the highest or otherwise best bidder at the Auction and approve the sale presented to the Court at the Sale Hearing.

**C.     The Successful Bidder Should Be Granted the Protections of Section 363(m) of the Bankruptcy Code**

33.     As will be set forth in further detail at the Sale Hearing, the Trustee also maintains Successful Bidder should be entitled to the protections afforded by Bankruptcy Code Section 363(m).

34.     Specifically, Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.     While the Bankruptcy Code does not define "good faith," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale

16

proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

36.     As the Trustee will demonstrate at the Sale Hearing, any Successful Bidder shall have negotiated and dealt with the Trustee at arm's length.  Under these circumstances, this Court should find in the order approving the sale of the Transferred Assets that Successful Bidder is entitled to all of the protections of Bankruptcy Code Section 363(m).

**D.     The Purchase and Sale Agreement is Not the Result of Collusive Bidding Under Section 363(n) of the Bankruptcy Code.**

37.     As set forth above, the Trustee will select the Successful Bidder for the sale of the Transferred Assets at arm's length and in good faith.  Moreover, the Trustee does not believe that any such sale will be the result of collusion or other bad faith between bidders or that the sale price under a definitive purchase and sale agreement of a Successful Bidder will be controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code Section 363(n).

38.     As the Trustee will demonstrate at the Sale Hearing, the Stalking Horse Purchase Agreement or a definitive purchase and sale agreement of a Successful Bidder will be negotiated, proposed, and entered into by the Trustee and the Stalking Horse Bidder or such Successful Bidder, as applicable, without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Trustee nor the Stalking Horse Bidder or a Successful Bidder will have engaged in any conduct that would cause or permit the Stalking Horse Purchase Agreement or a definitive purchase and sale agreement of a Successful Bidder, as applicable, to be avoided under Bankruptcy Code Section 363(n).

### E.  Sale of the Assets Should Be Free and Clear of Claims and Interests

39.     Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Transferred Assets to all Purchasers free and clear of all liens, claims, or encumbrances, with such liens, claims, and encumbrances to attach to the proceeds of the sale of the Transferred Assets, subject to any rights and defenses of the Trustee and other parties-in-interest with respect thereto.  Section 363(f) of the Bankruptcy Code provides that:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that because Section 363(f) is written in the disjunctive, a court may approve a sale "free and clear" if at least one of the requirements is met).

40.     A sale free and clear of all liens, claims, and encumbrances is necessary to maximize the value of the Transferred Assets.  A sale subject to such interests would result in a lower purchase price and be of substantially less benefit to the Debtors' estates.  A sale free and clear of liens is particularly appropriate under the circumstances because any lien in, to or against the Transferred Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party-in-interest.  The Trustee submits that holders of liens will be adequately protected by the availability of the proceeds of the Sale to satisfy their liens.  Thus, the proposed sales satisfy Sections 363(f) of the Bankruptcy Code.  Moreover, any holder of a Claim or Interest that receives notice of the sales and which fails to object to the sales of the Transferred Assets free and clear of liens, claims, or encumbrances should be deemed to consent to the sales, thereby complying with Section 363(f)(2) of the Bankruptcy Code.

### F.     Notice of the Proposed Sale is Reasonable Under the Circumstances

41.     In order to receive the highest and best price in return for the Transferred Assets under the circumstances, the Trustee has filed this Motion seeking to conduct the Auction and hold the Sale Hearing on or before November 30, 2017.  In order to yield the greatest possible return for the benefit of creditors and to minimize potential administrative expenses, the Trustee believes that the proposed timing of the auction and sale process is not only reasonable, but is warranted and necessary given the nature of the Transferred Assets.

42.     Accordingly, the Trustee submits that the notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Transferred Assets and/or to object to the proposed Sale of the Transferred Assets.

### G.     The Break-Up Fee is Appropriate

43.     The Break-Up Fee will benefit the Debtors' estates and creditors because it provides an incentive to potential Bidders to submit or increase their bids prior to the Auction. To the extent bids can be improved prior to the Auction, a higher floor is established for further bidding.  Thus, even if a stalking horse bidder is a Successful Bidder, the Debtors, their estates and their creditors will have benefited from the higher floor established by the improved bids.

44.     ANEAN has agreed to serve as a Stalking Horse Bidder in return for a Break-Up Fee of $10,000.00.  Pursuant to the Stalking Horse Purchase Agreement, ANEAN has offered to purchase the Transferred Assets for $140,000.00.

45.     Approval of break-up fees and other forms of bidding protections in connection with the sale of significant assets pursuant to § 363 of the Bankruptcy Code is appropriate to protect a potential purchaser from competing purchasers that use a stalking horse offer as a baseline to submit a better offer without undertaking customary diligence.  *In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009).

46.     Bankruptcy courts have approved bidding incentives similar to the Break-Up Fee under the business judgment rule, which proscribes judicial second-guessing of the actions of the Trustee taken in good faith and in the exercise of his business judgment. *See e.g., In re ASARCO LLC,* 441 B.R. 813, 832 (S.D. Tex. 2010), *aff'd sub nom. In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011).

47.     The Break-Up Fee is small in absolute terms and will ultimately enhance value realized for the Transferred Assets.   Accordingly, the Trustee should be authorized to grant ANEAN the Break-Up Fee.

### H.     Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)

48.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to § 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order.   The purpose of Bankruptcy Rules 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.   *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

49.     Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure.   *See generally* 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999).   Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.   *Id.*

50.     Because of the potentially diminishing value of the Assets, the Trustee must close this sale promptly after all closing conditions have been met or waived.   Thus, waiver of any applicable stays is appropriate in this circumstance.

### <u>EMERGENCY RELIEF</u>

51.     As mentioned above, the bulk of the Transferred Assets are intellectual property. The value of this intellectual property declines precipitously as newer designs come to market.

The Trustee seeks approval of the bidding procedures on an emergency basis so that the sale process can commence promptly.  The Trustee contends that such relief is appropriate because the  Sales Procedure Order is primarily procedural in nature; the only substantive relief sought in the Sale Procedures Order is approval of the Break-Up Fee.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that this Court (i) enter an order substantially in the form of the Sale Procedures Order attached hereto: (a) authorizing and approving the Sale Procedures attached as Exhibit 1 thereto; (b) approving the form and manner of the Sale Notice attached as Exhibit 2 thereto; (c) scheduling the Auction and Sale Hearing; and (d) granting such other and further relief as it deems just and proper; and (ii) at the conclusion of the Sale Hearing, enter an order (or orders): (a) approving the Sale(s) of all or substantially all of the Transferred Assets free and clear of all liens, encumbrances, claims and other interests pursuant to one or more Qualified Bids; and (b) granting such other and further relief as it deems just and proper.

*{Remainder of Page Intentionally Left Blank}*

Dated: October 10, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

/s/  Charles M. Rubio
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Michael D. Fritz
TBA No. 24083029
mfritz@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for Rodney D. Tow, Chapter 7 Trustee for Ventech Engineers, L.P. et al.*

## **CERTIFICATE OF SERVICE**

I, Charles M. Rubio, certify that a copy of this Motion was served on the parties in the attached service list by the method indicated within one business day of the filing of this Motion.

*/s/  Charles M. Rubio*

**Exhibit A**

<u>Stalking Horse Asset Purchase Agreement</u>

DIAMOND MCCARTHY 10/4/2017 DRAFT

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "***Agreement***") is entered into as of October 6 , 2017 (the "***Effective Date***"), between ANEAN Consulting, LLC/KHE USA LLC (jointly referred to as "***Buyer***") and Rodney D. Tow in his capacity as the Chapter 7 bankruptcy trustee ("***Seller***"; together with Buyer, the "***Parties***") for the bankruptcy estates of Ventech Engineers L.P. and its affiliated debtors identified as Ventech Entities[1] (the "***Debtors***", jointly administered under Case No. 17-33203 (the "***Chapter 7 Cases***") filed under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101—1532 (as amended, the ***Bankruptcy Code***") pending in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***").

