## THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS, L.P.** *et al.*,[1] | § | **Case No. 17-33203** |
| | § | |
| | § | **Jointly Administered** |
| **DEBTORS.** | § | **(Chapter 7)** |
| | § | |

## TRUSTEE'S REPORT OF AUCTION
## AND NOTICE OF PROPOSED SALE ORDER

TO THE HONORABLE DAVID R. JONES, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, the Chapter 7 Trustee (the "Trustee") of the estates of the above-captioned debtors (the "Debtors"), files this Report of Auction and represents as follows:

1.      On November 16, 2017, the Trustee conducted an Auction of certain of the Debtors' assets in accordance with the Revised Bidding Procedures approved by the Court pursuant to the *Order Amending Sale Procedures* [Dkt. 54].[2]

2.      There were two bidders in attendance at the Auction: ANEAN Consulting and LLC/KHE USA LLC, the Stalking Horse Bidder, and Universal Plant Processing, Inc.

3.      Universal Plant Processing, Inc. is the Successful Bidder with a bid in the amount of $305.000.

---

[1]     The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

Capitalized terms used but not defined herein have the meanings assigned to such terms in the Revised Bidding Procedures.

4.      ANEAN Consulting and LLC/KHE USA LLC is the Back-Up Bidder with a bid in the amount of $290,000.

5.      A copy of the proposed order approving the sale is attached hereto.

Dated: November 16, 2017                    Respectfully submitted,

                                            DIAMOND McCARTHY LLP

                                            */s/  Charles M. Rubio*
                                            Charles M. Rubio
                                            TBA No. 24083768
                                            crubio@diamondmccarthy.com
                                            Michael D. Fritz
                                            TBA No. 24083029
                                            mfritz@diamondmccarthy.com
                                            Two Houston Center
                                            909 Fannin, 37th Floor
                                            Houston, TX 77010
                                            Telephone: (713) 333-5100
                                            Facsimile: (713) 333-5199

                                            *Counsel for Rodney D. Tow, Chapter 7
                                            Trustee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 16, 2017, a true and correct copy of the foregoing was served on all parties registered to receive service through the CM/ECF system.

                                            */s/ Charles M. Rubio*
                                            Charles M. Rubio

**<u>Proposed Sale Order</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS,** | § | **Case No. 17-33203** |
| **L.P.** *et al.*,[1] | § | |
| | § | **Jointly Administered** |
| **DEBTORS.** | § | |
| | § | **(Chapter 7)** |

## ORDER APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS

Upon consideration of the motion, as supplemented (the "Motion")[2] [ECF Nos. 37 & 38] filed by Rodney D. Tow, chapter 7 trustee (the "Trustee") for the estates of the Debtors seeking entry of an order authorizing and approving, among other things, the sale of certain of the Debtors' assets (the "Sale"), pursuant to that certain Asset Purchase Agreement dated November 15, 2017 (the "Purchase Agreement") attached hereto as Exhibit A,[3] by and between the Trustee and Universal Plant Services, Inc. (and including any other entity that may be formed or designated in order to close the sale contemplated hereunder) (the "Buyer"); and in accordance with those certain Bidding Procedures, approved by this Court, as revised [ECF No. 54] (as amended, the "Bidding Procedures"); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other

---

[1]   The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Purchase Agreement, as applicable.

[3]   The sales price is changed to $305,000.00 based on the results of the Auction.

parties-in-interest; and after due deliberation thereon, and good and sufficient cause appearing

therefor, including for the reasons stated on the record at the hearing seeking approval of the Sale

(the "Sale Hearing"):

IT IS HEREBY FOUND AND DETERMINED THAT:[4]

     A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief

requested in the Motion pursuant to 28 U.S.C. § 1334.  Venue of this Chapter 11 Case and the

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).

     B.     The statutory and legal predicates for the relief requested in the Motion are

§§ 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended,

the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

     C.     In accordance with the provisions of the *Order Approving Sale Procedures* [ECF

Nos. 47 & 54] (as revised, the "Sale Procedures Order"), and as evidenced by the certificate of

service previously filed with this Court, the Trustee served the Sale Notice (as defined in the Sale

Procedures Order), together with a copy of the Sale Procedures Order and the Sale Procedures

(as defined in the Sale Procedures Order), on:  (i) the Office of the United States Trustee for the

Southern District of Texas, and (ii) all known creditors and parties-in-interest in these chapter 7

cases, including (a) all parties listed on the Debtors' schedules, (b) all parties requesting notice in

this chapter 7 case pursuant to Bankruptcy Rule 2002; and (c) all entities known to have asserted

any claim, lien, encumbrance or interest in the Transferred Assets.  The notice given by the

Trustee of the Motion, the Sale Procedures Order, the Sale Procedures, the Sale Hearing, and the

---

[4]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

Sale constitutes good and sufficient notice of the relief granted by this Order and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

D.      The Trustee and the Buyer negotiated, proposed, and entered into the Purchase Agreement without collusion, in good faith, and from arm's-length bargaining positions.

E.      The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in §§ 101(31) and 101(2) of the Bankruptcy Code.  Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under § 363(n) of the Bankruptcy Code.

F.      The Buyer is purchasing the Transferred Assets in good faith and is a good-faith Buyer within the meaning of § 363(m) of the Bankruptcy Code.  The Buyer proceeded in good faith in connection with all aspects of the Sale.  Accordingly, the Buyer is entitled to all of the protections afforded under § 363(m) of the Bankruptcy Code.

G.      Other parties have had a reasonable opportunity to make a higher or otherwise better offer to purchase the Transferred Assets.  The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Transferred Assets and the Trustee's selection of the Purchase Agreement as the Successful Bid constitute a valid and sound exercise of the Trustee's business judgment.

H.      The consideration provided by the Buyer pursuant to the Purchase Agreement (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration (as

3

those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under Law.

I.      The Buyer is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between the Buyer and the Debtors.  The Buyer is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtors.  The Buyer will not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors (whether under federal or state law or otherwise) as a result of the sale of the Transferred Assets.

J.      All parties-in-interest have the ability and the opportunity to assert claims against the Debtors.

K.      The consummation of the sale of the Transferred Assets to the Buyer is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, §§ 105(a), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  In particular, the Trustee may sell the Transferred Assets free and clear of all Liens and Claims of any kind or nature whatsoever because, in each case, one or more of the standards set forth in §§ 363(f)(l)-(5) of the Bankruptcy Code have been satisfied.  Any party with an interest in the Transferred Assets who did not object, or who withdrew its objection, to the Sale or the Motion is deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code.  Any party with a lien, claim, or other interest in the Transferred Assets who did object falls within one or more of the other subsections of § 363(f) of the Bankruptcy Code and is adequately protected by having its lien, claim, or other interest, if any, attach to the net cash proceeds of the Sale ultimately

4

attributable to the Transferred Assets against or in which such liens or other interests are asserted with the same validity, enforceability, priority, and force and effect as they had against the Transferred Assets or their proceeds as of the Petition Date.

L.     The Trustee served the Sale Notice (as defined in the Sale Procedures Order), together with a copy of the Sale Procedures Order and the Sale Procedures (as defined in the Sale Procedures Order) on each all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in any of the Transferred Assets.  None of these parties filed an objection to the Motion or have otherwise objected to the relief granted pursuant to this Order.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     All objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

3.     Pursuant to §§ 105(a), 365(b), and 365(f) of the Bankruptcy Code, the Trustee is authorized to sell and transfer all of the Debtors' right, title and interest in and to the Transferred Assets to the Buyer in accordance with the Purchase Agreement (including any ancillary documents) on the Closing Date and such sale and transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Transferred Assets, (b) upon the Trustee's receipt of the Purchase Price, vest the Buyer with all right, title, and interest of the Debtors to the Transferred Assets, free and clear of all Liens, Claims, and other interests in and on the Transferred Assets pursuant to § 363(f) of the Bankruptcy Code, and (c) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the state in which Buyer is incorporated and any other applicable non-bankruptcy Laws.

4.     Except as otherwise provided in the Purchase Agreement, all Persons (including, without limitation, customers, vendors, lessors, warehousemen, mechanics, repairmen, repair facility operators, storage facility operators, bailees, consignees, and other parties in possession of any of the Transferred Assets at any time) holding liens or claims of any kind or nature whatsoever against the Debtors or the Transferred Assets shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against the Buyer, any Affiliates of the Buyer (as they existed immediately prior to the Closing), or the Transferred Assets, including any action, claim, or other proceeding seeking to prevent or interfere with the consummation of the Sale, with the retrieval by the Buyer or the delivery to the Buyer of possession of the Transferred Assets, or with any access to or any use, benefit, or enjoyment of the Transferred Assets by the Buyer.  All Persons that are in possession of any of the Transferred Assets on the Closing Date are directed to surrender possession of such Transferred Assets to the Buyer or its assignee on the Closing Date (or as soon as possible after demand is made by the Buyer following the Closing Date).  Following the Closing Date, no holder of a lien, claim or other interest in or against the Debtors or the Transferred Assets shall interfere with the Buyer's title to or use and enjoyment of the Transferred Assets based on or related to such lien, claim, or other interest.

5.     Obligations of the Debtors relating to taxes, whether arising under law, by the Purchase Agreement, or otherwise, shall be fulfilled by the party responsible for such obligations under the Purchase Agreement.

6.     The Buyer will not have any successor or transferee liability for liabilities of the Debtors or any Affiliate of the Debtors (whether under law or otherwise) as a result of the sale of

the Transferred Assets; provided, notwithstanding the foregoing, Buyer (including any of its successors and assigns) shall be bound by the Debtor's non-disclosure obligations contained in all of the Debtor's confidentiality agreements and nondisclosure agreements listed on <u>Exhibit B</u> (the "<u>Pre-Petition Confidentiality Agreement</u>") and Buyer (including any of its successors and assigns) is solely responsible for any post-closing breaches of the non-disclosure obligations contained in the Pre-Prepetition Confidentiality Agreements that arise from Buyer's actions or use of the Transferred Assets; provided further however, the Buyer is not responsible for any other party's breach of the Pre-Petition Confidentiality Agreements.