## RECITALS

A.    WHEREAS, before filing the Chapter 7 Cases, the Debtors operated engineering, procurement, and construction companies that focused on modular systems design and fabrication for petroleum refiners and related clients;

B.    WHEREAS, Seller was appointed as chapter 7 trustee for the Debtors' estates on May 30, 2017;

C.    WHEREAS, Buyer wishes to purchase the Debtors' intellectual property, rights to use of Debtors' names, and certain of the Debtors' property; and

D.    WHEREAS, in return for Buyer's agreement to serve as a stalking-horse bidder and provide value to Debtors' estates, the Parties have agreed to provide the Buyer with certain bid protections,

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Sale and Transfer of Assets

1.1    Assets to be Sold. On the terms and subject to the conditions of this Agreement, Seller shall sell, assign, transfer, convey, and deliver to Buyer, on the Closing Date (as hereinafter defined), and Buyer shall purchase from Seller, all of Seller's right, title and interest as of the Closing Date in and to the following assets of Seller (collectively, the "***Transferred Assets***"):

---

[1]    The names of the debtors in the Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549) ("Ventech Entities").

1.1.1  Intellectual Property.  All the Debtors' right, title, and interest to the know-how, trade secrets, confidential or proprietary information, technical information, data, process technology, plans, drawings, blue prints, design documents, design standards, design data, project documentation, quality control records and documentation, vendor records, specifications, previous project references, all estimating data (including past estimates); all project control data and tools including engineering measurement systems, pasts costs; all intellectual   property rights, statutory or common law, worldwide, including (i) trademarks, service marks, trade dress, slogans, logos and all goodwill associated therewith, and any applications or registrations for any of the foregoing; (ii) copyrights and any applications or registrations for any of the foregoing; and (iii) patents, all confidential know-how, trade secrets and similar proprietary rights in confidential inventions, discoveries, improvements, processes, techniques, devices, methods, patterns, formulae, specifications, and lists of suppliers, vendors, customers, and distributors; all marketing material including but not limited to letterhead, presentations, pamphlets, videos and displays related to Ventech, or products and services of Ventech; and all other intellectual property and intellectual property rights and assets; all rights, interests and protections that are associated with, similar to, or required for the exercise of, any of the foregoing; and, any and all other similar material and information contained in the computerized files preserved on a hard drive by the Debtors including, but not limited to those described on **Exhibit A**.

1.1.2  Name Rights.  All the Debtors' names, assumed fictional business names, trade names, rights to the use of any names, registered and unregistered trademarks, service marks, rights to brands, logo pictures, artwork, and photographs, the telephone number [713-477-0201] and all rights in internet web sites and internet domain names including www.ventech-eng.com, email addresses, websites, URLs, and internet domain name registrations, LinkedIn site, and any other websites representing Ventech or sharing Ventech content.  At Buyer's expense and request, the Trustee will change the names of the Seller's entities with governmental agencies, including, but not limited to the Texas Secretary of State.

1.1.3  Contract Rights.  For the purposes of protecting the intellectual property the Buyer is acquiring hereunder, the right to enforce all contract terms contained in any agreement between the Debtor and any former officer, employee or agent that prohibits such party from using the intellectual property.

1.1.4  Computer Equipment.  Twenty (20) laptops, ten (10) engineering workstations, and all of the Debtors' servers; *provided, however*, that Buyer hereby agrees to maintains the servers in ordinary working condition and provide the Seller with access to the contents of the servers to the extent Seller requests access in connection with the administration of the Chapter 7 Cases.  The parties shall mutually agree to the specific laptops and workstations prior to Closing.

1.1.5  Furniture.  Four (4) computer desks, four (4) computer chairs, one (1) conference table with accompanying chairs, and ten (10) cubicles with accompanying chairs. The parties shall mutually agree to the specific furniture prior to Closing.

1.2    Assumed Liabilities. Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge when due all liabilities and obligations

arising out of or relating to the Transferred Assets on or after the Closing (collectively, the "*Assumed Liabilities*"), including the following:

        a.  all liabilities and obligations for Taxes relating to the Transferred Assets and the Assumed Liabilities for any taxable period ending after the Closing Date; and

        b.  all other liabilities and obligations arising out of or relating to Buyer's ownership and operation of the Purchased Assets on or after the Closing.

    1.3    Excluded Liabilities.  Buyer shall not assume and shall not be responsible to pay, perform or discharge any of the following liabilities or obligations of Seller (collectively, the "*Excluded Liabilities*"):

        a.  any liabilities or obligations arising out of or relating to Seller's ownership and operation of the Transferred Assets prior to the Closing;

        b.  any liabilities or obligations relating to or arising out of the Excluded Assets; and

        c.  any liabilities or obligations for (i) Taxes relating to the Transferred Assets and the Assumed Liabilities for any taxable period ending on or prior to the Closing Date and (ii) any other Taxes of Seller for any taxable period

    1.4    Consideration. Buyer shall pay to Seller as full consideration for the purchase of the Transferred Assets the amount of ONE HUNDRED FORTY THOUSAND DOLLARS ($140,000.00) (the "*Purchase Price*"), which is payable in full at Closing (as hereinafter defined).  Buyer shall submit to Seller a cash deposit (the "*Good Faith Deposit*") in the amount of ten percent (10%) of the Purchase Price within two business days of the Effective Date.  The Good Faith Deposit shall be held and disbursed by Seller in accordance with the terms of this Agreement and in accordance with any requirements of the Bankruptcy Court.

    1.4    Assumption of Liabilities or Obligations.

    (a) Notwithstanding anything in this Agreement or any related agreement to the contrary, neither Buyer nor any of its affiliates shall assume, or be obligated or become liable in any way whatsoever for, the payment or performance of any liabilities (i) of any Seller or any of its affiliates, (ii) to the extent arising out of, relating to, or in connection with Sellers' ownership or operation of the business or the Transferred Assets (or the acts or omissions of Sellers and/or their respective affiliates in connection therewith) prior to the Closing Date (whether or not such liabilities manifest themselves or are first discovered on or after the Closing Date), including with respect to any such liabilities for (x) taxes related to any taxable period (or the portion of a period) ending on or before the Closing Date or (y) any pending or threatened Litigation, or (iii) arising out of, relating to, or in connection with any excluded assets, and, in each case, Sellers and their respective successors and assigns, shall remain solely liable and responsible with respect to all such liabilities (subject to Sellers' available defenses in respect of such liabilities); provided, however, that Buyer will become responsible for all liabilities arising out of or related to Buyer's or its affiliates' ownership of the Transferred Assets to the extent that

such liabilities arise from acts, events or conditions relating to the period after the Closing Date.

(b) Without limiting the generality of Section 1.4 (a) above, the Parties agree that the transactions contemplated under this Agreement are not intended to amount to a consolidation, merger or de facto merger of Buyer and any of Sellers, and that there is no substantial continuity between Buyer and Sellers.

2. Closing.

2.1     Closing Date.   The purchase and sale provided for in this Agreement (the "**Closing**") shall take place at the offices of Seller's counsel at 909 Fannin St., 37th Floor, Houston, Texas 77010, commencing at 10:00 a.m. (local time) on the day that is one (1) business day after the final condition precedent to closing set forth in Section 3 has been satisfied or such other date as may be set by mutual agreement of the parties (the "**Closing Date**").   The parties may mutually agree to extend the Closing Date.