7.      All other liens or other interests in or on the Transferred Assets attach to the net cash proceeds of the Sale ultimately attributable to the Transferred Assets against or in which such liens or other interests are asserted, subject to the terms of such liens or other interests, with the same validity, enforceability, priority, and force and effect as they had against the Transferred Assets or their proceeds as of the Petition Date, subject to any rights, claims and defenses any parties-in-interest may possess with respect thereto.

8.      No broker or party has a claim to any commission, broker's fee, finder's fee, or similar fee as a result of having negotiated the Purchase Agreement for, or on behalf of, the Trustee or the Buyer.

9.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens and claims of record.

10.     The Trustee is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the Purchase Agreement (including any ancillary documents) and this Order.

11.     The terms of this Order shall be binding on and inure to the benefit of the Trustee, the Buyer, all creditors and all other parties-in-interest, and any successors of such parties.

12.     Notwithstanding anything to the contrary in this Order, the Trustee, in accordance with §§ 105(a), 363, and 365 of the Bankruptcy Code, hereby assumes and assigns to the Buyer, effective upon the Closing Date, those certain contracts between the applicable Debtors and Velocys, Inc. ("Velocys") as set forth on Exhibit C ("Velocys Contracts").  The Buyer entity Universal Plant Services, Inc. hereby assumes the Velocys Contracts and all liabilities and obligations thereunder, but does not assume liability incurred by the Debtor or the Trustee under the Velocys Contracts prior to the Closing Date, and such assumption shall be binding upon all successors and assignees of Buyer.  After the Closing Date, Buyer shall notify Velocys of any facts or events that results in a successor or assignee of Buyer, and any such successor or assignee of  Buyer that obtains all or part of the Transferred Assets shall be deemed to assume the Velocys Contracts and all liabilities and obligations thereunder, but does not assume liability incurred by the Debtor or the Trustee under the Velocys Contracts prior to the Closing Date.  The assumption of the Velocys Contracts and all liabilities and obligations thereunder shall not require any other writing, and Velocys may enforce the provisions of the Velocys Contracts against the Buyer and its successors and assigns in accordance with the Velocys Contracts and applicable law.

13.     The provisions of this Order are non-severable and mutually dependent.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry and not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rules 6004(h) and 6006(d) or otherwise.

15.     To the extent that this Order is inconsistent with the Purchase Agreement or any prior order or pleading with respect to the Motion in these Chapter 7 Cases, the terms of this Order shall govern.

16.     All amounts to be paid to Buyer pursuant to the Purchase Agreement constitute administrative expenses under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and are immediately payable, if and when the obligations of Seller arise under the Purchase Agreement, without any further order of the Bankruptcy Court.

17.     Notwithstanding any other provision of this Order, Buyer will be obligated to provide the Trustee reasonable access to the servers during normal business hours so the Trustee may obtain information on the servers necessary to administer the Bankruptcy Case.

18.     Notwithstanding any provision in the Order to the contrary, Buyer will provide Bank of America, N.A. reasonable access to the servers and/or Intellectual Property in order for Bank of America, N.A. to continue to retrieve project data at its expense.

19.     The Buyer will provide any contract counter-party to a Pre-Petition Confidentiality Agreement, including Velocys, Inc. (each a "Confidential Information Counter-Party"), reasonable access during normal business hours to the servers and/or Intellectual Property for such Confidential Information Counter-Party to conduct an audit at its expense to determine if there is any information on the servers or in the Intellectual Property that is covered by a Pre-Petition Confidentiality Agreement that should be removed.  This right to audit expires when the associated Pre-Petition Confidentiality Agreement expires.   If there is any dispute between such contract counter-party and the Buyer then the parties can seek to resolve the dispute in the Bankruptcy Court or any other court of competent jurisdiction.

20.     The Trustee shall use reasonable efforts to remove any confidential information that he knows is owned by another party from any of the Debtor's remaining physical or electronic storages devices after the Closing Date; provided that the Trustee is authorized to keep a copy of any or all of the Debtor's information that was property of the Debtor's estate on the Petition Date if the Trustee determines in his sole discretion that retention is or may be necessary to administer the Debtors' Chapter 7 bankruptcy estates.

21.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Trustee is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Transferred Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order, (c) protect the Buyer against any liens or claims in or against the Debtors or the Transferred Assets of any kind or nature whatsoever; and (d) enter any orders under §§ 105, 363 or 365 of the Bankruptcy Code with respect to the Assumed and Assigned Contracts; *provided, however*, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

_____
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

Purchase Agreement

*EX A*

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "***Agreement***") is entered into as of November 15, 2017 (the "***Effective Date***"), between Universal Plant Services, Inc., a Texas corporation (referred to as "***Buyer***") and Rodney D. Tow in his capacity as the Chapter 7 bankruptcy trustee ("***Seller***"; together with Buyer, the "***Parties***") for the bankruptcy estates of Ventech Engineers L.P. and its affiliated debtors identified as Ventech Entities[1] (the "***Debtors,***" jointly administered under Case No. 17-33203 (the "***Chapter 7 Cases***") filed under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101—1532 (as amended, the ***Bankruptcy Code***") pending in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***").

### RECITALS

A.     WHEREAS, before filing the Chapter 7 Cases, the Debtors operated engineering, procurement, and construction companies that focused on modular systems design and fabrication for petroleum refiners and related clients;

B.     WHEREAS, Seller was appointed as chapter 7 trustee for the Debtors' estates on May 30, 2017; and

C.     WHEREAS, Buyer wishes to purchase the Debtors' intellectual property, rights to use of Debtors' names, and certain of the Debtors' property.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   Sale and Transfer of Assets

    1.1     Assets to be Sold. On the terms and subject to the conditions of this Agreement, Seller shall sell, assign, transfer, convey, and deliver to Buyer, on the Closing Date (as hereinafter defined), and Buyer shall purchase from Seller, all of Seller's right, title and interest as of the Closing Date in and to the following assets of Seller (collectively, the "***Transferred Assets***"):

    1.1.1     Intellectual Property. All the Debtors' right, title, and interest to the know-how, trade secrets, confidential or proprietary information, technical information, data, process technology, plans, drawings, blue prints, design documents, design standards, design data, project documentation, quality control records and documentation, vendor records, specifications, previous project references, all estimating data (including past estimates); all project control data and tools

---

[1]     The names of the debtors in the Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549) ("Ventech Entities").

including engineering measurement systems, pasts costs; all intellectual property rights, statutory or common law, worldwide, including (i) trademarks, service marks, trade dress, slogans, logos and all goodwill associated therewith, and any applications or registrations for any of the foregoing; (ii) copyrights and any applications or registrations for any of the foregoing; and (iii) patents, all confidential know-how, trade secrets and similar proprietary rights in confidential inventions, discoveries, improvements, processes, techniques, devices, methods, patterns, formulae, specifications, and lists of suppliers, vendors, customers, and distributors; all marketing material including but not limited to letterhead, presentations, pamphlets, videos and displays related to Ventech, or products and services of Ventech; and all other intellectual property and intellectual property rights and assets; all rights, interests and protections that are associated with, similar to, or required for the exercise of, any of the foregoing; and, any and all other similar material and information contained in the computerized files preserved on a hard drive by the Debtors and any and all other similar material and information contained in the computerized files preserved by the Debtors including, the files located on that certain Amazon Web Services drive referred to as "ventech-ip."

      1.1.2   <u>Name Rights</u>. All the Debtors' names, assumed fictional business names, trade names, rights to the use of any names, registered and unregistered trademarks, service marks, rights to brands, logo pictures, artwork, and photographs, the telephone number [713-477-0201] and all rights in internet web sites and internet domain names including www.ventech-eng.com, email addresses, websites, URLs, and internet domain name registrations, LinkedIn site, and any other websites representing Ventech or sharing Ventech content. At Buyer's expense and request, the Trustee will change the names of the Ventech Entities with governmental agencies, including, but not limited to the Texas Secretary of State.

      1.1.3   <u>Contract Rights</u>. For the purposes of protecting the intellectual property the Buyer is acquiring hereunder, the right to enforce all contract terms contained in any agreement between the Debtor and any former officer, employee or agent that prohibits such Party from using the intellectual property.

      1.1.4   <u>Computer Equipment</u>. Twenty (20) laptops, ten (10) engineering workstations, and all of the Debtors' servers; *provided, however*, that Buyer hereby agrees to maintain the servers in ordinary working condition and provide the Seller with access to the contents of the servers to the extent Seller requests access in connection with the administration of the Chapter 7 Cases. The parties shall mutually agree to the specific laptops and workstations prior to Closing.

      1.1.5   <u>Furniture</u>. Four (4) computer desks, four (4) computer chairs, one (1) conference table with accompanying chairs, and ten (10) cubicles with accompanying chairs. The parties shall mutually agree to the specific furniture prior to Closing.

   1.2   <u>Assumed Liabilities</u>. Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge when due all liabilities and obligations arising out of or relating to the Transferred Assets on or after the Closing (collectively, the "***Assumed Liabilities***"), including the following:

      a.   all liabilities and obligations for Taxes relating to the Transferred Assets and the Assumed Liabilities for any taxable period ending after the Closing Date; and

    b.  all other liabilities and obligations arising out of or relating to Buyer's ownership and operation of the Transferred Assets on or after the Closing.

1.3    <u>Excluded Liabilities.</u>  Buyer shall not assume and shall not be responsible to pay, perform or discharge any of the following liabilities or obligations of Seller (collectively, the "***Excluded Liabilities***"):

    a.  any liabilities or obligations arising out of or relating to Seller's ownership and operation of the Transferred Assets prior to the Closing;

    b.  any liabilities or obligations relating to or arising out of the Excluded Assets; and

    c.  any liabilities or obligations for (i) Taxes relating to the Transferred Assets and the Assumed Liabilities for any taxable period ending on or prior to the Closing Date and (ii) any other Taxes of Seller for any taxable period.