2.2     Seller's Deliveries to Buyer.   On the Closing Date, Seller shall deliver to Buyer the following:

2.2.1   a copy of an order entered by the Bankruptcy Court approving the sale contemplated by this Agreement (as further defined in Section 5.2 below, the "**Sale Confirmation Order**");

2.2.2   a bill of sale, duly executed by Seller, under which Seller shall transfer the Transferred Assets (the "**Bill of Sale**") free and clear of any liens, claims and encumbrances except as otherwise provided herein;

2.2.3   all other bills of sale, assignments, certificates of title, documents, agreements, and other instruments of transfer and conveyance, as may reasonably be necessary to effectuate the sale contemplated herein as requested by Buyer, each in form and substance satisfactory to Buyer and its legal counsel and executed by Seller (collectively with the Bill of Sale, the "**Transaction Documents**"); and

2.2.4   any records requested by Buyer (e.g., operating records, engineering designs, blueprints, plans, specifications, procedures, studies, reports and equipment repair, safety, maintenance or service records of the Debtors relating primarily to the Transferred Assets, confidentiality agreements entered into by Ventech entities or Seller regarding the Transferred Assets, including but not limited to any confidentiality agreements of employees of Ventech entities or third parties that inspected or viewed the Transferred Assets or the data room and information and listing the data accessed as part of the bidding process, that are in Seller's possession and custody, except for the Debtors' financial and accounting information.

2.3     Buyer's Deliveries to Seller.  On the Closing Date, Buyer shall deliver to Seller the following:

2.3.1   the Purchase Price by wire transfer to an account specified by Seller in a writing delivered to Buyer at least three (3) business days prior to the Closing Date; and

2.3.2    copies of the Transaction Documents, duly executed by Buyer.

2.4    <u>Taxes Resulting From the Sale</u>.  All taxes, if any, that may be imposed by reason of the sale, transfer, assignment, and delivery of the Transferred Assets and that are not exempt under the Bankruptcy Code, shall be borne by Buyer.  Buyer and Seller shall cooperate to determine the amount of any such transfer taxes payable in connection with the transactions contemplated under this Agreement.

3.  <u>Conditions Precedent to Closing</u>.

3.1    <u>Conditions to Seller's Obligations</u>. Subject to Section 6 below, Seller's obligation to make the deliveries required of Seller at the Closing Date shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

3.1.1    Seller shall have received the total Purchase Price; and

3.1.2    the Bankruptcy Court shall have entered the Sale Confirmation Order and such order is not subject of a stay (pursuant to Bankruptcy Rule 6004 or otherwise) or appeal as of the Closing Date, or in the event a stay is in effect the Sale Confirmation Order shall have become final.

3.2    <u>Conditions to Buyer's Obligations</u>. Subject to Section 6 below, Buyer's obligation to make the deliveries required of Buyer at the Closing shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

3.2.1    Seller shall have executed and delivered all the Transaction Documents reasonably requested by Buyer; and

3.2.2    the Bankruptcy Court shall have entered the Sale Confirmation Order and such order is not subject of a stay (pursuant to Bankruptcy Rule 6004 or otherwise) or appeal as of the Closing Date, or in the event a stay is in effect the Sale Confirmation Order shall have become final, and the terms of the Sale Confirmation Order shall be in a form satisfactory to Buyer in its sole discretion, including approval by the Bankruptcy Court of the sale contemplated by this Agreement and the Bankruptcy Court's maintenance of continuing jurisdiction over any disputes arising from this Agreement.

4.  <u>Representations</u>

4.1    <u>Power and Authority</u>. Pursuant to the Sale Confirmation Order, Seller has the full power and authority to execute, deliver, and perform his obligations under this Agreement. Upon entry by the Bankruptcy Court of an order authorizing and approving this Agreement and the Transaction, this Agreement and all agreements, instruments, and documents herein provided to be executed by Seller are and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Seller.

4.2    <u>Title to Transferred Assets.</u>  Seller represents that at the Closing, Buyer will acquire all of Debtors' right, title, and interest in and to all the Transferred Assets, free and clear of any liens, claims or encumbrances.

4.3    "AS-IS, WHERE IS" Transaction.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT OR THE TRANSACTION DOCUMENTS, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE TRANSFERRED ASSETS, INCLUDING INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE TRANSFERRED ASSETS, THE STATUS OF ANY LICENSE OR PATENT, THE VALUE OF THE TRANSFERRED ASSETS (OR ANY PORTION THEREOF), OR THE MERCHANTABILITY OR FITNESS OF THE TRANSFERRED ASSETS FOR ANY PARTICULAR PURPOSE. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY OF THE TRANSFERRED ASSETS.  BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE TRANSFERRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE TRANSFERRED ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE TRANSFERRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT OR THE TRANSACTION DOCUMENTS, BUYER IS DOING SO BASED SOLELY UPON INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE TRANSFERRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

4.4    Waiver of Consumer Rights.  BUYER HEREBY WAIVES ITS RIGHT, IF ANY, UNDER THE DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT, SECTION 17.41 *et seq.*, TEXAS BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS.  AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, BUYER VOLUNTARILY CONSENTS TO THIS WAIVER.    IN ADDITION, TO THE EXTENT APPLICABLE TO THE TRANSFERRED ASSETS OR ANY PORTION THEREOF, BUYER HEREBY WAIVES THE PROVISIONS OF THE TEXAS CONSUMER PROTECTION LAWS REGARDING FALSE, MISLEADING AND DECEPTIVE BUSINESS PRACTICES, UNCONSCIONABLE ACTIONS, AND BREACHES OF WARRANTY; PROVIDED, HOWEVER, THAT NOTHING HEREIN CONTAINED SHALL BE DEEMED A WAIVER BY BUYER WHERE SUCH WAIVER IS PROHIBITED BY LAW.  IN ORDER TO EVIDENCE ITS ABILITY TO GRANT SUCH WAIVER, BUYER HEREBY REPRESENTS AND WARRANTS TO SELLER THAT BUYER (i) IS IN THE BUSINESS OF SEEKING OR ACQUIRING, BY PURCHASE OR LEASE, GOODS OR SERVICES FOR COMMERCIAL OR BUSINESS USE, (ii) HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THE TRANSACTION CONTEMPLATED HEREBY, AND (iii) IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION.

5.  Bankruptcy Matters

5.1    Agreement Subject to Better Bids.  This Agreement is subject to consideration by Seller of higher or better competing bids from Qualified Bidders for all or substantially all of the

Assets (an "***Alternative Transaction***") in accordance with the Bid Procedures Order (defined below).

5.2     Bankruptcy Court Approval.  Seller and Buyer acknowledge and agree that this Agreement and the transactions contemplated hereby are contingent upon the approval and authorization of the Bankruptcy Court.

5.3     Bid Procedures Order

5.3.1     Form.  In conjunction with the sale of the Transferred Assets, Seller will move for entry of an order approving the bidding procedures in substantially the same form as attached hereto as **Exhibit C** (the "***Bid Procedures Order***").

5.3.2     Break-Up Fee.  Pursuant to the Bid Procedures Order, in consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation hereof, and to compensate Buyer for serving as a stalking-horse bidder and providing value to Debtors' bankruptcy estates, in accordance with and subject to the conditions and findings set forth in the Bid Procedures Order, Buyer shall be entitled to a termination fee equal to TEN THOUSAND DOLLARS ($10,000.000) (the "***Break-Up Fee***") in accordance with the Bidding Procedures Order.   The Break-Up Fee shall be payable by Sellers upon the conditions set forth in Section 6.2.

5.4     Sale Confirmation Order.

5.4.1     Subject to the Bid Procedures Order, Seller shall use its best efforts to promptly obtain the entry of an order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby (the "***Sale Confirmation Order***").