1.4    <u>Consideration</u>. Buyer shall pay to Seller as full consideration for the purchase of the Transferred Assets the amount of ONE HUNDRED FIFTY-FIVE THOUSAND DOLLARS AND NO CENTS ($155,000.00) (the "***Purchase Price***"), which is payable in full at Closing (as hereinafter defined). Buyer shall submit to Seller a cash deposit (the "***Earnest Money Deposit***") in the amount of ten percent (10%) of the Purchase Price within two business days of the Effective Date. The Earnest Money Deposit shall be held and disbursed by Seller in accordance with the terms of this Agreement and in accordance with any requirements of the Bankruptcy Court.

1.4    <u>Assumption of Liabilities or Obligations</u>.

(a) Notwithstanding anything in this Agreement or any related agreement to the contrary, neither Buyer nor any of its affiliates shall assume, or be obligated or become liable in any way whatsoever for, the payment or performance of any liabilities (i) of any Seller or any of its affiliates, (ii) to the extent arising out of, relating to, or in connection with Sellers' ownership or operation of the business or the Transferred Assets (or the acts or omissions of Sellers and/or their respective affiliates in connection therewith) prior to the Closing Date (whether or not such liabilities manifest themselves or are first discovered on or after the Closing Date), including with respect to any such liabilities for (x) taxes related to any taxable period (or the portion of a period) ending on or before the Closing Date or (y) any pending or threatened Litigation, or (iii) arising out of, relating to, or in connection with any excluded assets, and, in each case, Sellers and their respective successors and assigns, shall remain solely liable and responsible with respect to all such liabilities (subject to Sellers' available defenses in respect of such liabilities); *provided, however,* that Buyer will become responsible for all liabilities arising out of or related to Buyer's or its affiliates' ownership of the Transferred Assets to the extent that such liabilities arise from acts, events or conditions relating to the period after the Closing Date.

(b) Without limiting the generality of Section 1.4 (a) above, the Parties agree that the transactions contemplated under this Agreement are not intended to amount to a consolidation, merger or de facto merger of Buyer and any of Sellers, and that there is no substantial continuity between Buyer and Sellers.

2. <u>Closing</u>.

2.1    <u>Closing Date</u>.  The purchase and sale provided for in this Agreement (the "***Closing***") shall take place at the offices of Seller's counsel at 909 Fannin St., 37th Floor, Houston, Texas 77010, commencing at 10:00 a.m. (local time) on the day that is one (1) business day after the final condition precedent to closing set forth in Section 3 has been satisfied or such other date as may be set by mutual agreement of the Parties (the "***Closing Date***").  The Parties may mutually agree to extend the Closing Date.

2.2    <u>Seller's Deliveries to Buyer</u>.  On the Closing Date, Seller shall deliver to Buyer the following:

2.2.1    a copy of an order entered by the Bankruptcy Court approving the sale contemplated by this Agreement (as further defined in Section 5.2 below, the "***Sale Confirmation Order***");

2.2.2    a bill of sale, duly executed by Seller, under which Seller shall transfer the Transferred Assets (the "***Bill of Sale***") free and clear of any liens, claims and encumbrances except as otherwise provided herein;

2.2.3    all other bills of sale, assignments, certificates of title, documents, agreements, and other instruments of transfer and conveyance, as may reasonably be necessary to effectuate the sale contemplated herein as requested by Buyer, each in form and substance satisfactory to Buyer and its legal counsel and executed by Seller (collectively with the Bill of Sale, the "***Transaction Documents***"); and

2.2.4    any records requested by Buyer (e.g., operating records, engineering designs, blueprints, plans, specifications, procedures, studies, reports and equipment repair, safety, maintenance or service records of the Debtors) relating primarily to the Transferred Assets, confidentiality agreements entered into by the Ventech Entities or Seller regarding the Transferred Assets, including but not limited to any confidentiality agreements of employees of Ventech Entities or third parties that inspected or viewed the Transferred Assets or the  data room and information and listing the data accessed as part of the bidding process, that are in Seller's possession and custody, except for the Debtors' financial and accounting information.

2.3    <u>Buyer's Deliveries to Seller</u>. On the Closing Date, Buyer shall deliver to Seller the following:

2.3.1    the Purchase Price by wire transfer to an account specified by Seller in a writing delivered to Buyer at least three (3) business days prior to the Closing Date; and

2.3.2    copies of the Transaction Documents, duly executed by Buyer.

2.4    <u>Taxes Resulting from the Sale</u>.  All taxes, if any, that may be imposed by reason of the sale, transfer, assignment, and delivery of the Transferred Assets and that are not exempt under the Bankruptcy Code, shall be borne by Buyer.  Buyer and Seller shall cooperate to determine the

amount of any such transfer taxes payable in connection with the transactions contemplated under this Agreement.

3.  Conditions Precedent to Closing.

    3.1   Conditions to Seller's Obligations. Subject to Section 6 below, Seller's obligation to make the deliveries required of Seller at the Closing Date shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

        3.1.1   Seller shall have received the total Purchase Price; and

        3.1.2   the Bankruptcy Court shall have entered the Sale Confirmation Order and such order is not subject of a stay (pursuant to Bankruptcy Rule 6004 or otherwise) or appeal as of the Closing Date, or in the event a stay is in effect the Sale Confirmation Order shall have become final.

    3.2   Conditions to Buyer's Obligations. Subject to Section 6 below, Buyer's obligation to make the deliveries required of Buyer at the Closing shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

        3.2.1   Seller shall have executed and delivered all the Transaction Documents reasonably requested by Buyer; and

        3.2.2   the Bankruptcy Court shall have entered the Sale Confirmation Order and such order is not subject of a stay (pursuant to Bankruptcy Rule 6004 or otherwise) or appeal as of the Closing Date, or in the event a stay is in effect the Sale Confirmation Order shall have become final, and the terms of the Sale Confirmation Order shall be in a form satisfactory to Buyer in its sole discretion, including approval by the Bankruptcy Court of the sale contemplated by this Agreement and the Bankruptcy Court's maintenance of continuing jurisdiction over any disputes arising from this Agreement.

4.  Representations

    4.1   Power and Authority. Pursuant to the Sale Confirmation Order, Seller has the full power and authority to execute, deliver, and perform his obligations under this Agreement. Upon entry by the Bankruptcy Court of an order authorizing and approving this Agreement and the Transaction, this Agreement and all agreements, instruments, and documents herein provided to be executed by Seller are and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Seller.

    4.2   Title to Transferred Assets. Seller represents that at the Closing, Buyer will acquire all of Debtors' right, title, and interest in and to all the Transferred Assets, free and clear of any liens, claims or encumbrances.

    4.3   "AS-IS, WHERE IS" Transaction. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT OR THE TRANSACTION DOCUMENTS, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE TRANSFERRED ASSETS, INCLUDING INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION

WITH THE TRANSFERRED ASSETS, THE STATUS OF ANY LICENSE OR PATENT, THE VALUE OF THE TRANSFERRED ASSETS (OR ANY PORTION THEREOF), OR THE MERCHANTABILITY OR FITNESS OF THE TRANSFERRED ASSETS FOR ANY PARTICULAR PURPOSE. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY OF THE TRANSFERRED ASSETS. BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE TRANSFERRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE TRANSFERRED ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE TRANSFERRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT OR THE TRANSACTION DOCUMENTS, BUYER IS DOING SO BASED SOLELY UPON INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE TRANSFERRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

4.4     Waiver of Consumer Rights.  BUYER HEREBY WAIVES ITS RIGHT, IF ANY, UNDER THE DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT, SECTION 17.41 *et seq.*, TEXAS BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, BUYER VOLUNTARILY CONSENTS TO THIS WAIVER. IN ADDITION, TO THE EXTENT APPLICABLE TO THE TRANSFERRED ASSETS OR ANY PORTION THEREOF, BUYER HEREBY WAIVES THE PROVISIONS OF THE TEXAS CONSUMER PROTECTION LAWS REGARDING FALSE, MISLEADING AND DECEPTIVE BUSINESS PRACTICES, UNCONSCIONABLE ACTIONS, AND BREACHES OF WARRANTY; PROVIDED, HOWEVER, THAT NOTHING HEREIN CONTAINED SHALL BE DEEMED A WAIVER BY BUYER WHERE SUCH WAIVER IS PROHIBITED BY LAW.  IN ORDER TO EVIDENCE ITS ABILITY TO GRANT SUCH WAIVER, BUYER HEREBY REPRESENTS AND WARRANTS TO SELLER THAT BUYER (i) IS IN THE BUSINESS OF SEEKING OR ACQUIRING, BY PURCHASE OR LEASE, GOODS OR SERVICES FOR COMMERCIAL OR BUSINESS USE, (ii) HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THE TRANSACTION CONTEMPLATED HEREBY, AND (iii) IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION.

5.  Bankruptcy Matters

5.1     Agreement Subject to Better Bids.  This Agreement is subject to consideration by Seller of higher or better competing bids from Qualified Bidders for all or substantially all of the Transferred Assets (an "*Alternative Transaction*") in accordance with the Bid Procedures Order (defined below).

5.2     Bankruptcy Court Approval.  Seller and Buyer acknowledge and agree that this Agreement and the transactions contemplated hereby are contingent upon the approval and authorization of the Bankruptcy Court.

5.3     [Intentionally Omitted]

5.4     Sale Confirmation Order.

5.4.1    Subject to the Bid Procedures Order, Seller shall use its commercially reasonable efforts to promptly obtain the entry of an order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby (the "**Sale Confirmation Order**").