5.4.2     The Sale Confirmation Order contemplated hereby shall contain the following provisions (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Bankruptcy Court as part of the Sale Confirmation Order):

(i)     the sale of the Transferred Assets by Seller to Buyer: (A) are or will be legal, valid, and effective transfers of the Transferred Assets; (B) vests or will vest Buyer with all right, title, and interest of such Seller to the Transferred Assets free and clear of all encumbrances and claims pursuant to § 363(f) of the Bankruptcy Code except as otherwise specifically provided herein; and (C) constitute transfers for reasonably equivalent value and fair consideration;

(ii)     all persons are enjoined from taking any actions against Buyer or any affiliate or assignee of Buyer to recover any claim that such person has solely against Seller or any of the Ventech Entities;

(iii)     the provisions of the Sale Confirmation Order are non-severable and mutually dependent;

(iv)     Buyer has acted in good faith within the meaning of § 363(m) of the Bankruptcy Code, the transactions contemplated by this Agreement are undertaken by Buyer and Seller at arm's length, without collusion and in good faith within the meaning of § 363(m) of the Bankruptcy Code, and such parties are entitled to the protections of § 363(m) of the Bankruptcy Code;

(v)      the Bankruptcy Court retains exclusive jurisdiction to interpret and enforce the provisions of this Agreement and the Sale Confirmation Order in all respects including, but not limited to, enforcement of Buyer's purchased rights under confidentiality and non-competition agreements with former officers, employees and their agents; provided, however, that in the event the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other federal court in the Southern District of Texas or Texas state court in Harris County, Texas, having competent jurisdiction with respect to any such matter; and

(vi)     such other provisions as Buyer and Seller may agree to.

5.4.3   Any changes to the form of the Sale Confirmation Order affecting the economic terms of the transactions contemplated by this Agreement or the closing conditions hereof must be approved by Buyer in its sole and absolute discretion and Seller in its sole and absolute discretion.  Any other changes to the form of the Sale Confirmation Order must be approved by Buyer in its reasonable discretion and by Seller in its reasonable discretion.

5.4.4   In the event the Sale Confirmation Order is appealed, Seller and Buyer shall each use their respective best efforts to defend such appeal or, by mutual written agreement, close the transactions contemplated hereby unless such closing is stayed by Bankruptcy Court order.  Seller shall keep Buyer reasonably informed of the status of its efforts to obtain the entry of the Sale Confirmation Order.  Seller shall give Buyer reasonable advance written notice of any hearings regarding the motions required to obtain the issuance of the Sale Confirmation Order and Buyer shall have the right to attend and be heard at any such hearings.

5.5     Cooperation in Bankruptcy Matters.

5.5.1   Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Bid Procedures Order and the Sale Confirmation Order, such as furnishing affidavits, non-confidential financial information, confidential information subject to a reasonable form of confidentiality agreement or other documents or information for filing with the Bankruptcy Court and making its representatives available to be interviewed by Seller's attorneys and to testify before the Bankruptcy Court and at depositions.

5.5.2   If a written objection is filed to the motion seeking approval of this Agreement, which is an objection that would prohibit or otherwise prevent the Closing from occurring pursuant to the terms of this Agreement, Seller and Buyer shall use best efforts to have such objection overruled.

6. Termination.

    6.1    <u>Termination Events</u>.  This Agreement may be terminated as follows:

        6.1.1   by mutual written consent of Buyer and Seller;

        6.1.2   by Buyer upon written notice to Seller:

        (i)     if a material breach of any provision of this Agreement has been committed by Seller and such breach has not been waived by Buyer; *provided however*, that if such breach is curable within a reasonable time after such breach, then, for so long as Seller continues to use its best efforts to cure such breach, Buyer may not terminate pursuant to this section 6.1.2(i);

        (ii)    if any secured creditor of any Debtor obtains relief from the automatic stay to foreclose on any of the Transferred Assets;

        (iii)   if the Sale Confirmation Order is not entered by November 30, 2017 or upon or following the date on which the Bankruptcy Court shall have stated unconditionally that it will not enter the Sale Confirmation Order; *provided however*, that this Agreement may not be terminated pursuant to this Section 6.1.2(iii) in the event that (A) Seller timely moved the Bankruptcy Court to enter the Sale Confirmation Order and the Bankruptcy Court's schedule is the reason that the entry of Sale Confirmation Order has not occurred on or before such date or (B) Buyer's breach of any of its representations and warranties contained in this Agreement and failure to perform any of its obligations hereunder is the reason that the entry of the Sale Confirmation Order has not occurred on or before such date; or

        6.1.3   by Seller, upon written notice to Buyer,

        (i)     if a material breach of any provision of this Agreement has been committed by Buyer and such breach has not been waived by Seller; provided, however, that Seller is not in material breach of this Agreement as of such date; provided, further, that if such breach is curable within a reasonable time after such breach, then, for so long as Buyer continues to use its best efforts to cure such breach, Seller may not terminate pursuant to this Section 6.1.3(i);

        (ii)    if Closing has not occurred by the fifteenth (15th) day following entry of the Sale Confirmation Order *provided however*, that this Agreement may not be terminated pursuant to this Section 6.1.3(ii) if Buyer's breach of any of its representations or warranties contained in this Agreement is the reason for the failure to close by such time;

        (iii)   upon the consummation of an Alternative Transaction with another party that has the Successful Bid for any of the Transferred Assets.

6.2     Effects of Termination

6.2.1   Return of Good Faith Deposit.  In the event this Agreement is terminated pursuant to sections 6.1.1, 6.1.2, or 6.1.36.1.3(iii) above, the Good Faith Deposit shall be returned to Buyer in accordance with the Bid Procedures Order.  This shall be Buyer's sole and exclusive remedy for such termination except as otherwise provided in section 6.2.3.  Thereafter, the Parties shall be relieved of and released from any further liability hereunder, and they will not have any liability or obligations arising under or in connection with this Agreement, and neither Party shall be entitled to specific performance or any other remedy, except as otherwise provided in section 6.2.3.

6.2.2   Retention of Good Faith Deposit.  In the event that Seller terminates this Agreement pursuant to section 6.1.3(i) or 6.1.3(ii) above, the Good Faith Deposit shall be delivered to Seller in accordance with the Bid Procedures Order, and Seller shall retain the Good Faith Deposit.  Thereafter, both Parties shall be relieved of and released from any further liability hereunder, and they will not have any liability or obligations arising under or in connection with this Agreement, and neither Party shall be entitled to specific performance.

6.2.3   Payment of Break-Up Fee.  In the event this Agreement is terminated pursuant to 6.1.3(iii) above, then the Buyer shall be entitled to the Break-Up Fee, the payment of such shall be made within seven (7) days of the closing of any Alternative Transaction.

7. Miscellaneous Provisions

7.1     Notices.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by either party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as of the date of mailing. Mailed notices shall be addressed as set forth below, but each party may change its address by written notice in accordance with this Section 7.1.

> To Seller:
>
> Rodney D. Tow
> c/o Charles M. Rubio
> Diamond McCarthy LLP
> 909 Fannin Street, 37th Floor
> Houston, Texas 77010
>
> To Buyer:
>
> ANEAN Consulting, LLC/KHE USA LLC
> c/o Law Office of Peter Johnson
> 11 Greenway Plaza Suite 2820
> Houston, TX 77046
> (713) 552-0025
> pjohnson@pjlaw.com

7.2    <u>Entire Agreement.</u>  This Agreement and the documents to be executed under it contain the entire agreement between the parties relating to the sale of the Transferred Assets. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect.

7.3    <u>Modification.</u>  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all of its parties.

7.4    <u>Closing Date.</u>  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

7.5    <u>Risk of Loss.</u>  Risk of loss to the Assets shall not pass to Buyer until the Closing. In the event of the material destruction or damage of any material Assets prior to Closing, Seller shall promptly notify Buyer in writing. Buyer shall have ten (10) days from receipt of such notice to notify Seller of its election to terminate this Agreement. Upon Buyer providing such notice to Seller, this Agreement shall cease and terminate and be of no further force or effect, and neither party shall have any rights against the other by reason of this Agreement and/or such termination. In the alternative, Buyer may elect to accept insurance proceeds payable to Seller to cover the loss, may propose a reduction in the Purchase Price to reflect the loss or may propose other modified terms and, in such event, Seller and Buyer shall negotiate in good faith to reach an agreement to a revised Transaction. Seller agrees to support a modification that has been bargained and agreed to in writing and signed on behalf of both Seller and Buyer and, as needed, to immediately seek Bankruptcy Court approval of the modifications on shortened notice, if so requested by Buyer.