5.4.2    The Sale Confirmation Order contemplated hereby shall contain the following provisions (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Bankruptcy Court as part of the Sale Confirmation Order):

(i)     the sale of the Transferred Assets by Seller to Buyer: (A) are or will be legal, valid, and effective transfers of the Transferred Assets; (B) vests or will vest Buyer with all right, title, and interest of such Seller to the Transferred Assets free and clear of all encumbrances and claims pursuant to § 363(f) of the Bankruptcy Code except as otherwise specifically provided herein; and (C) constitute transfers for reasonably equivalent value and fair consideration;

(ii)    all persons are enjoined from taking any actions against Buyer or any affiliate or assignee of Buyer to recover any claim that such person has solely against Seller or any of the Ventech Entities;

(iii)   the provisions of the Sale Confirmation Order are non-severable and mutually dependent;

(iv)    Buyer has acted in good faith within the meaning of § 363(m) of the Bankruptcy Code, the transactions contemplated by this Agreement are undertaken by Buyer and Seller at arm's length, without collusion and in good faith within the meaning of § 363(m) of the Bankruptcy Code, and such parties are entitled to the protections of § 363(m) of the Bankruptcy Code;

(v)     the Bankruptcy Court retains exclusive jurisdiction to interpret and enforce the provisions of this Agreement and the Sale Confirmation Order in all respects including, but not limited to, enforcement of Buyer's purchased rights under confidentiality and non-competition agreements with former officers, employees and their agents; *provided, however*, that in the event the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other federal court in the Southern District of Texas or Texas state court in Harris County, Texas, having competent jurisdiction with respect to any such matter; and

(vi)    such other provisions as Buyer and Seller may agree to.

5.4.3    Any changes to the form of the Sale Confirmation Order affecting the economic terms of the transactions contemplated by this Agreement or the closing conditions hereof

must be approved by Buyer in its sole and absolute discretion and Seller in its sole and absolute discretion. Any other changes to the form of the Sale Confirmation Order must be approved by Buyer in its reasonable discretion and by Seller in its reasonable discretion.

5.4.4   In the event the Sale Confirmation Order is appealed, Seller and Buyer shall each use their respective commercially reasonable efforts to defend such appeal or, by mutual written agreement, close the transactions contemplated hereby unless such closing is stayed by Bankruptcy Court order. Seller shall keep Buyer reasonably informed of the status of its efforts to obtain the entry of the Sale Confirmation Order. Seller shall give Buyer reasonable advance written notice of any hearings regarding the motions required to obtain the issuance of the Sale Confirmation Order and Buyer shall have the right to attend and be heard at any such hearings.

5.5   Cooperation in Bankruptcy Matters.

5.5.1   Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Bid Procedures Order and the Sale Confirmation Order, such as furnishing affidavits, non-confidential financial information, confidential information subject to a reasonable form of confidentiality agreement or other documents or information for filing with the Bankruptcy Court and making its representatives available to be interviewed by Seller's attorneys and to testify before the Bankruptcy Court and at depositions.

5.5.2   If a written objection is filed to the motion seeking approval of this Agreement, which is an objection that would prohibit or otherwise prevent the Closing from occurring pursuant to the terms of this Agreement, Seller and Buyer shall use commercially reasonable efforts to have such objection overruled.

6.   Termination.

6.1   Termination Events.  This Agreement may be terminated as follows:

6.1.1   by mutual written consent of Buyer and Seller;

6.1.2   by Buyer upon written notice to Seller:

(i)   if a material breach of any provision of this Agreement has been committed by Seller and such breach has not been waived by Buyer; *provided however*, that if such breach is curable within a reasonable time after such breach, then, for so long as Seller continues to use its commercially reasonable efforts to cure such breach, Buyer may not terminate pursuant to this Section 6.1.2(i);

(ii)   if any secured creditor of any Debtor obtains relief from the automatic stay to foreclose on any of the Transferred Assets;

(iii)   if the Sale Confirmation Order is not entered by the earlier of (a) November 30, 2017 or (b) upon the date on which the Bankruptcy Court shall have stated unconditionally that it will not enter the Sale Confirmation Order; *provided however*, that this Agreement may not be terminated pursuant to this Section 6.1.2(iii) in the event that (A) Seller timely moved the Bankruptcy Court to enter the Sale Confirmation Order and the

Bankruptcy Court's schedule is the reason that the entry of Sale Confirmation Order has not occurred on or before such date or (B) Buyer's breach of any of its representations and warranties contained in this Agreement and failure to perform any of its obligations hereunder is the reason that the entry of the Sale Confirmation Order has not occurred on or before such date; or

(iv)    upon the consummation of an Alternative Transaction with another party that has the successful bid for any of the Transferred Assets pursuant to the Bid Procedures Order.

6.1.3   by Seller, upon written notice to Buyer,

(i)    if a material breach of any provision of this Agreement has been committed by Buyer and such breach has not been waived by Seller; *provided, however*, that Seller is not in material breach of this Agreement as of such date; *provided, further*, that if such breach is curable within a reasonable time after such breach, then, for so long as Buyer continues to use its commercially reasonable efforts to cure such breach, Seller may not terminate pursuant to this Section 6.1.3(i);

(ii)    if Closing has not occurred by the fifteenth (15th) day following entry of the Sale Confirmation Order *provided however*, that this Agreement may not be terminated pursuant to this Section 6.1.3(ii) if Seller's breach of any of its representations or warranties contained in this Agreement is the reason for the failure to close by such time; or

(iii)    upon the consummation of an Alternative Transaction with another party that has the successful bid for any of the Transferred Assets pursuant to the Bid Procedures Order..

6.2    Effects of Termination

6.2.1   Return of Earnest Money Deposit.  In the event this Agreement is terminated pursuant to Sections 6.1.1 or 6.1.2 above, the Earnest Money Deposit shall be returned to Buyer in accordance with the Bid Procedures Order. This shall be Buyer's sole and exclusive remedy for such termination.  Thereafter, the Parties shall be relieved of and released from any further liability hereunder, and they will not have any liability or obligations arising under or in connection with this Agreement, and neither Party shall be entitled to specific performance or any other remedy.

6.2.2   Retention of Earnest Money Deposit.  In the event that Seller terminates this Agreement pursuant to Section 6.1.3(i) above, the Earnest Money Deposit shall be delivered to Seller in accordance with the Bid Procedures Order, and Seller shall retain the Earnest Money Deposit. Thereafter, both Parties shall be relieved of and released from any further liability hereunder, and they will not have any liability or obligations arising under or in connection with this Agreement, and neither Party shall be entitled to specific performance.

7.   Miscellaneous Provisions

7.1    Notices.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by either Party to the other may be effected by personal delivery in writing, or by registered

or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as of the date of mailing. Mailed notices shall be addressed as set forth below, but each Party may change its address by written notice in accordance with this Section 7.1.

> To Seller:
>
> Rodney D. Tow
> c/o Charles M. Rubio
> Diamond McCarthy LLP
> 909 Fannin Street, 37th Floor
> Houston, Texas 77010
>
> To Buyer:
>
> Thomas C. Goetzinger, Vice President – Administration
> Universal Plant Services, Inc.
> 806 Seaco Court
> Deer Park, Texas 77536
> (281)680-1640
> chip@universalplant.com

7.2   <u>Entire Agreement.</u>  This Agreement and the documents to be executed under it contain the entire agreement between the Parties relating to the sale of the Transferred Assets. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect.

7.3   <u>Modification.</u>  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all of the Parties.

7.4   <u>Closing Date.</u>  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

7.5   <u>Risk of Loss.</u>  Risk of loss to the Transferred Assets shall not pass to Buyer until the Closing. In the event of the material destruction or damage of any material Transferred Assets prior to Closing, Seller shall promptly notify Buyer in writing. Buyer shall have ten (10) days from receipt of such notice to notify Seller of its election to terminate this Agreement. Upon Buyer providing such notice to Seller, this Agreement shall cease and terminate and be of no further force or effect, and neither Party shall have any rights against the other by reason of this Agreement and/or such termination. In the alternative, Buyer may elect to accept insurance proceeds payable to Seller to cover the loss, may propose a reduction in the Purchase Price to reflect the loss or may propose other modified terms and, in such event, Seller and Buyer shall negotiate in good faith to reach an agreement to a revised Transaction. Seller agrees to support a modification that has been bargained and agreed to in writing and signed on behalf of both Seller and Buyer and, as needed, to immediately seek Bankruptcy Court approval of the modifications on shortened notice, if so requested by Buyer.

7.6     Severability. If any term, provision or paragraph of this Agreement is determined to be illegal or void or of no force or effect, the balance of this Agreement shall survive.

7.7     Further Assurances.  Each Party will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto.

7.8     Waiver.  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the waiving Party.

7.9     Payment of Fees and Expenses. Each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of this Agreement and the transaction it describes.

7.10    Survival.  Except for the covenants and agreements to be performed after the Closing Date, none of the respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall survive the Closing.

7.11    Assignments.  This Agreement shall not be assigned by either Party without the prior written consent of the other Party; *provided however*, that Buyer may assign the rights under this Agreement to an affiliate of Buyer or any special purpose entity created by Buyer.  Buyer shall provide immediate notice of any such assignment in writing to Seller.  Any such assignment shall specifically provide that such affiliate shall assume all duties, liabilities and obligations of Buyer under this Agreement and, upon such assignment, the assignee shall constitute the Buyer hereunder for all purposes.

7.12    Binding Effect.  This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

7.13    No Third-Party Beneficiaries.  This Agreement is solely for the benefit of the Parties hereto and nothing contained herein, express or implied, is intended to confer on any person other than the Parties or their successors and permitted assigns, any rights, remedies, obligations, claims or causes of action under or by reason of this Agreement.

7.14    Applicable Law, Jurisdiction and Venue.  Except to the extent that mandatory provisions of the Bankruptcy Code apply, this Agreement shall be governed by and construed in accordance with the laws of Texas, without regard to conflict of law principals.  BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT THIS AGREEMENT; AND (ii) THE TRANSFERRED ASSETS. BUYER CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.EXCLUSIVE VENUE FOR ANY LEGAL ACTION OR PROCEEDING REGARDING THIS AGREEMENT OR ARISING HEREUNDER SHALL BE IN THE

BANKRUPTCY COURT.  IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT IT LACKS JURISDICTION OF ANY SUCH ACTION OR PROCEEDING, THEN VENUE FOR SUCH PROCEEDING SHALL BE IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, OR THE APPROPRIATE COURT FOR THE STATE OF TEXAS SITTING IN HARRIS COUNTY, TEXAS.