7.6    <u>Severability</u>. If any term, provision or paragraph of this Agreement is determined to be illegal or void or of no force or effect, the balance of this Agreement shall survive.

7.7    <u>Further Assurances.</u>  Each party will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other party for the purpose of giving effect to the transactions contemplated herein or the intentions of the parties with respect thereto.

7.8    <u>Waiver.</u>  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the waiving party.

7.9    <u>Payment of Fees and Expenses</u>. Each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of this Agreement and the transaction it describes.

7.10    <u>Survival.</u>  Except for the covenants and agreements to be performed after the Closing Date, none of the respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall survive the Closing.

7.11   Assignments.   This Agreement shall not be assigned by either party without the prior written consent of the other party; provided however, that Buyer may assign the rights under this Agreement to an affiliate of Buyer or any special purpose entity created by Buyer and its partner Korea Heat Exchanger Inc.   Buyer shall provide immediate notice of any such assignment in writing to Seller.   Any such assignment shall specifically provide that such affiliate shall assume all duties, liabilities and obligations of Buyer under this Agreement and, upon such assignment, the assignee shall constitute the Buyer hereunder for all purposes.

7.12   Binding Effect.   This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

7.13   No Third-Party Beneficiaries.   This Agreement is solely for the benefit of the parties hereto and nothing contained herein, express or implied, is intended to confer on any person other than the parties or their successors and permitted assigns, any rights, remedies, obligations, claims or causes of action under or by reason of this Agreement.

7.14   Applicable Law, Jurisdiction and Venue.   Except to the extent that mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by and construed in accordance with the laws of Texas, without regard to conflict of law principals.   BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT THIS AGREEMENT; AND (ii) THE TRANSFERRED ASSETS.   BUYER CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.EXCLUSIVE VENUE FOR ANY LEGAL ACTION OR PROCEEDING REGARDING THIS AGREEMENT OR ARISING HEREUNDER SHALL BE IN THE BANKRUPTCY COURT.   IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT IT LACKS JURISDICTION OF ANY SUCH ACTION OR PROCEEDING, THEN VENUE FOR SUCH PROCEEDING SHALL BE IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, OR THE APPROPRIATE COURT FOR THE STATE OF TEXAS SITTING IN HARRIS COUNTY, TEXAS.

7.15   Good Faith.   The parties agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

7.16   Interpretation.   In this Agreement:

 (i) the definitions of capitalized terms defined in this Agreement are equally applicable to both the singular and plural forms of the defined terms;

 (ii) references to a designated "Section" refer to a Section of this Agreement, unless otherwise specifically indicated;

 (iii) all Section headings are for convenience only, and shall not affect the meaning or interpretation of this Agreement;

(iv)    "including" is used only to indicate examples, without limitation to the indicated examples and without limiting any generality which precedes it; and

(v)     masculine, feminine and neuter pronouns are used interchangeably.

7.17    Construction.  This Agreement shall not be construed against either party based on its authorship.

7.18    Counterparts.    This Agreement may be signed in counterparts and by the exchange of facsimile signature pages.

7.19    Conflict Between Transaction Documents. The Parties agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other Transaction Document referred to herein, this Agreement shall govern and control.  Following entry of the Sale Confirmation Order by the Bankruptcy Court, to the extent that any terms and provisions of this Agreement or any Transaction Document are in conflict or inconsistent with any term, condition or provision of the Sale Confirmation Order, the Sale Confirmation Order shall govern and control.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**BUYER**

ANEAN Consulting LLC

By: _____
        Name: _____
        Title: _____

KHE USA LLC

By: _____
        Name: _Hyuk Do Kwon on behalf of Dong___
        Hun Kang_
        Title: _Manager_____

**SELLER**

Rodney D. Tow, as Chapter 7 Trustee for the
Debtors' Bankruptcy Estate

By: _____
        Rodney D. Tow
        Chapter 7 Trustee

14

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**BUYER**

ANEAN Consulting LLC

By: _____
    Name: _____IAN ANDERSON_____
    Title: _____PRINCIPAL_____

KHE USA LLC

By: _____
    Name: _____
    Title: _____

**SELLER**

Rodney D. Tow, as Chapter 7 Trustee for the
Debtors' Bankruptcy Estate

By: _____
    Rodney D. Tow
    Chapter 7 Trustee

14

Sale Procedures Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS, L.P.** *et al.*,[1] | § | **Case No. 17-33203** |
| | § | |
| **DEBTORS.** | § | **Jointly Administered** |
| | § | |
| | § | **(Chapter 7)** |

## ORDER APPROVING SALE PROCEDURES

Upon the motion (the "Motion")[2] of Rodney D. Tow, the Chapter 7 Trustee (the "Trustee") of the estates Ventech Engineers, L.P. et al. (the "Debtors") seeking entry of an order authorizing and approving, among other things, (a) the sale procedures for the sale of the Transferred Assets (in the form attached hereto as **Exhibit 1**, the "Sale Procedures"); (b) the bid protections for the Stalking Horse Bidder and the terms of that certain Asset Purchase Agreement dated as of October 6, 2017 (the "Stalking Horse Purchase Agreement") between the Trustee and ANEAN Consulting LLC/KHE USA LLC (or its assignee, jointly the "Stalking Horse Bidder"); (c) the form and manner of notice of the sale (in the form attached hereto as **Exhibit 2**, the "Sale Notice") of the Transferred Assets; and (d) scheduling an objection deadline and a final hearing to confirm the sale of the Transferred Assets; and the Court having reviewed the Motion; and this Court having determined that the relief requested in the Motion is in the best interests of the

---

[1]     The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549) (the "Debtors").

[2]     Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, including for the reasons stated on the record at the hearing seeking approval of the Sale Procedures;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

     A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.

     B.     Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

     C.     The statutory and legal predicates for the relief requested in the Motion are §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), rules 2002, 6004 and 9018 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Rule 6004 of the Local Rules of Bankruptcy Procedure (the "<u>Local Rules</u>") for the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

     D.     Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

     E.     The Sale Procedures are fair, reasonable and appropriate, and are designed to maximize recovery with respect to the Sale.

     F.     The Trustee has demonstrated compelling and sound business justifications for paying the break-up fee to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Purchase Agreement, entitled "Break-Up Fee" (the "<u>Stalking Horse Payment</u>") on the terms set

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

forth in the Stalking Horse Purchase Agreement (the "Bid Protections"), and such Stalking Horse Payments and Bid Protections are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

G.     The payment of the Stalking Horse Payment under the conditions set forth in the Stalking Horse Purchase Agreement is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of § 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties-in-interest, (c) reasonable and appropriate and (d) necessary to induce the Stalking Horse Bidder to enter into and to consummate the transactions contemplated by the Stalking Horse Purchase Agreement. Accordingly, to the extent the Stalking Horse Payments become due and payable, they shall constitute an administrative expense claim against the Debtors' estates with priority pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

H.     The Stalking Horse Bidder would not have entered into the Stalking Horse Purchase Agreement and would not consummate the Sale if the Bid Protections were not approved.  The Bid Protections are in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest.

I.     The Trustee's proposed Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, as applicable, the Sale Procedures, the Auction and the Sale Confirmation Hearing, and no other or further notice is required.

J.     No further or other notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

K.     Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties-in-interest herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### The Sale Procedures

3.      The Sale Procedures are approved and are incorporated by reference as if fully set forth herein.

4.      The Trustee is authorized to conduct a sale of the Transferred Assets in accordance with the Sale Procedures and the terms hereof.