7.15    Good Faith.  The Parties agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

7.16    Interpretation.  In this Agreement:

(i)    the definitions of capitalized terms defined in this Agreement are equally applicable to both the singular and plural forms of the defined terms;

(ii)    references to a designated "Section" refer to a Section of this Agreement, unless otherwise specifically indicated;

(iii)    all Section headings are for convenience only, and shall not affect the meaning or interpretation of this Agreement;

(iv)    "including" is used only to indicate examples, without limitation to the indicated examples and without limiting any generality which precedes it; and

(v)    masculine, feminine and neuter pronouns are used interchangeably.

7.17    Construction.  This Agreement shall not be construed against either Party based on its authorship.

7.18    Counterparts.  This Agreement may be signed in counterparts and by the exchange of facsimile signature pages.

7.19    Conflict Between Transaction Documents. The Parties agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other Transaction Document referred to herein, this Agreement shall govern and control.  Following entry of the Sale Confirmation Order by the Bankruptcy Court, to the extent that any terms and provisions of this Agreement or any Transaction Document are in conflict or inconsistent with any term, condition or provision of the Sale Confirmation Order, the Sale Confirmation Order shall govern and control.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

**BUYER**

Universal Plant Services, Inc.

By: _____

     Thomas C. Goetzinger
     Vice President – Administration


**SELLER**

Rodney D. Tow, as Chapter 7 Trustee for the Debtors' Bankruptcy Estate


By: _____

     Rodney D. Tow
     Chapter 7 Trustee

## **EXHIBIT B**

Pre-Petition Confidentiality Agreements

| Ventech Co. | Party | Agreement Type | Date of Execution | Duration (Years) | Duration (Months) | Date Disclosure Ends | Protection Duration (Years) | Protection Duration (Months) | Date Protection Ends | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers | Phillips Petroleum | Confidentiality | 4/27/2000 | 100 | | 4/27/2100 | | | 4/27/2100 | |
| Ventech Engineers | Chevron Lummus Global(Re: Rain) | Non-Disclosure Agreement | 10/20/2000 | 100 | | 10/20/2100 | | | 10/20/2100 | |
| Ventech Engineers | Neticum Ltd | Non-circumvent & Non-Disclosure | 10/15/2001 | 100 | | 10/15/2101 | | | 10/15/2101 | |
| Ventech Engineers | UOP | Disclosure Non-Disclosure – Unicracking & Distillate Unionfining Processes | 2/6/2002 | 100 | | 2/6/2102 | | | 2/6/2102 | |
| Ventech Engineers | Huntsman Petrochemical Corp. | Confidentiality Agreement | 3/24/2003 | 100 | | 3/24/2103 | 0 | | 3/24/2103 | |
| | Merichem Chemical | Confid. Agreement | 7/30/2003 | 100 | | 7/30/2103 | | | 7/30/2103 | |
| Ventech Engineers | UOP - Penex/South Refinery Basra Iraq | Non Disclosure - Penex/South Refinery Basra Iraq | 2/1/2004 | 100 | | 2/1/2104 | | | | |
| Ventech Eng Int'l | BP Corporation North America | Confidentiality Agreement | 11/10/2005 | 100 | | 11/10/2105 | | | 11/10/2105 | |
| Ventech Eng Int'l | BP Corporation North America | Confidentiality Agreement | 12/1/2005 | 100 | | 12/1/2105 | | | 12/1/2105 | |
| Ventech Eng Int'l | Haldor Topsoe A/S | Confidentiality Agreement | 2/21/2006 | 25 | | 2/21/2031 | | | 2/21/2031 | |
| Ventech Engineers | GTC Technology, Inc. | Nondisclosure Agreement | 5/9/2006 | 15 | | 5/9/2021 | | | 5/9/2021 | |
| Ventech Inc. | Sanders Morris Harris | Confidentiality Agreement | 3/20/2007 | 100 | | 3/20/2107 | | | 3/20/2107 | |
| Ventech Inc. | Simmons & Company International | Confidentiality Agreement | 3/21/2007 | 100 | | 3/21/2107 | | | 3/21/2107 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Ventech Eng Int'l | CAM Environmental Services | Confidentiality Agreement | 5/11/2007 | 100 | | 5/11/2107 | | 5/11/2107 |
| Ventech Eng Int'l | INEOS Olefins & Polymers USA | Confidentiality Agreement | 7/2/2007 | 10 | | 7/2/2017 | | 7/2/2017 |
| Ventech Engineers | Weatherly, Inc./Chematur Eng. | Non-Disclosure Agmt | 2/21/2008 | 10 | | 2/21/2018 | | 2/21/2018 |
| Ventech Engineers | UOP | Disclosure Non-Disclosure – Ecofining Process | 5/19/2008 | 100 | | 5/19/2108 | | |
| Ventech Engineers | GLTpetrol LLC | Confidentiality | 2/10/2009 | 100 | | 2/10/2109 | | 2/10/2109 |
| Ventech Engineers | Western International Gas & Cylinder | Confid. Agreement | 12/8/2009 | 10 | | 12/8/2019 | | 12/8/2019 |
| Ventech Engineers | Jeian General Trading | Non-Disclosure | 3/8/2010 | 100 | | 3/8/2110 | | 3/8/2110 |
| Ventech Inc. | Ghazanfar Group | Confid. Non-Circumvent Agmt | 5/17/2010 | 100 | | 5/17/2110 | | 5/17/2110 |
| Ventech Offshore | Axens (YPF) | Confidentiality Agreement | 5/28/2010 | 25 | | 5/28/2035 | | 5/28/2035 |
| Ventech Engineers | UOP Condensate/ Kazahkstan | Non Disclosure - Condensate/Kazahkstan | 5/28/2010 | 100 | | 5/28/2110 | | 5/28/2110 |
| Ventech Engineers | UOP | Non-Disclosure Alon Refinery ( not signed) | 7/16/2010 | 100 | | 7/16/2110 | | 7/16/2110 |
| Ventech Engineers | UOP - PSA System & Separex System | Non-disclosure Letter Confid. Agmt. | 9/29/2010 | 100 | | 9/29/2110 | | 9/29/2110 |
| Ventech Companies | Haldor Topsoe | Confid. Agreement | 2/24/2011 | 100 | | 2/24/2111 | | 2/24/2111 |
| Ventech Engineers | Equistar Chemicals | Confid. Agreement | 6/27/2011 | 100 | | 6/27/2111 | | 6/27/2111 |
| Ventech Engineers | Merichem Chemical | Confid. Agreement | 8/2/2011 | 100 | | 8/2/2111 | | 8/2/2111 |

| Ventech Energy | CITGO Petroleum Corpl | Confidentiality Agreement | 10/5/2011 | 100 | | 10/5/2111 | | | 10/5/2111 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Eng Int'l | Calumet Speciality Products Parnters | Non Disclosure Agreement | 2/1/2012 | 100 | | 2/1/2112 | | | 2/1/2112 | |
| Ventech Eng Int'l LLC | Haldor Topsoe A/S | Confidentiality Agreement | 3/5/2012 | 100 | | 3/5/2112 | | | 3/5/2112 | |
| Ventech Eng Int'l | LSB Chemical Corp. | Confid. Agreement | 5/12/2012 | 100 | | 5/12/2112 | 100 | | 5/12/2212 | |
| Ventech Eng Int'l | GTC Technology US, LLC | Non-Disclosure Agreement | 6/5/2012 | 15 | | 6/5/2027 | | | 6/5/2027 | |
| Ventech Eng Int'l | Alabama Laser Systems | Mutual Non-Disclosure | 6/18/2012 | 5 | | 6/18/2017 | | | 6/18/2017 | |
| Ventech Eng Int'l | Tech-Etch, Inc. | Mutual Confidentiality Agmt | 6/18/2012 | 5 | | 6/18/2017 | | | 6/18/2017 | |
| Ventech Eng Int'l | Calumet Speciality Products Parnters | Master Service Agreement | 7/2/2012 | 100 | | 7/2/2112 | | | 7/2/2112 | |
| Ventech Engineers Int'l | (INO STC) TECHNOPR OGRESS | Non Disclosure Agreement | 8/7/2012 | 5 | | 8/7/2017 | 5 | | 8/7/2022 | |
| Ventech Engineers Holding BV | Paqell B.V. | Non Disclosure Agreement | 8/8/2012 | 25 | | 8/8/2037 | | | 8/8/2037 | |
| Ventech Eng Int'l | URS Corportation | NonDisclosure Agreement | 8/9/2012 | 10 | | 8/9/2022 | | | 8/9/2022 | |
| Ventech Eng Int'l | SK E&C USA | Non-Disclosure Agreement | 9/5/2012 | 5 | | 9/5/2017 | | | 9/5/2017 | |
| Ventech Eng Int'l | Axens SA | Non-Disclosure Agreement | 10/17/2012 | 5 | | 10/17/2017 | 5 | | 10/17/2022 | |
| Ventech Eng Int'l | Bechtel Hydrocarbon Technology Solutions | Nondisclosure Agreement | 10/19/2012 | 20 | | 10/19/2032 | | | 10/19/2032 | |
| Ventech Eng Int'l | Smith & Burgess LLC | Non-Disclosure Agreement | 11/2/2012 | 5 | | 11/2/2017 | 5 | | 11/2/2017 | |
| Ventech Engineers LP | TMF Netherlands BV | Non Disclosure Agreement | 11/15/2012 | 5 | | 11/15/2017 | 5 | | 11/15/2022 | |