5.      The Trustee is authorized to conduct the Bidding Process (as defined in the Sale Procedures) in accordance with the Sale Procedures without the necessity of complying with any state or local bulk transfer laws or requirements applicable to the Debtors.

### Stalking Horse Bid Protections

6.      The terms and conditions of the Bid Protections and the Stalking Horse Payment are hereby approved.

7.      The Debtors' estates' obligation to pay the Stalking Horse Payment pursuant to the Stalking Horse Purchase Agreement shall survive termination of the Stalking Horse Purchase Agreement, shall constitute an administrative expense claim with priority under §§ 503(b) and 507(a)(2) of the Bankruptcy Code and shall be payable in accordance with the terms and conditions of the Stalking Horse Purchase Agreement.

8.      The payment by the Debtors' estates of the Stalking Horse Payment subject to and upon the conditions set forth in the Stalking Horse Purchase Agreement shall have super priority over any and all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the

Bankruptcy Code and is approved and directed to be paid directly from the consideration paid by any Successful Bidder at Closing.

### Notice Procedures

9.    The Sale Notice is sufficient to provide effective notice to all interested parties of, inter alia, the Sale Procedures, the Auction, and the Sale Confirmation Hearing in accordance Bankruptcy Rules 2002 and 6004, and is approved.

10.    Within five days after entry of this Order, or as soon as reasonably practicable thereafter, the Trustee (or his representative) shall serve the Sale Notice, by first-class mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery or electronic transmission, upon (i) the Office of the United States Trustee for the Southern District of Texas, (ii) all known creditors and parties-in-interest in these chapter 7 cases, including (a) all parties listed on the Debtors' schedules, (b) all parties requesting notice in this chapter 7 case pursuant to Bankruptcy Rule 2002; and (c) all entities known to have asserted any claim, lien, encumbrance or interest in the Transferred Assets.

### Objection Procedures

11.    Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale and the transactions contemplated by the Stalking Horse Purchase Agreement or Alternate Purchase Agreement, as applicable, shall file a formal written objection that complies with the objection procedures as set forth herein and in the Motion, as applicable.

12.    Any and all objections as contemplated by this Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Court and (e) served on (i) the Office of the United States Trustee for the Southern District of Texas, (ii) the Trustee c/o Charles M. Rubio, 909

Fannin St., 37th Floor, Houston, Texas 77010; (iii) Bank of America, N.A. c/o Toby L. Gerber, Norton Rose Fulbright, 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201-7932; and (iv) the Stalking Horse Bidder c/o Peter Johnson, Law Offices of Peter Johnson, 11 Greenway Plaza, Suite 2820, Houston, Texas 77046.   The objection deadline with respect to the transactions contemplated by the Stalking Horse Purchase Agreement is November 14, 2017 (the "General Objection Deadline").

13.     If there is more than one Qualified Bidder and an Auction is held and the Trustee elects to proceed with an Alternate Purchase Agreement, the deadline for objecting to such transaction shall be the fifth (5th) day following the date on which the Trustee files and serves a notice announcing his intent to consummate the Alternate Purchase Agreement (the "Alternate Sale Objection Deadline").

14.     Failure to object to the Sale by the General Objection Deadline or the Alternate Sale Objection Deadline, if applicable, shall be deemed to be "consent" for purposes of § 363(f)(2) of the Bankruptcy Code.

## Sale Hearing and Auction

15.     In the event there is more than one Qualified Bidder, an auction (the "Auction") will be held on November 16, 2017 at 10:00 a.m. (the "Auction Date").  The Auction will be conducted at the offices of Trustee's counsel, 909 Fannin St., 37th Floor, Houston, Texas 77010. Only Qualified Bidders who have complied with the bid procedures set forth herein may participate in the Auction.

16.     If there are no other Qualified Bidders other than the Stalking Horse Bidder, then the Sale Hearing shall be held in this Court on November ___ 2017.   If there are more than one Qualified Bidder and the Trustee conducts an Auction, the Sale Hearing shall be held in this

Court on November ___, 2017.  The Sale Hearing may be adjourned or rescheduled by the Trustee without further notice by an announcement of the adjourned date at the hearing or by the filing of a hearing agenda.

### **Miscellaneous**

17.     In the event there is a conflict between this Order and the Motion or the Stalking Horse Purchase Agreement, this Order shall control and govern.

18.     This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's bankruptcy case.

19.     Nothing herein shall be deemed to or constitute the assumption, assignment or rejection of any executory contract or unexpired lease.

20.     Nothing in this Order shall be deemed or construed to modify the Debtor's obligations under the Credit Agreement, dated as of May 22, 2014, among Ventech Engineers L.P., as Borrower, and Bank of America, as Lender, or any related documents or agreements.

21.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

22.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SIGNED on _____.

_____
The Honorable David R. Jones
United States Bankruptcy Judge

SALE PROCEDURES ORDER                                                    PAGE 7 OF 7

# EXHIBIT 1

## SALE PROCEDURES

A.   <u>Background</u>.  Ventech Engineers L.P. et al.[1] (the "***Debtors***") are debtors in chapter 7 cases, jointly administered under Case No. 17-33203, now pending in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***").  Rodney D. Tow, the Chapter 7 Trustee (the "***Trustee***") for the Debtors' estates, executed a certain Asset Purchase Agreement dated as of October 6, 2017 (the "***Stalking Horse Purchase Agreement***") with ANEAN Consulting, LLC/KHE USA LLC (jointly, the "***Stalking Horse Bidder***"), which agreement is subject to approval by the Bankruptcy Court.

B.   <u>Assets to be Sold</u>.  The assets to be sold by the Trustee consist of (i) certain intellectual property; (ii) name rights; (iii) computer equipment; (iv) software and related licenses; and (v) certain furniture, all as more fully described in the Stalking Horse Purchase Agreement (the "***Transferred Assets***").  The Transferred Assets will be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under § 363(f) of the Bankruptcy Code.  The sale is subject to higher and better offers at the Auction (defined below).  The Transferred Assets are being sold on an AS-IS, WHERE-IS basis.

C.   <u>Sale Notice</u>.  Within three days of the entry of an order approving these sale procedures (the "***Sale Procedures Order***"), the Trustee (or his representative) shall serve the Notice of Auction and Sale Hearing (the "***Sale Notice***"), substantially in the form attached hereto, by first-class mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery or electronic transmission, upon (i) the Office of the United States Trustee for the Southern District of Texas, and (ii) all known creditors and parties-in-interest in these chapter 7 cases, including (a) all parties listed on the Debtors' schedules, (b) all parties requesting notice in this chapter 7 case pursuant to Bankruptcy Rule 2002; and (c) all entities known to have asserted any claim, lien, encumbrance or interest in the Transferred Assets.

D.   <u>Sale Procedures Order</u>.  In accordance with the Sale Procedures Order, the Bankruptcy Court established the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Transferred Assets, the manner in which prospective bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, the receipt and negotiation of bids, the conduct of any subsequent Auction (defined below) and the Bankruptcy Court's approval of the highest or otherwise best bid (collectively, the "***Bidding Process***").  Furthermore, the Sale Procedures Order approved certain bid protections for the Stalking Horse Bidder.

---

[1]   The names of the debtors, along with the last four digits of each debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

E.    Stalking Horse Bidder.    The Trustee has identified ANEAN Consulting, LLC/KHE USA LLC as a stalking horse bidder (the "***Stalking Horse Bidder***") and entered into a purchase agreement with the Stalking Horse Bidder (the "***Stalking Horse Purchase Agreement***"), which proposes to purchase the Transferred Assets for $140,000.00.  Further, the Sale Procedures Order approved a break-up fee in the amount of $10,000 for the Stalking Horse Bidder.

F.    Qualified Bidder.    Unless otherwise determined by the Trustee, in order to participate in the Bidding Process, prior to the Bid Deadline (defined below), each person or entity wishing to participate in the Bidding Process must submit to the Trustee the following information:

(1)    An executed confidentiality agreement containing provisions satisfactory to the Trustee.