| Ventech Engineers Int'l | Praxair, Inc. | Non-disclosure Agreement | 12/19/2012 | 5 | | 12/19/2017 | 5 | | 12/19/2022 | |
| Ventech Eng Int'l | Echosphere Energy LLC | Non Disclosure Agreement | 1/1/2013 | 5 | | 1/1/2018 | 5 | | 1/1/2023 | |
| | American Energie Future LLC (AEF) | Mutual Non-Disclosure Agreement | 1/7/2013 | 5 | | 1/7/2018 | 5 | | 1/7/2023 | |
| Ventech Engineers | Inovativ Solutions | Non Disclosure Agreement | 1/11/2013 | 5 | | 1/11/2018 | 5 | | 1/11/2023 | |
| Ventech Eng Int'l | Tenaska, Inc | Mutual Non-Disclosure Agreement | 1/23/2013 | 5 | | 1/23/2018 | 5 | | 1/23/2023 | |
| Ventech Eng Int'l | Westcon Incorporated | Non Disclosure Agreement | 2/4/2013 | 5 | | 2/4/2018 | 5 | | 2/4/2023 | |
| Ventech Eng Int'l | UOP Ch Sarl | NonDisclosure Agreement | 2/8/2013 | 5 | | 2/8/2018 | 3 | | 2/8/2021 | |
| Ventech Engineers Holding BV | Merichem Chemical | Non-Disclosure Agreement | 2/13/2013 | 5 | | 2/13/2018 | 5 | | 2/13/2023 | |
| | Tauber Oil Company | Confidentiality Agreement | 2/14/2013 | 100 | | 2/14/2113 | | | | |
| Ventech Eng Int'l | Well Resources Inc. | Confidentiality Agreement | 2/14/2013 | 100 | | 2/14/2113 | | | 2/14/2113 | |
| Ventech Eng Int'l | HRT O&G Exploracao e Producao de Petroleo Ltda | Non-Disclosure Agreement | 2/28/2013 | 5 | | 2/28/2018 | 0 | | 2/28/2018 | |
| Ventech Eng Int'l | Swan Hills Synfuels LP | Non Disclosure Agreement | 3/1/2013 | 5 | | 3/1/2018 | 5 | | 3/1/2023 | |
| Ventech Engineers Int'l | Fiore, Leonard S, Inc. | Non Disclosure Agreement | 3/12/2013 | 5 | | 3/12/2018 | 5 | | 3/12/2023 | |
| Ventech Eng Int'l | LIFE Power & Fuels LLC | Non-Disclosure Agreement | 4/2/2013 | 5 | | 4/2/2018 | 3 | | 4/2/2021 | |
| Ventech Eng Int'l | Wabash Valley Power Association Inc. | Non-Disclosure Agreement | 4/4/2013 | 5 | | 4/4/2018 | 5 | | 4/4/2023 | |

| Ventech Process Equip | Viewpoint Energy/ Bohen Equipment | Confid. Agmt. | 4/9/2013 | 5 | | 4/9/2018 | | | 4/9/2018 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | NovelEdge Technologies LLC | Non Disclosure Agreement | 4/23/2013 | 5 | | 4/23/2018 | 5 | | 4/23/2023 | |
| Ventech Eng Int'l | Yug-Neftegaz Private Ltd. | Non-Disclosure Agreement | 4/29/2013 | 5 | | 4/29/2018 | 5 | | 4/29/2023 | |
| Ventech Eng Int'l | Connecticut Clean Energy & Fuels | Non Disclosure Agreement | 4/30/2013 | 5 | | 4/30/2018 | 5 | | 4/30/2023 | |
| Ventech Engineers Int'l | PHG Energy | Non Disclosure Agreement | 5/17/2013 | 5 | | 5/17/2018 | 5 | | 5/17/2023 | |
| Ventech Engineers Int'l | Environmental Refuelling Systems Inc. | NonDisclosure Agreement | 5/21/2013 | 5 | | 5/21/2018 | 5 | | 5/21/2023 | |
| Ventech Engineers Int'l | Merichem Company | Confidentiality agreement | 5/22/2013 | 100 | | 5/22/2113 | | | 5/22/2113 | |
| Ventech Modular Fabricators, LLC | Merichem Company | Confidentiality Agreement | 5/31/2013 | 100 | | 5/31/2113 | | | 5/31/2113 | |
| Ventech Eng Int'l | Preferred Engineering | Non Disclosure Agreement | 6/1/2013 | 5 | | 6/1/2018 | 5 | | 6/1/2023 | |
| Ventech Engineers Int'l | Hand & Associates, Inc. | Non Disclosure Agreement | 6/5/2013 | 5 | | 6/5/2018 | 5 | | 6/5/2023 | |
| Ventech Engineers Int'l | Energy Alliance AD | Non-Disclosure Agreement | 6/12/2013 | 5 | | 6/12/2018 | 5 | | 6/12/2023 | |
| Ventech Engineers Int'l | Diamante Investmentos LDA | Non Disclosure Agreement | 6/21/2013 | 5 | | 6/21/2018 | 5 | | 6/21/2023 | |
| Ventech Engineers Int'l | Alaska Nautral Resources to Liquids LLC | Non Disclosure Agreement | 7/8/2013 | 5 | | 7/8/2018 | 5 | | 7/8/2023 | |
| Ventech Engineers Int'l | Acrion Technologies Inc. | Non Disclosure Agreement | 7/9/2013 | 5 | | 7/9/2018 | 5 | | 7/9/2023 | |

| Ventech Engineers Int'l | Principal Technology Inc | Non-Disclosure Agreement | 7/13/2013 | 100 | | 7/13/2113 | | | 7/13/2113 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Stern Brothers | Non Disclosure Agreement | 7/30/2013 | 5 | | 7/30/2018 | 5 | | 7/30/2023 | |
| Ventech Engineers Int'l | B.e Energy Group | Non Disclosure Agreement | 7/31/2013 | 5 | | 7/31/2018 | 5 | | 7/31/2023 | |
| Ventech Engineers Int'l | Refinery of Illinois LCA Ltd, | Non Disclosure Agreement | 8/6/2013 | 100 | | 8/6/2113 | | | 8/6/2113 | |
| Ventech Engineers Int'l | Oil & Gas Safety Energodiagno stika LLC | Non Disclosure Agreement | 8/12/2013 | 5 | | 8/12/2018 | 5 | | 8/12/2023 | |
| Ventech Engineers Int'l | Invensys Systems, Inc. | Non Disclosure Agreement | 8/19/2013 | 5 | | 8/19/2018 | | | 8/19/2018 | |
| Ventech Engineers Int'l | KBC Advanced Technology | Non Disclosure Agreement | 8/20/2013 | 5 | | 8/20/2018 | | | 8/20/2018 | |
| Ventech Engineers Int'l | Essense International | Non Disclosure Agreement | 9/2/2013 | 5 | | 9/2/2018 | 5 | | 9/2/2023 | |
| Ventech Engineers Int'l | EO Engineering Safety | Non Disclosure Agreement | 9/20/2013 | 5 | | 9/20/2018 | 5 | | 9/20/2023 | |
| Ventech Process Equip | InEnTec Inc. | Non Disclosure Agreement | 9/25/2013 | 100 | | 9/25/2113 | | | 9/25/2113 | |
| Ventech Engineers Int'l | Johnson Matthey Davy Technologies Limited | Non Disclosure Agreement | 9/26/2013 | 100 | | 9/26/2113 | | | 9/26/2113 | |
| Ventech Eng Int'l | Technoprome x, Engineering & Consulting Center | Non Disclosure Agreement | 10/2/2013 | 5 | | 10/2/2018 | 5 | | 10/2/2023 | |
| Ventech Engineers Int'l | Muse Stancil & Co. | Non Disclosure Agreement | 10/4/2013 | 5 | | 10/4/2018 | 5 | | 10/4/2023 | |
| Ventech Appraisal | INEOS USA LLC | Confidentiality Agreement | 10/30/2013 | 100 | | 10/30/2113 | 100 | | 10/30/2213 | |
| Ventech Engineers Int'l | ProCorr Consulting Services LLC | Non Disclosure Agreement | 12/10/2013 | 5 | | 12/10/2018 | 5 | | 12/10/2023 | |

| Ventech Engineers Int'l | Alliant Group | Non Disclosure Agreement | 4/10/2014 | 5 | | 4/10/2019 | 5 | | 4/10/2024 |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | JR Blanchard | Non Disclosure Agreement | 4/10/2014 | 5 | | 4/10/2019 | 5 | | 4/10/2024 |
| Ventech Engineers Int'l | Griffin Communications Group | Non-Disclosure Agreement | 4/13/2014 | 5 | | 4/13/2019 | 5 | | 4/13/2024 |
| Ventech Engineers Int'l | Edwards Energy Consultants | Confid Agreement | 5/12/2014 | 100 | | 5/12/2114 | | | 5/12/2114 |
| Ventech Engineers Int'l | Hancock Energy | Non Disclosure Agreement | 5/19/2014 | 3 | | 5/19/2017 | | | 5/19/2017 |
| Ventech Eng Int'l | Haldor Topsoe A/S | Confidentiality Agreement - Fertilizer plant - Alberta | 5/21/2014 | 100 | | 5/21/2114 | | | 5/21/2114 |
| Ventech Engineers Int'l | Kokosing Construction Company | Confidentiality Agreement | 5/21/2014 | 3 | | 5/21/2017 | 2 | | 5/21/2019 |
| Ventech Engineers Int'l | LP Amina LLC | Confidentiality Agreement | 5/21/2014 | 6 | | 5/21/2020 | | | 5/21/2020 |
| Ventech XTL LLC | Leiston Holdings Limited | Mutual Non Disclosure Agreement | 5/28/2014 | 3 | | 5/28/2017 | 2 | | 5/28/2019 |
| Ventech Engineers Int'l | TCG Global, LLC | Non Disclosure Agreement | 6/10/2014 | 3 | | 6/10/2017 | 2 | | 6/10/2019 |
| Ventech Engineers Int'l | Foster Wheeler Canada Limited | Confidentiality Agreement | 6/12/2014 | 3 | | 6/12/2017 | | | 6/12/2017 |
| Ventech Engineers Int'l | Kinder Morgan Liquids Terminals LLC | Non Disclosure Agreement | 6/16/2014 | 3 | | 6/16/2017 | 2 | | 6/16/2019 |
| Ventech XTL LLC | C.H. Robinson Project Logistics Inc | Non Disclosure Agreement | 7/10/2014 | 3 | | 7/10/2017 | 2 | | 7/10/2019 |
| Ventech Engineers Int'l | Novus Wood Group, LP | Non Disclosure Agreement | 7/16/2014 | 3 | | 7/16/2017 | 2 | | 7/16/2019 |
| Ventech Engineers Int'l | Energia Limited | Non Disclosure Agreement | 7/30/2014 | 3 | | 7/30/2017 | 2 | | 7/30/2019 |