(2)    Its most recent financial statements, current financial statements of its owners, or such other financial information, as the Trustee may reasonably determine, that demonstrates the financial capability of the party to consummate the sale of the Transferred Assets within the timeframe set forth herein and under the terms and conditions of the Stalking Horse Purchase Agreement.

(3)    A preliminary (non-binding) written statement demonstrating, to the Trustee's satisfaction, a bona fide interest in purchasing the Transferred Assets from the Debtors, including: (i) the purchase price range (including liabilities, if any, to be assumed by the potential bidder); (ii) a description of the principal methodologies and assumptions used to arrive at the purchase price range; (iii) a description of the additional due diligence required; (iv) a description of any services or other cooperation that the prospective bidder will require from the Trustee after closing and (v) any conditions to closing that the prospective bidder may wish to impose in addition to those set forth in the Stalking Horse Purchase Agreement.

If the Trustee determines that a party has satisfied the foregoing, then the party is a "***Qualified Bidder***."  As promptly as practicable after a prospective bidder delivers all of the materials required above, the Trustee will determine, and will notify the prospective bidder, if such prospective bidder is a Qualified Bidder.  The Stalking Horse Bidder is deemed a Qualified Bidder.

G.    Due Diligence.    The Trustee shall provide the Qualified Bidders access to the Debtors' books and records and reasonable onsite inspection in order conduct their due diligence investigation regarding the Transferred Assets.  To the extent the Transferred Assets are in electronic format, the Trustee shall provide Qualified Bidders access to a computer terminal equipped with the software necessary to access the electronic Transferred Assets.  All Qualified Bidders must complete their due diligence prior to the Auction.

H.    Qualified Bids.    In order to constitute a "***Qualified Bid***," a Qualified Bidder must submit to the Trustee the following (the "***Bid Package***") by the Bid Deadline:

(1)     A purchase agreement (a "***Alternate Purchase Agreement***") for all or part of the Transferred Assets with terms not materially more burdensome to the Trustee or the Debtors' estates than the Stalking Horse Purchase Agreement or otherwise inconsistent with these Sale Procedures, which (a) has been executed by a person with authority to irrevocably bind the bidder; (b) does not provide for the payment to the bidder of any break-up fee, topping fee, expense reimbursement or other similar arrangement; (c) is not subject to any financing contingency, any contingency relating to the completion of unperformed due diligence, any contingency relating to the approval of the bidder's board of directors or other similar internal approvals or consents, any contingency relating to a material adverse change, or any other material conditions precedent to the bidder's obligation to close; (d) is subject to acceptance by the Trustee, on behalf of the Debtors' estates, solely by the Trustee's execution of the Alternate Purchase Agreement and approval of the Alternate Purchase Agreement by the Bankruptcy Court;

(2)     A document reflecting the differences between the Stalking Horse Purchase Agreement and the Alternate Purchase Agreement which may be prepared with a document comparison/redlining software;

(3)     A bank account statement or other records that show the source of funds for the bidder's proposed purchase of the Transferred Assets;

(4)     A signed statement of the bidder (a) disclosing any formal or informal agreements or understandings reached by the bidder with parties-in-interest in the Bankruptcy Case in connection with the bid (or that no such agreements or understandings exist); (b) acknowledging that if chosen as the Successful Bidder (defined below), such bidder can consummate the purchase of the Transferred Assets promptly upon approval of the Bankruptcy Court; and (c) agreeing that the bidder's offer in the Alternate Purchase Agreement is irrevocable until (3) business days after the entry of an order of the Bankruptcy Court approving the Successful Bid (defined below); and

(5)     a deposit (the "***Earnest Money Deposit***") in an amount equal to the greater of ten percent (10%) of the purchase price and $15,000.00 made by cashier's check or by wire transfer of immediately available funds to the Trustee.  Wire transfer instructions may be obtained from the Trustee.

For the avoidance of doubt, the Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Purchase Agreement is deemed a Qualified Bid, for all purposes in connection with the Bidding Process and the Auction.  Bank of America, N.A. ("***BANA***") shall also be deemed a Qualified Bidder with the ability to credit bid the full amount of its secured claim in the event that a Qualified Bid that exceeds the Stalking Horse initial bid is received by the Trustee before the Bid Deadline; provided, however, that the Trustee shall not consummate a sale of the assets for an amount less than the Stalking Horse bid, without the approval of BANA.

I.      Recognition of Stalking Horse Bid.  In the event that the Trustee does not receive a Qualified Bid, other than the Stalking Horse Bid, on or before the Bid Deadline, the Stalking Horse Bid shall be deemed to be the Successful Bidder.

J.      Earnest Money Deposit.  Each Earnest Money Deposit shall be held in escrow by the Trustee until three (3) business days after the closing of the sale of the Transferred Assets (the "**Earnest Money Refund Date**").  If the Successful Bidder (defined below) subsequently defaults or breaches the Successful Bidder's Alternate Purchase Agreement, then the Earnest Money Deposit submitted by such Successful Bidder, together with any accrued interest, shall be deemed forfeited and shall be retained by the Trustee for the benefit of the Debtors' estates.  Any Earnest Money Deposit paid by a bidder who is not selected as the Successful Bidder or Back-Up Bidder shall be returned by the Trustee on or before the Earnest Money Refund Date.

K.      Bid Deadline.  All Bid Packages must be submitted to (i) the Trustee's counsel, Charles M. Rubio, Diamond McCarthy LLP, 909 Fannin Street, 37th Floor, Houston, Texas 77010, (crubio@diamondmccarthy.com); and (ii) BANA's counsel, Toby L. Gerber, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201, (toby.gerber@nortonrosefulbright.com) so as to be received not later than 5:00 p.m. (CST) on November 13, 2017 (the "**Bid Deadline**") or such later date or time that the Trustee, in his reasonable discretion, establishes as the Bid Deadline.

L.      Auction.  If the Trustee receives one or more Qualified Bids in addition to the Stalking Horse bid, then on November 16, 2017 (the "**Auction Date**"), beginning at 10:00 a.m., at the offices of Diamond McCarthy LLP, 909 Fannin Street, 37th Floor, Houston, Texas 77010, or at such other location as may be designated by the Trustee, the Trustee will conduct an auction (the "**Auction**") to determine the highest or best bid.  The Trustee may conduct the Auction in the manner he determines will achieve the maximum recovery for the Debtors' estates.  Only the Trustee, BANA, and Qualified Bidders who have submitted Qualified Bids, and their respective professionals, shall be permitted to attend the Auction, and only Qualified Bidders who have submitted Qualified Bids shall be eligible to participate in (i.e., bid at) the Auction.  No later than 24 hours prior to the Auction Date, the Trustee will notify the Qualified Bidders who have submitted Qualified Bids of the general terms and conditions of the then-highest and best bid for the purchase of all of the Transferred Assets (the "**Initial Bid**").  The Auction may be adjourned at any time and from time to time without further notice except by announcement of the adjourned date or dates prior to or at the Auction or any adjournment thereof.