| Ventech Engineers Int'l | Agilyx | Non Disclosure Agreement | 8/20/2014 | 3 | | 8/20/2017 | 2 | | 8/20/2019 |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Rice Energy Inc | Non Disclosure Agreement | 8/20/2014 | 3 | | 8/20/2017 | 1 | | 8/20/2018 |
| Ventech Engineers Int'l | Shell Oil Products Co. LLC | Non Disclosure Agmt - DHT Serv. | 9/2/2014 | 5 | | 9/2/2019 | | | 9/2/2019 |
| Ventech Engineers Int'l | Aramco Services Co | Non Disclosure Agreement | 9/3/2014 | 5 | | 9/3/2019 | 5 | | 9/3/2024 |
| Ventech Engineers Int'l | NRG Energy, Inc. | Non Disclosure Agreement | 9/3/2014 | 3 | | 9/3/2017 | 2 | | 9/3/2019 |
| Ventech Engineers Int'l | Hispania Petroleum S.A. | Non Disclosure Agreement | 9/15/2014 | 3 | | 9/15/2017 | 2 | | 9/15/2019 |
| Ventech Engineers Int'l | Range Resources - Appalaqchia LLC | Non Disclosure Agreement | 9/16/2014 | 3 | | 9/16/2017 | 2 | | 9/16/2019 |
| Ventech Engineers Int'l | Borkir International Co. Ltd. | Non Disclosure Agreement | 9/23/2014 | 3 | | 9/23/2017 | 2 | | 9/23/2019 |
| Ventech Engineers Int'l | ND Ventures LTd. | Non Disclsoure Agreement | 9/23/2014 | 3 | | 9/23/2017 | 2 | | 9/23/2019 |
| Ventech Engineers Int'l | Reliant Oil and Petrochemicals LLC | Non-Disclosure Agreement | 9/26/2014 | 3 | | 9/26/2017 | 2 | | 9/26/2019 |
| Ventech Engineers Int'l | Haldor Topsoe A/S Denmark | Confidentiality Delcaration | 10/1/2014 | 100 | | 10/1/2114 | | | |
| Ventech Engineers Int'l | Parnel Biogas Inc | Mutual Non-Disclosure Agreement | 10/1/2014 | 3 | | 10/1/2017 | 2 | | 10/1/2019 |
| Ventech Engineers Int'l | Siad Macchine Impianti S.p.A | Non-Disclosure Agreement | 10/16/2014 | 3 | | 10/16/2017 | 2 | | 10/16/2019 |
| Ventech Engineers Int'l | Groupe Jean Vorbe | Non Disclosure Agreement | 10/17/2014 | 3 | | 10/17/2017 | 2 | | 10/17/2019 |
| Ventech Engineers Int'l | ECAD, Inc. | Non Disclosure Agreement | 10/27/2014 | 5 | | 10/27/2019 | 5 | | 10/27/2024 |

| Ventech Engineers Int'l | EFG America LLC | Non Disclosure Agreement | 11/10/2014 | 3 | | 11/10/2017 | 2 | | 11/10/2019 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | PIMSA (Procesos Industriales Maya) | Non Disclosure Agreement | 11/11/2014 | 3 | | 11/11/2017 | 2 | | 11/11/2019 | |
| Ventech Engineers Int'l | EPIC Oil Extractors LLC | Non Disclosure Agreement | 11/12/2014 | 10 | | 11/12/2024 | 7 | | 11/12/2031 | |
| Ventech Eng Int'l | Haldor Topsoe A/S | Confidentiality Agreement | 11/19/2014 | 100 | | 11/19/2114 | | | | |
| Ventech Engineers Int'l | Greater Houston Partnership | Non Disclosure Agreement | 1/5/2015 | 3 | | 1/5/2018 | 2 | | 1/5/2020 | |
| Ventech Engineers Int'l | Impact Data Source | Non Disclosure Agreement | 1/5/2015 | 3 | | 1/5/2018 | 2 | | 1/5/2020 | |
| Ventech Companies | Haldor Topsoe | Confidentiality Agreement | 1/7/2015 | 100 | | 1/7/2115 | | | | |
| Ventech Engineers Int'l | NextStep Renewable Energy | Non Disclosure Agreement | 1/12/2015 | 3 | | 1/12/2018 | 2 | | 1/12/2020 | |
| Ventech Engineers Int'l | Abeinsa EPC | Non Disclosure Agreement | 1/13/2015 | 3 | | 1/13/2018 | 5 | | 1/13/2023 | |
| Ventech Engineers Int'l | FluidOil Limited | Non Disclosure | 1/26/2015 | 3 | | 1/26/2018 | 2 | | 1/26/2020 | |
| Ventech Engineers Int'l | Frontline BioEnergy LLC | Non Disclosure | 2/5/2015 | 3 | | 2/5/2018 | 2 | | 2/5/2020 | |
| Ventech Engineers Int'l | Invista Technologies | Non Disclosure Agreement | 2/6/2015 | 3 | | 2/6/2018 | 5 | | 2/6/2023 | |
| | Praxair, Inc. | Non-disclosure Agreement | 2/17/2015 | 10 | | 2/17/2025 | 1 | | 2/17/2026 | |
| Ventech Engineers Int'l | Clean Energy | Non-Disclosure agreement | 2/25/2015 | 3 | | 2/25/2018 | 2 | | 2/25/2020 | |
| Ventech Engineers Int'l | Fitroleum Biochemicals GmbH | Non Disclosure Agreement | 2/27/2015 | 5 | | 2/27/2020 | 5 | | 2/27/2025 | |
| Ventech Engineers Int'l | Sable Power and Gas LLC | Non-Disclosure Agreement | 3/6/2015 | 5 | | 3/6/2020 | 5 | | 3/6/2025 | |
| Ventech Eng Int'l | Global Resources | Non Disclosure Agreement | 3/27/2015 | 3 | | 3/27/2018 | 2 | | 3/27/2020 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Cassandra Oil AB | Non Disclosure Agreement | 4/8/2015 | 3 | | 4/8/2018 | 2 | | 4/8/2020 |
| Ventech Engineers Int'l Interviewees (file name) | Mason, Kefalari | Non Disclosure Agreement | 5/6/2015 | 2 | | 5/6/2017 | 2 | | 5/6/2019 |
| Ventech Engineers Int'l | Chevron Natural Gas/Haldor Topsoe | Non Disclosure Agreement | 5/11/2015 | 2 | | 5/11/2017 | 1 | | 5/11/2018 |
| Ventech Engineers Int'l | Global Energy Development | Non Disclosure Agreement | 5/13/2015 | 3 | | 5/13/2018 | 2 | | 5/13/2020 |
| Ventech Engineers Int'l | Transfield Services (Australia) | Non Disclosure Agreement | 5/14/2015 | 3 | | 5/14/2018 | 2 | | 5/14/2020 |
| Ventech Engineers Int'l | Loenbro | Non Disclosure ?Agreement | 5/21/2015 | 3 | | 5/21/2018 | 2 | | 5/21/2020 |
| Ventech Engineers Int'l | Shell EP International Ltd. | Confidentiality Agreement | 6/2/2015 | 100 | | 6/2/2115 | | | 6/2/2115 |
| Ventech Engineers Int'l | Meridian Chemicals LLC | Confidentiality Agreement | 6/15/2015 | 3 | | 6/15/2018 | 1 | | 6/15/2019 |
| Ventech Engineers Int'l | Barr Engineering Company | Non Disclosure Agreement | 7/21/2015 | 3 | | 7/21/2018 | 2 | | 7/21/2020 |
| Ventech Engineers Int'l | Aemetis, Inc. | Non Disclosure Agreement | 7/23/2015 | 2 | | 7/23/2017 | | | |
| Ventech Engineers Int'l | Aramco Services Co | Non Disclosure Agreement | 8/3/2015 | 5 | | 8/3/2020 | 5 | | 8/3/2025 |
| Ventech Engineers Int'l | Tessenderlo Kerley, Inc. | Non Disclosure Agreement | 8/7/2015 | 7 | | 8/7/2022 | 7 | | 8/7/2029 |
| Ventech Engineers Int'l | XTS Energy LLC (not signed) | Mutual Non-Disclosure Agreement | 9/2/2015 | 3 | | 9/2/2018 | 2 | | 9/2/2020 |
| | Praxair, Inc. | Non-disclosure Agreement | 9/14/2015 | 3 | | 9/14/2018 | 10 | | 9/14/2028 |
| Ventech Engineers Int'l | BP Refinery (Bulwer Island) Pty Ltd. | Confidentiality Agreement | 9/16/2015 | 7 | | 9/16/2022 | | | 9/16/2022 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Mace Petroleum Resources and Services Ltd. | Confidentiality Agreement | 9/17/2015 | 2 | | 9/17/2017 | | | 9/17/2017 |
| Ventech Engineers Int'l | Purification Solutions | Non Disclosure Agreement | 9/23/2015 | 7 | | 9/23/2022 | 5 | | 9/23/2027 |
| Ventech Engineers Int'l | ALS International | Confidentiality Agreement | 10/15/2015 | 2 | | 10/15/2017 | | | 10/15/2017 |
| Ventech Engineers Int'l | Renewable Energy Group Inc | Confidentiality Agreement | 10/16/2015 | 100 | | 10/16/2115 | | | 10/16/2115 |
| Ventech Eng Int'l | Virtual Engineering Operations LLC | Non Disclosure Agmt | 10/16/2015 | 3 | | 10/16/2018 | 2 | | 10/16/2020 |
| | Velocys, LLC - POSCO Engineering & Construction Co. | Mutual Confidential Disclosure Agreement | 10/23/2015 | 2 | | 10/23/2017 | 15 | | 10/23/2032 |
| Ventech Engineers Int'l | Crescent Point Energy Corp. | Non Disclosure Agreement | 10/28/2015 | 2 | | 10/28/2017 | | | 10/28/2017 |
| Ventech Engineers Int'l | Paramold Manufacturing | Non Disclosure Agreement | 11/3/2015 | 15 | | 11/3/2030 | | | 11/3/2030 |
| Ventech Engineers Int'l | MVS Consulting LLC | Non Disclosure Agreement | 11/13/2015 | 3 | | 11/13/2018 | 2 | | 11/13/2020 |
| Ventech Engineers Int'l | Energy Security Partners, LLC (ESP) | Non Disclosure Agreement | 12/3/2015 | 3 | | 12/3/2018 | 2 | | 12/3/2020 |
| Ventech Engineers Holding BV | GR Palmer Consulting Services | One Way Non-Disclosure Agreement | 12/11/2015 | 5 | | 12/11/2020 | 5 | | 12/11/2025 |
| Ventech Engineers Int'l | Enerkem Inc | Non Disclosure Agreement | 12/14/2015 | 5 | | 12/14/2020 | | | 12/14/2020 |
| Ventech Engineers Int'l | Federated Co-operatives Limited | Mutual Confidentiality Agmt | 12/15/2015 | 3 | | 12/15/2018 | 2 | | 12/15/2020 |
| Ventech Engineers Int'l | Maple Gas Corp | Mutual Non-Disclosure | 1/5/2016 | 3 | | 1/5/2019 | 2 | | 1/5/2021 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | MTR Membrane Technology & Research Inc. | Mutual Non-Disclosure Agreement | 1/18/2016 | 3 | | 1/18/2019 | 2 | | 1/18/2021 |
| Ventech Engineers Int'l | Holly Frontier Refining & Marketing | Mutual Confidentiality Agmt | 1/20/2016 | 2 | | 1/20/2018 | 1 | | 1/20/2019 |
| Ventech Engineers Int'l | ZEEP | Mutual Non-Disclosure Agreement | 2/3/2016 | 3 | | 2/3/2019 | 2 | | 2/3/2021 |
| | Velocys, LLC | Mutual Confidential Disclosure Agreement Amend 4 | 2/11/2016 | 5 | | 2/11/2021 | 10 | | 2/11/2031 |
| Ventech Engineers Int'l | REK Energy LLC | Mutual Non Disclosure Agreement | 2/22/2016 | 3 | | 2/22/2019 | 2 | | 2/22/2021 |
| Ventech Engineers Int'l | Maple Resources Corp. and Maple Int'l Development | Mutual Non Disclosure Agreement | 3/5/2016 | 3 | | 3/5/2019 | 2 | | 3/5/2021 |
| Ventech Eng Int'l | Calvert Group Belgium, NV | Non Disclosure Agreement | 3/18/2016 | 3 | | 3/18/2019 | 2 | | 3/18/2021 |
| | Ain Khudairi Trading & Contracting Co. (AKTCC) | Confidentiality Agreement | 4/1/2016 | 3 | | 4/1/2019 | 2 | | 4/1/2021 |
| | Prios Industry Systems & Services UG (Ltd.) | General Confidentiality Agreement | 4/19/2016 | 2 | | 4/19/2018 | | | 4/19/2018 |
| | Senergy LLC | Non Disclosure Agreement | 4/20/2016 | 7 | | 4/20/2023 | | | 4/20/2023 |
| Ventech Eng Int'l | Greenyug LLC | Confidentiality Agreement | 5/10/2016 | 3 | | 5/10/2019 | | | 5/10/2019 |
| Ventech Eng Int'l | Todd Energy Canada Limited | Mutual Non-Disclosure Agreement | 5/17/2016 | 3 | | 5/17/2019 | | | |
| Ventech Eng Int'l | Global Thermostat | Mutual Non-Disclosure Agreement | 5/25/2016 | 5 | | 5/25/2021 | 5 | | 5/25/2026 |