M.      Auction Process.  The Trustee shall commence the Auction with the Initial Bid. Qualified Bidders will be permitted to increase their bids and to agree to modifications to their bids in order to make their bids more favorable to the Debtors' estates, provided that each bid subsequent to the Initial Bid shall be at least $15,000 greater than the preceding bid (the "**Incremental Bid Amount**").  When evaluating the bids, the Trustee shall, in consultation with BANA, consider the financial and contractual terms of each bid and factors affecting the speed and certainty of closing with respect to each bid.  Such bidding shall continue until the Trustee concludes the Auction of the Transferred Assets.  At the conclusion of the Auction, the Trustee, in consultation with BANA, shall identify the highest and best bid (the "**Successful Bid**"), based upon the foregoing Auction process and the Trustee's determination of the highest or otherwise

best bid from a qualified bidder (the "**Successful Bidder**").   The Trustee shall retain full discretion and right to determine, which bid or combination of bids, if any, constitutes the highest or otherwise best offer based on all circumstances, and which bid or combination of bids should be selected as the Successful Bid, all of which are subject to final approval by the Bankruptcy Court pursuant to the applicable provisions of the Bankruptcy Code.   All bidding shall be conducted at the Auction and no bids shall be tendered or accepted after the Auction has concluded.   The bidder that submits a Qualified Bid that the Trustee determines to be the second highest or otherwise second best offer will be the "back-up bidder" (the "**Back-Up Bidder**") and shall keep its highest bid at the Auction open for acceptance beyond the time period required by this Order (each, a "**Back-Up Bid**") (it being understood that the Trustee shall continue to hold in escrow the Earnest Money Deposit of any party serving as a Back-Up Bidder); provided, however, the Trustee shall not be obligated to seek approval of any such Back-Up Bid.

N.   Objections.   Except as otherwise set forth in the Sale Procedures Order, objections or responses, if any, to the Sale of the Transferred Assets, or any relief requested in the Motion other than the relief granted by the Court in the Sale Procedures Order must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; and (iv) filed with the Clerk of the Bankruptcy Court, by no later than November 14, 2017 (the "**General Objection Deadline**").   If there is more than one Qualified Bidder and an Auction is held and the Trustee elects to proceed with an Alternate Purchase Agreement, the deadline for objecting to such transaction shall be the fifth (5th) day following the date on which the Trustee files and serves a notice announcing his intent to consummate the Alternate Purchase Agreement (the "**Alternate Sale Objection Deadline**").

O.   Hearing Regarding Successful Bid.   If there are no other Qualified Bidders other than the Stalking Horse Bidder, the Trustee will request the Court set a hearing to consider the approval of the sale of the Transferred Assets to the Stalking Horse Bidder on or before November 16, 2017.   If there are more than one Qualified Bidders and the Trustee conducts an Auction, the Trustee will request the Court set a hearing to consider approval of the sale of the Transferred Assets to the Success Bidder on or before November 30, 2017 (the hearing to consider the approval of the sale of the Transferred Assets, the "**Sale Hearing**").   The Trustee shall be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.   Upon the failure to consummate the closing of the transaction contemplated by the Successful Bid because of the occurrence of a breach or default under the terms of the Successful Bid or the Successful Bidder's Alternate Purchase Agreement, the Back-Up Bid, as disclosed at the Sale Hearing, shall be deemed the Successful Bid (each, a "**Successful Back-Up Bid**") without further order of the Bankruptcy Court and the parties shall be authorized and directed to consummate the transaction contemplated by the Successful Back-Up Bid.

P.   Closing.   The Trustee will seek to close the sale of the Transferred Assets within one (1) day of the Sale Hearing.

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS, L.P.** *et al.*,[1] | § | **Case No. 17-33203** |
| | § | |
| **DEBTORS.** | § | **Jointly Administered** |
| | § | |
| | § | **(Chapter 7)** |

<u>**NOTICE OF SALE**</u>

READ THIS NOTICE CAREFULLY.  FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE WILL PERMANENTLY BAR YOU FROM ASSERTING RIGHTS YOU MAY HAVE IN CONNECTION WITH SALE PROCESS.

TO ALL CREDITORS AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT on May 26, 2017, Ventech Engineers L.P., Ventech Engineers LLC, Ventech Fabrication Services LLC, Ventech Engineers International LLC, Ventech Energy LLC, Ventech Engineers North America LLC, Ventech Engineers USA LLC, Ventech Vessel Fabricators LLC, Ventech Global Projects, Inc., Ventech International Projects LLC, Ventech Global Construction LLC, Ventech Modular Fabricators LLC, Ventech Refining Solutions LLC, Ventech Plant Constructors LLC, Ventech Engineers & Fabricators, LLC, Ventech Industrial Contractors, LLC; Ventech XTL LLC, and Ventech XTL Oklahoma City LLC (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code thereby commencing the above-referenced chapter 7 cases (the "<u>Chapter 7 Cases</u>") in the U.S. Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>").

PLEASE TAKE FURTHER NOTICE THAT Rodney D. Tow was appointed chapter 7 trustee of the Debtors' bankruptcy estates.

PLEASE TAKE FURTHER NOTICE THAT on October 10, 2017, the Trustee filed a motion [ECF No. [●]] (the "<u>Motion</u>")[2] for an order approving, among other things, entry of an

---

[1]     The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

order (the "Sale Order") authorizing and approving the sale of certain of the Debtors' assets (collectively, the "Transferred Assets") to one or more purchasers submitting the highest or otherwise best offers therefor (the "Sale").  Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

PLEASE TAKE FURTHER NOTICE that the Trustee is soliciting offers for the purchase of any or all of the Transferred Assets in accordance consistent with the sale procedures (the "Sale Procedures") approved by the Bankruptcy Court by entry of an order dated October [●], 2017 (the "Sale Procedures Order").  All interested bidders should carefully read the Sale Procedures and Sale Procedures Order.  To the extent that there are any inconsistencies between this notice and the Sale Procedures or Sale Procedures Order, the Sale Procedures or Sale Procedures Order, as applicable, shall govern in all respects.

PLEASE TAKE FURHTER NOTICE that the Trustee has identified ANEAN Consulting, LLC/KHE USA LLC as a Stalking Horse Bidder.  The Stalking Horse Bidder has offered to purchase the Transferred Assets for $140,000.00.

PLEASE TAKE FURTHER NOTICE that, if the Trustee receives more than one qualified bid within the requirements and time frame specified by the Sale Procedures, the Trustee may determine, in the exercise of his business judgment, to schedule an auction (the "Auction") to request additional competitive bids from qualified bidders with respect to the Sale of the Transferred Assets on November 16, 2017 at the offices of Diamond McCarthy, LLP, 909 Fannin Street, 37th Floor, Houston, TX, 77010, or such later date and time as selected by the Trustee The Auction shall be conducted in a timely fashion according to the Sale Procedures.

PLEASE TAKE FURTHER NOTICE if there are no other Qualified Bidders other than the Stalking Horse Bidder, then a hearing to consider approval of the Sale of any or all of the Transferred Assets to the Stalking Horse Bidder shall take place on November [●], 2017 at __:____ (CT) before the Honorable David R. Jones at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 400, 515 Rusk, Houston, TX 77002.

PLEASE TAKE FURTHER NOTICE if there are more than one Qualified Bidders an an Auction is held, then a hearing to consider approval of the Sale of any or all of the Transferred Assets to the Successful Bidder shall take place on November [●], 2017 at __:____ (CT) before the Honorable David R. Jones at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 400, 515 Rusk, Houston, TX 77002.

PLEASE TAKE FURTHER NOTICE THAT except as otherwise set forth in the Sale Procedures Order, objections or responses, if any, to the Sale of the Transferred Assets, or any relief requested in the Motion other than the relief granted by the Court in the Sale Procedures Order must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules of the Court; and (iv) filed with the Clerk of the Bankruptcy Court, by no later than November 14, 2017 (the "General Objection

---

[2]    The Debtor sought relief pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Deadline"). If there is more than one Qualified Bidder and an Auction is held and the Trustee elects to proceed with an Alternate Purchase Agreement, the deadline for objecting to such transaction shall be the fifth (5th) day following the date on which the Trustee files and serves a notice announcing his intent to consummate the Alternate Purchase Agreement (the "Alternate Sale Objection Deadline").

### CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE SALE PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT CERTAIN OF THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: October [●], 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
TBA No. 24083768
Michael D. Fritz
TBA No. 24083029
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199
crubio@diamondmccarthy.com
mfritz@diamondmccarthy.com

*Counsel for Rodney D. Tow, Chapter 7*
*Trustee of the Debtors*