| Ventech Engineers Int'l | DuPont De Nemours & Company | Confidentiality Agreement | 5/26/2016 | 20 | | 5/26/2036 | | | 5/26/2036 |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Innovative Clear Choice Technologies Inc | Mutual Non-Disclosure Agreement | 5/31/2016 | 3 | | 5/31/2019 | 2 | | 5/31/2021 |
| | Five (5) Star Refinery LLC | Non Disclosure Agreement | 6/2/2016 | 2 | | 6/2/2018 | | | |
| Ventech Eng Int'l | Ventech Engineers Int'l Staff Member (Rick Beaubien) | Non Disclosure Agreement | 6/9/2016 | 10 | | 6/9/2026 | | | |
| | Reaction 35 LLC | Mutual Non-Disclosure Agreement | 7/1/2016 | 3 | | 7/1/2019 | 10 | | 7/1/2029 |
| | A.I.R. Global | Mutual Non-Disclosure Agreement | 7/14/2016 | 3 | | 7/14/2019 | 2 | | 7/14/2021 |
| Ventech Engineers Int'l | Petrochemical Holding GmbH | Confidentiality Agreement | 7/19/2016 | 3 | | 7/19/2019 | | | 7/19/2019 |
| Ventech Engineers Int'l | Infra Financials and Industries PLC | Non-Disclosure Agreement | 7/27/2016 | 3 | | 7/27/2019 | | | |
| Ventech Engineers Int'l | John Karras | Non-Disclosure Agreement | 8/26/2016 | 3 | | 8/26/2019 | 2 | | 8/26/2021 |
| Ventech Engineers Int'l | Axens North America, Inc. | Confidentiality Agreement | 9/1/2016 | 25 | | 9/1/2041 | | | |
| Ventech Engineers Int'l | Advanced Green Technologies LLC | Mutual Corporate/Business Nondisclosure Agreement | 10/17/2016 | 5 | | 10/17/2021 | | | |
| Ventech Eng Int'l | Lyondell Basell | Confidentiality Agreement | 11/2/2016 | 3 | | 11/2/2019 | 25 | | 11/2/2044 |
| Ventech Engineers Int'l | Hilco Global | Non Disclosure Agreement | 12/20/2016 | 5 | | 12/20/2021 | 5 | | 12/20/2026 |
| Ventech Eng Int'l | Greenergy International Limited | Non-Disclosure Agreement | 12/22/2016 | 3 | | 12/22/2019 | | | 12/22/2019 |

| Ventech Eng Int'l | Sonol Isreal Ltd. | Mutual Non-Disclosure Agreement | 1/30/2017 | 1 | | 1/30/2018 | 1 | | 1/30/2019 |
|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers Int'l | Renco | Mutual Non-Disclosure Agreement | 2/3/2017 | 3 | | 2/3/2020 | 2 | | 2/3/2022 |
| Ventech Engineers Int'l | AlphaHawk Group | Confidentiality & Non-Disclosure Agreement | 2/17/2017 | 5 | | 2/17/2022 | | | |
| | Greenfield Speciality Alcohols Inc. | Non Disclosure Agreement | 2/22/2017 | 1 | | 2/22/2018 | | | |
| Ventech Engineers Int'l | HDR Engineering, Inc. | Mutual Non-Disclosure Agreement | 2/28/2017 | 3 | | 2/28/2020 | 2 | | 2/28/2022 |
| | CARG Central American Resources Group Inc. | Mutual Non-Disclosure Agreement | 3/1/2017 | 3 | | 3/1/2020 | 2 | | 3/1/2022 |
| Ventech Engineers Int'l | AECOM Energy & Construction Inc. | Confidentially & Non-Disclosure Agreement | 3/13/2017 | 1 | | 3/13/2018 | | | |
| Ventech Engineers Int'l | Alan Isserlis | Mutal Non Disclosure Agreement | 3/21/2017 | 3 | | 3/21/2020 | 2 | | 3/21/2022 |
| | Chiron Financial LLC | Non Disclosure Agreement | 3/29/2017 | 1 | | 3/29/2018 | | | |
| | Ecopuerto S.A.S. | Non Disclosure Agreement | 3/30/2017 | 3 | | 3/30/2020 | 2 | | 3/30/2022 |
| Ventech Engineers LP | Mastec, Inc | Mutal Non Disclosure Agreement | 3/30/2017 | 1 | | 3/30/2018 | | | |
| Ventech Engineers Int'l | Nalco | Mutual Non-Disclosure Agreement | 3/30/2017 | 2 | | 3/30/2019 | | | |
| Ventech Engineers LP | PPHB LP | Mutual Non-Disclosure Agreement | 3/31/2017 | 1 | | 3/31/2018 | | | 3/31/2018 |
| Ventech Engineers Int'l | ProPak Systems Ltd | Mutual Non-Disclosure Agreement | 4/18/2017 | 1 | | 4/18/2018 | | | |
| Ventech Engineers LP | PMD Energy Group | Mutual Non-Disclosure Agreement | 5/1/2017 | 1 | | 5/1/2018 | | | 5/1/2018 |

| Ventech Engineers LP | CTCI Americas | Mutual Non-Disclosure Agreement | 4/17/2017 | 1 | | 4/17/2018 | | | 4/17/2018 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ventech Engineers LP | Primoris Services Corp | Mutual Non-Disclosure Agreement | 4/5/2017 | 1 | | 4/5/2018 | | | 4/5/2018 | |
| Ventech Engineers LP | Guggenheim Securities | Mutual Non-Disclosure Agreement | 4/4/2017 | 1 | | 4/4/2018 | | | 4/4/2018 | |

## **EXHIBIT C**

Velocys Contracts

Mutual Confidential Disclosure Agreement Amendment, dated November 21, 2011 by and Between Velocys, Inc and Ventech Engineers International, LLC

Modification No. 4, dated February 11, 2016

Modification No. 3, dated on or about October 18, 2012

Modification No. 2, dated on or about September 11, 2012

Modification No. 1, dated December 6, 2011