

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/10/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **VENTECH ENGINEERS,** | § | **Case No. 17-33203** |
| **L.P.** *et al.*,[1] | § | |
| | § | **Jointly Administered** |
| **DEBTORS.** | § | |
| | § | **(Chapter 7)** |

**ORDER APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS AND**
**AUTHORIZING PAYMENT OF CERTAIN EXPENSES RELATED TO THE SALE**
(Docket No. 91)

Upon consideration of the motion, as supplemented (the "Motion")[2] [ECF No. 91] filed

by Rodney D. Tow, chapter 7 trustee (the "Trustee") for the estates of the Debtors seeking entry

of an order authorizing and approving, among other things, the sale (the "Sale") of real property

located at 100 Pasadena Boulevard, Pasadena, Texas 77506 (the "Building") and certain personal

property located therein (collectively, the "Assets"), pursuant to that certain Earnest Money

Contract dated June 7, 2018, 2018 (the "Purchase Agreement") attached hereto as Exhibit A, by

and between the Trustee and Pasadena Mall 3D, LLC  and his assigns (the "Buyer"); and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation

---

[1]     The names of the debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Ventech Engineers L.P. (0943); Ventech Engineers LLC (7644); Ventech Fabrication Services LLC (6482); Ventech Engineers International LLC (5030); Ventech Energy LLC (1829); Ventech Engineers North America LLC (7325); Ventech Engineers USA LLC (7499); Ventech Vessel Fabricators LLC (6525); Ventech Global Projects, Inc. (9146); Ventech International Projects LLC (2187); Ventech Global Construction, LLC (0736); Ventech Modular Fabricators LLC (2960); Ventech Refining Solutions LLC (6454); Ventech Plant Constructors LLC (5107); Ventech Engineers & Fabricators, LLC (2106); Ventech Industrial Contractors, LLC (6482); Ventech XTL LLC (2500); and Ventech XTL Oklahoma City LLC (5549).

[2]     Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Purchase Agreement, as applicable.

thereon, and good and sufficient cause appearing therefor, including for the reasons stated on the record at the hearing seeking approval of the Sale (the "Sale Hearing"):

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  Venue of these chapter 7 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.     The statutory and legal predicates for the relief requested in the Motion are §§ 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.     The notice given by the Trustee of the Motion constitutes good and sufficient notice of the relief granted by this Order and no further notice is required.

D.     The Buyer is purchasing the Assets in good faith and is a good-faith Buyer within the meaning of § 363(m) of the Bankruptcy Code.

E.     The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Trustee's business judgment.

F.     Good cause exists to grant the Trustee's request for authorization to pay for certain expenses that the Debtors' estates have incurred or will incur in connection with preparing the Assets for sale including the costs for the survey.

G.     Bank of America N.A. has a valid lien and security interest on the Assets.

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      Pursuant to §§ 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to sell and transfer all of the Debtors' right, title and interest in and to the Assets to the Buyer in accordance with the Purchase Agreement (including any ancillary documents) and such Sale and transfer shall vest the Buyer with all right, title, and interest of the Debtors to the Assets, free and clear of all Liens, Claims, and other interests in and on the Assets pursuant to § 363(f) of the Bankruptcy Code except for Permitted Exceptions (defined below).

2.      Except for the Permitted Exceptions, all other liens or other interests in or on the Assets attach to the net cash proceeds of the Sale.

3.      The Trustee is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the Purchase Agreement (including any ancillary documents) and this Order including executing and delivering a special warranty deed to the Buyer substantially in the form attached hereto as Exhibit B.

4.      The sale of the Building is subject to the permitted exceptions (the "Permitted Exceptions") set forth in Exhibit B.

5.      The Trustee is authorized to pay the commission owed to March & Millichap Real Estate Investment Services from the proceeds of the Sale of the Assets.

6.      Following the Closing of the transaction contemplated in the Purchase Agreement, the Trustee shall file a notice on the docket in this case to report the closing of the Sale (the "Sale Notice").

7.      The terms of this Order shall be binding on and inure to the benefit of the Trustee, the Buyer, all creditors and all other parties-in-interest, and any assigns or successors of such parties.

8.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry and not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rules 6004(h) and 6006(d) or otherwise.

9.     To the extent that this Order is inconsistent with the Purchase Agreement or any prior order or pleading with respect to the Motion in these chapter 7 cases, the terms of this Order shall govern.

10.    The Trustee is authorized to pay to Weisser Engineering Company, Inc. from the proceeds of the Sale of the Assets for performing a survey of the Assets.  All amounts to be paid to Weisser Engineering Company, Inc. constitute administrative expenses under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and are immediately payable, without any further order of the Bankruptcy Court.  Weisser Engineering Company, Inc. is required to provide a copy of its original survey to the Trustee.

11.    The Trustee is authorized to pay any other costs and expenses that are customarily incurred and paid by a Seller in connection with a real estate closing including those expenses specified in Section 4 (Closing Date) on page 2 of the Purchase Agreement.

12.    The Trustee is authorized to reimburse Inderbir S. Mann for his reasonable and actual out-of-pocket expenses incurred in connection with Mr. Mann's bid for the Assets in the maximum amount of $25,000.

13.    The ad valorem tax liens of Harris County for the 2018 tax year are hereby expressly retained against the real and personal property until payment is made to fully satisfy the 2018 ad valorem taxes, and any penalties or interest which may ultimately accrue to those 2018 taxes.

14.     After the Closing, Buyer shall have all of the rights of the Seller to pursue the ad valorem tax valuation for the property for the 2018 tax year.

15.     The Trustee is authorized to spend up to $50,000 to satisfy the condition in Section 1.B. of the Purchase Agreement to remove the Ventech Documents from the Building within 10 days after the Closing Date.

16.     The Trustee is authorized to make a distribution of the net Sale proceeds to Bank of America N.A. to pay down Bank of America's claim against the Debtor in an amount that the Trustee and Bank of America agree to and the Trustee shall disclose the amount distributed to Bank of America in the Sale Notice, which Sale Notice shall constitute an Order of this Court authorizing such distribution of funds to Bank of America.

17.     Nothing in this Order shall be deemed or construed to modify the Debtor's obligations under the Credit Agreement, dated as of May 22, 2014, among Ventech Engineers L.P., as Borrower, and Bank of America, as Lender, or any related documents or agreements.

18.     In the event that the Buyer is entitled to any refund at Closing, American Title Company of Houston is authorized to distribute such amount to the Buyer.

19.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Trustee is a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order, and (c) protect the Buyer against any liens or claims in or against the Debtors or the Assets any kind or nature whatsoever; *provided, however*, that in the

event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

**Signed:  July 10, 2018.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT A**

Purchase Agreement

Execution Version

COMMERCIAL
EARNEST MONEY CONTRACT
(Real Estate Purchase Agreement)

**THIS DOCUMENT IS MORE THAN A RECEIPT FOR MONEY. THIS DOCUMENT IS INTENDED TO BE A LEGALLY BINDING CONTRACT. READ IT CAREFULLY.**

**THIS DOCUMENT IS SUBJECT TO THE TRUSTEE'S ADDENDUM.  TO THE EXTENT THAT ANYTHING IN THE TRUSTEE'S ADDENDUM CONTRADICTS ANYTHING IN THIS DOCUMENT, THE TRUSTEE'S ADDENDUM CONTROLS.**

This Earnest Money Contract ("Agreement") concerns the purchase by Pasadena Mall 3D, LLC, a Texas Limited Liability Company (hereinafter referred to as "Buyer") and sale by Rodney D. Tow, in his capacity as Chapter 7 Trustee for Ventech Engineers, L.P. and its related debtor affiliates including Ventech Engineers International LLC (hereinafter referred to as "Seller") of that certain real property and improvements referred to as 100 Pasadena Boulevard (the "Property") generally located at 100 Pasadena Boulevard in the City of Pasadena, County of Harris, State of Texas, and more particularly described on attached **Addendum A**.

The Property shall also include Seller's interests in:
1) Any and all privileges and appurtenances pertaining to the Property, including any right, title and interest of Seller in or to adjacent streets, alleys or right(s)-of-way;
2) Any and all leases, licenses, occupancy agreements, permits, rents, warranties, guarantees, wastewater capacity and/or security deposits with respect to the Property, or any portion thereof;
3) The personal property described in Section 32.A of this Agreement

**TERMS AND CONDITIONS**

For the mutual covenants contained in this Agreement, Seller agrees to convey the Property to Buyer, and Buyer agrees to purchase the Property from Seller, on the following terms and conditions:

1) PURCHASE PRICE:

    A.  REAL PROPERTY PURCHASE PRICE.  The total purchase price for the Property is ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000) (the "Purchase Price"). The Purchase Price will be paid with ALL CASH.

    B.  PERSONAL PROPERTY PURCHASE PRICE:  Buyer agrees to pay $75,000 for the personal property located at the Property, which shall be a separate line item on the closing statement.  Personal Property shall mean all of the personal property located at the Property, including but, not limited to, all desks, furniture, cabinets and office equipment currently located on the Property but shall not include the voluminous and extensive papers, files and other documents of Ventech located at the Property (the "Ventech Documents"), which shall remain the property of Ventech.  Seller agrees to remove the Ventech Documents from the Property by either the Closing Date or within

Seller's Initials _____   Buyer's _____

Execution Version

10 days after the Closing Date and all such costs related to removal of the Ventech Documents shall be paid for by the Seller.

**2)    EARNEST MONEY DEPOSIT:** Within two (2) business days after the Effective Date of this Agreement (as defined below in paragraph 25 below). Buyer shall deposit with American Title Company of Houston <u>ONE MILLION FIVE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($1,575,000)</u> in the form of a certified check, cashier's check or wire transfer as the earnest money deposit ("<u>Deposit</u>") to be held in trust for the benefit of the parties by American Title Company of Houston, Attention: Ginnie Rogers, 6300 W. Loop South, Suite 405, Bellaire, TX 77401 at 713-995-8200 ("<u>Title Company</u>") in its capacity as escrow agent in one or more fully insured and interest bearing accounts of Federally insured banking or savings institution(s), pursuant to the terms of this Agreement. This sum, any additions thereto, and any interest earned thereon is the Deposit to be applied to the Purchase Price.

**4)    CLOSING DATE:** The closing of the sale will be <u>ONE (1)</u> business day after entry of an order ("<u>Sale Order</u>") by the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") authorizing and/or approving the Sale contemplated by this Agreement or such other date that is mutually agreeable to Buyer and Seller (the actual date of closing, the "<u>Closing Date</u>"). If either party fails to close by the Closing Date, the non-defaulting party may exercise the remedies in Section 10.

    **A.**    At closing, Seller will execute and deliver, at Seller's expense, a special warranty deed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Section 3.B.6 or other provisions of the Agreement. Seller must convey the Property at closing:
    (1)   with no liens, assessments, or Uniform Commercial Code or other security interest against the Property which will not be satisfied out of the Purchase Price, unless the Buyer is assuming existing loans;
    (2)   without any assumed loans in default; and
    (3)   with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers.

    **B.**    At closing, Seller, at Seller's expense, will also deliver:
    **(1)** tax statements showing no delinquent taxes on the Property;
    **(2)** a bill of sale with no warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property above, or sold under this Agreement;
    **(3)** to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
       **(a)** licenses and permits;
       **(b)** maintenance, management, and other agreements; and
       **(c)** warranties and guaranties;

    **(4)**   evidence that the person executing this Agreement is legally capable and authorized to bind Seller; and

Seller's Initials _____   Buyer's _____

Execution Version

(5) any notices, statements, certificates, affidavits, releases, and other documents required by this Agreement, the title commitment, or applicable law that is necessary for the closing of the sale and the issuance of the title policy;

(6) an Owner's Policy of Title Insurance issued by the Title Company in the amount of the Purchase Price dated at or after the Closing Date, insuring Buyer against all loss under the Title Policy, subject only to: (1) those title exceptions set forth on Schedule B in that certain commitment for Title Insurance From Stewart Title identified as File Number 309-4918-02472 (the "Title Commitment"), a copy of which has been delivered to the Buyer, and (2) such additional exceptions as may be approved by Buyer in writing. The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines may be deleted by Buyer at Buyer's sole cost and expense and at Buyer's sole option.

(7) possession of the Property to Buyer upon closing and funding of the sale in its present condition.

Until Closing Date, Seller will maintain the Property in the same manner as on the Effective Date and will not transfer or dispose of any of the personal property described in this Agreement or to be sold under this Agreement before closing that is not authorized by separate agreement.

C.   At closing, Buyer will:

(1) pay the Purchase Price in good funds acceptable to the escrow agent;

(2) deliver evidence that the person executing this Agreement is legally capable and authorized to bind Buyer;

(3) execute and deliver any notices, statements, certificates, or other documents required by this Agreement or law necessary to close the sale.

D.   **PRORATIONS:** Real property taxes, premiums on insurance and any other expenses of the Property shall be prorated as of the Closing Date. Buyer shall be responsible for satisfying delinquent C.A.M. charges at closing.

E.   **SALES EXPENSES:**

(1) Seller's Expenses: Seller will pay for the following at or before closing:

(a) releases of existing liens; provided that filing the Sale Order in the real property records shall satisfy this requirement;

(b) release of Seller's loan liability, if applicable;

(c) preparation of the deed and any bill of sale;

(d) Owner's policy of title insurance and charges related to that owner's policy

(e) one-half of any escrow fee; and

(f) other expenses that Seller will pay under other provisions of this Agreement.

(2) Buyer's Expenses: Buyer will pay for the following at or before closing:

Seller's Initials _____   Buyer's _____

Execution Version

(a)    all loan expenses (for example, application fees, origination fees, discount fees, buy-down fees, commitment fees, appraisal fees, assumption fees, recording fees, tax service fees, mortgage title policy expenses, credit report fees, document preparation fees, interest expense that Buyer's lender requires Buyer to pay at closing, loan related inspection fees, amortization schedule fees, courier fees, underwriting fees, wire transfer fees, and other fees required by Buyer's lender);

(b)    preparation fees of any deed of trust;

(c)    recording fees for the deed and any deed of trust;

(d)    premiums for flood and hazard insurance as may be required by Buyer's lender;

(e)    Lender's title policy;

(f)    one-half of any escrow fee; and

(g)    other expenses that Buyer will pay under other provisions of this Agreement.

4)    TITLE:

TITLE INSURANCE POLICY:  Seller has furnished to Buyer the Title Commitment to be issued at the Closing Date by the Title Company for the Property.

5)    NOTICES:

A.    SPECIAL ASSESSMENT DISTRICTS:  If the Property is determined to be situated within a utility district or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49 of the Texas Water Code requires Seller to deliver to Buyer as part of the title documents the required written notice ("MUD Notice") and Buyer agrees to acknowledge receipt of the MUD Notice in writing prior to the Closing Date.  The MUD Notice shall set forth the current tax rate, the current bonded indebtedness and the authorized indebtedness of the district, and must comply with all other applicable requirements of the Texas Water Code.

B.    TIDALLY INFLUENCED PROPERTY:  If the Property abuts the tidally influenced waters of the state, Section 33.135 of the Texas Natural Resources Code requires a notice regarding coastal area property to be included in this Agreement.  Buyer and Seller hereby agree and acknowledge that Agent shall have no responsibility for determining whether the Property is a tidally influenced property, nor the compliance by any party with the requirements applicable to such property.  If applicable, Buyer, Seller, and their respective legal advisors shall prepare and execute an appropriate Addendum to this Agreement as they deem necessary.

C.    ABSTRACT:  At the time of the execution of this Agreement, Buyer acknowledges that Agent has advised and hereby advises Buyer, by this writing, that Buyer should have the abstract covering the Property examined by an attorney of Buyer's own selection or that Buyer should be furnished with or obtain a policy of title insurance.

Seller's Initials _____  Buyer's _____

Execution Version

**D.     INTRACOASTAL WATERWAY:** If the Property is located seaward of the Gulf Intracoastal Waterway, Section 61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this Agreement.

**E.     MOLD/ALLERGEN ADVISORY:** Buyer is advised of the possible presence within properties of toxic (or otherwise illness-causing) molds, fungi, spores, pollens and/or other botanical substances and/or allergens (e.g. dust, pet dander, insect material, etc.). These substances may be either visible or invisible, may adhere to walls and other accessible and inaccessible surfaces, may be embedded in carpets or other fabrics, may become airborne, and may be mistaken for other household substances and conditions. Exposure carries the potential of possible health consequences. Agent strongly recommends that Buyer contact the Texas Department of Health for further information on this topic. Buyer is advised to consider engaging the services of an environmental or industrial hygienist (or similar, qualified professional) to inspect and test for the presence of harmful mold, fungi, and botanical allergens and substances as part of Buyer's physical condition inspection of the Property, and Buyer is further advised to obtain from such qualified professionals information regarding the level of health-related risk involved and the advisability and feasibility of eradication and abatement. Buyer is expressly cautioned that Agent has no expertise in this area and is, therefore, incapable of conducting any level of inspection of the Property for the possible presence of mold and botanical allergens. Buyer acknowledges that Agent has not made any investigation, determination, warranty or representation with respect to the possible presence of mold or other botanical allergens, and Buyer agrees that the investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefore.

**6)     MATERIAL FACTS:**

To the best of Seller's knowledge and belief: Seller is not aware of any of the following, except as described otherwise in this Agreement:

(1)    any subsurface: structures, pits, waste, springs, or improvements;

(2)    any pending or threatened litigation, condemnation, or assessment affecting the Property;

(3)    any environmental hazards or conditions that affect the Property;

(4)    whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;

(5)    whether radon, asbestos insulation or fireproofing, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;

(6)    whether wetlands, as defined by federal or state law or regulation, are on the Property;

(7)    whether threatened or endangered species or their habitat are on the Property; and

(8)    any material physical defects in the improvements on the Property.

Purchase Agreement, Page 5 of 14     Seller's Initials_____ Buyer's _____

Execution Version

7)   **"AS IS" CONDITION OF PROPERTY:** AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, SELLER AND BUYER AGREE THAT EXCEPT FOR THE EXPRESS REPRESENTATIONS IN THIS AGREEMENT, BUYER IS TAKING THE PROPERTY "AS IS" WITH ANY AND ALL LATENT AND PATENT DEFECTS AND THAT THERE IS NO WARRANTY BY SELLER THAT THE PROPERTY IS FIT FOR A PARTICULAR PURPOSE. BUYER ACKNOWLEDGES THAT IT IS NOT RELYING UPON ANY REPRESENTATION, STATEMENT, ASSERTION OR NONASSERTION BY SELLER OR SELLER'S AGENTS WITH RESPECT TO THE PROPERTY CONDITION, BUT IS RELYING SOLELY UPON ITS OWN EXAMINATION OF THE PROPERTY. BUYER TAKES THE PROPERTY UNDER THE EXPRESS UNDERSTANDING THERE ARE NO EXPRESS OR IMPLIED WARRANTIES (EXCEPT FOR LIMITED WARRANTIES OF TITLE SET FORTH IN THE CLOSING DOCUMENTS). THIS PROVISION WILL SURVIVE THE CLOSING.

Seller's Initials: _____   Buyer's Initials: _____

8)   **RISK OF LOSS:** Risk of loss to the Property shall be borne by Seller until title has been conveyed to Buyer or Buyer's designee. In the event that the improvements on the Property are destroyed or materially damaged between the Effective Date of this Agreement and the Closing Date, Buyer shall have the option of demanding and receiving back the Deposit, with the parties being released from all obligations of this Agreement, or, alternatively, taking such improvements as Seller can deliver. Seller shall pay all deductible amounts that are due under the insurance policy and assign all insurance proceeds to Buyer and credit the amount of the deductible due under the insurance policy or will give Buyer a credit against the Purchase Price at closing.

9)   **CONDEMNATION:** If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:

(A)   terminate this Agreement by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the Deposit, less any independent consideration in the amount of TEN THOUSAND DOLLARS ($10,000), will be refunded to Buyer; or

(B)   appear and defend the condemnation proceedings and any award will belong to Buyer and the Purchase Price will not be reduced.

10)   **DEFAULT:**

(A)   If Buyer fails to comply with this Agreement, Buyer is in default and Seller may:
(1)   terminate this Agreement and receive the Deposit as liquidated damages, thereby releasing the parties from this Agreement; or
(2)   enforce specific performance, or seek other relief as may be provided by law, or both.

Seller's Initials _____   Buyer's _____

Execution Version

(B)   If, Seller fails to comply with this Agreement for any reason, including electing to sell the Property to another buyer, then Seller shall be responsible to Buyer for up to TWENTY FIVE THOUSAND DOLLARS ($25,000) for the Buyer's out-of-pocket expenses incurred in connection with this transaction as Buyer's sole remedy for Buyer's default.

## 11)   ESCROW:

(A)   At closing, the Deposit will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer.

(B)   If both parties make written demand for the Deposit, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

(C)   If one party makes written demand for the Deposit, escrow agent will give notice of the demand by providing to the other party a copy of the demand.  If escrow agent does not receive written objection to the demand from the other party within 30 days after the date escrow agent sent the demand to the other party, escrow agent may disburse the Deposit to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the Deposit and escrow agent may pay the same to the creditors.

(E)   If escrow agent complies with this Section 11, each party hereby releases escrow agent from all claims related to the disbursal of the Deposit.

(F)   Notices under this Section 11 must be sent by certified mail, return receipt requested, or by fax.  Notices to escrow agent are effective upon receipt by escrow agent.

**12)   PROPERTY TAXES:** Seller has retained Marvin F. Poer and Company to challenge the 2018 tax assessment on the Property.   Seller will continue to use the services of Poer to challenge the 2018 tax assessment until the Closing at which time the Seller shall terminate the agreement with Poer and the Seller shall be responsible for all amounts owed to Poer.  Prior to the Closing, the Buyer will cooperate with the Seller in connection with the 2018 tax assessment and Buyer may attend the Property Tax Hearing scheduled for Jun 22, 2018 at 8am and announce that it is the prospective Buyer of the Property.

**13)   AUTHORIZATION:** Buyer and Seller authorize Agent to disseminate sales information regarding this transaction, including the Purchase Price of the Property.

**14)   OTHER BROKERS:** Buyer and Seller agree that, in the event any broker, other than Agent or a broker affiliated with Agent, is involved in the disposition of the Property, Agent shall have no liability to Buyer, Seller or other person or entity, for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Agent.

**15)   AGENT'S DISCLAIMER:** Buyer and Seller acknowledge that Agent has not made any investigation, determination, warranty or representation with respect to, without limitation, any of the following:  (a) the financial condition or business prospects of the Property, or of any

Purchase Agreement, Page 7 of 14          Seller's Initials _____          Buyer's _____

Execution Version

occupant of the Property, or any occupant's intent to continue or renew its occupancy in the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law or ordinance; (c) pending or possible future action by any third party or governmental entity or agency which may affect the Property; (d) the condition of the Property, including but not limited to, its physical condition, soil conditions, the integrity and quality of any improvements, and the presence or absence of fungi or wood destroying organisms or pests; (e) the accuracy or completeness of financial information concerning the Property including, without limitation, any income and expense information, projections of square footage, leases, licenses, options and other agreements affecting the Property; (f) the possibility that leases, options, or other agreements, matters or documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; (g) the presence or location of any hazardous materials on or about the Property, including but not limited to, asbestos, PCB's, lead paint, underground storage tanks or other toxic, hazardous or contaminated substances; (h) the accuracy of any information contained in any estoppel certificate or similar letter from any occupant of the Property; (i) whether the Property is in any special assessment district or is a tidally influenced property; or, (j) the number of legal parcels or units within the Property. When involved, Agent has acted solely as a conduit for the exchange of such information between Buyer and Seller and makes no representation or warranty whatsoever concerning the accuracy or reliability of such information. The Agents do not warrant that Seller will disclose any or all property defects or other matters pertaining to the Property or its condition.

**BUYER AGREES THAT INVESTIGATION AND ANALYSIS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOREGOING MATTERS, ARE BUYER'S SOLE, INDEPENDENT RESPONSIBILITY AND THAT BUYER SHALL NOT HOLD AGENT RESPONSIBLE THEREFORE. BUYER AGREES AND ACKNOWLEDGES THAT BUYER HAS NOT RELIED UPON ANY REPRESENTATION OF AGENT IN CONNECTION WITH BUYER'S PURCHASE OF THE PROPERTY.**

16) AGENT'S LIMITED AUTHORITY AND RESPONSIBILITY: Agent shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property on behalf of either Buyer or Seller, or for providing either party with professional advice with respect to, without limitation, any legal, tax, engineering, construction or hazardous materials issues.

17) LIMITATION OF AGENT'S LIABILITY: EXCEPT FOR AGENT'S SOLE GROSS NEGLIGENCE OR SOLE WILLFUL MISCONDUCT, SELLER AND BUYER AGREE TO HOLD THE AGENTS HARMLESS FROM ANY DAMAGES, CLAIMS, COSTS AND EXPENSES RESULTING FROM OR RELATED TO ANY PARTY FURNISHING TO THE AGENTS OR BUYER ANY FALSE, INCORRECT OR INACCURATE INFORMATION WITH RESPECT TO THE PROPERTY OR SELLER'S CONCEALING ANY MATERIAL INFORMATION WITH RESPECT TO THE CONDITION OF THE PROPERTY. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE AGENTS' LIABILITY FOR ERRORS OR OMISSIONS, NEGLIGENCE, OR OTHERWISE, IS LIMITED TO THE RETURN OF THE FEE, IF ANY, PAID TO THE RESPONSIBLE AGENT PURSUANT TO THIS CONTRACT. IN ADDITION, SELLER

Purchase Agreement, Page 8 of 14          Seller's Initials _____          Buyer's _____

Execution Version

AND BUYER AGREE TO DEFEND AND HOLD THE AGENTS PARTICIPATING IN THIS TRANSACTION HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DEBTS, DAMAGES, COSTS, AND EXPENSES INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS FEES AND COURT COSTS, RELATED TO OR ARISING OUT OF OR IN ANY WAY CONNECTED TO REPRESENTATIONS ABOUT THE PROPERTY OR MATTERS THAT SHOULD BE ANALYZED BY EXPERTS.

18)    All disputes regarding the interpretation or enforcement of this agreement shall be presented and adjudicated before the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

19)    SUCCESSORS & ASSIGNS:  This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

20)    TIME:  Time is of the essence of this Agreement.  The parties require strict compliance with the times for performance.  If the last date to perform under a provision of this Agreement falls on a Saturday, Sunday or legal holiday, the time for performance is extended until 5:00 p.m. the next day which is not a Saturday, Sunday or legal holiday.

21)    FOREIGN INVESTOR DISCLOSURE:  Seller and Buyer agree to execute and deliver any instrument, affidavit or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act (FIRPTA) and regulations promulgated there under.  Buyer and Seller both agree to provide a signed FIRPTA form to Agent on or before the closing date.

22)    ACCEPTANCE AND EFFECTIVE DATE: The "Effective Date" of this Agreement for the purpose of performance of all obligations is the date the escrow agent receives this Agreement after all parties execute this Agreement.

This Agreement may be executed in counterparts, and transmitted by facsimile by and to the parties, and each such counterpart shall be deemed an original, and all of them together shall constitute a single instrument.

23)    GOVERNING LAW:  This Agreement shall be construed under and governed by the laws of the State of Texas (without application of choice of law principles) and, unless otherwise provided herein, all obligations of the parties hereunder are to be performed in the county where the Property is located.

24)    NON-DISCRIMINATION:  Buyer and Seller acknowledge that it is illegal for either Seller, Buyer or Agent to refuse to lease or sell to any person on the basis of, without limitation, race, color, religion, national origin, sex, age, marital status or physical disability.

25)    INTEGRATION AND SURVIVAL:  This Agreement contains the entire understanding and agreement between Buyer and Seller concerning the subject matter herein, and supersedes

Purchase Agreement, Page 9 of 14          Seller's Initials _____     Buyer's _____

Execution Version

any and all prior agreements, understandings, promises and representations, whether written or oral, between the Buyer and Seller, concerning the subject matter hereof. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations with respect to the Property or this Agreement of any nature whatsoever, either express or implied, except as set forth herein. Should any provision of this Agreement or portion thereof be deemed illegal, invalid or otherwise unenforceable, then to the maximum extent permitted by law, the remainder of the Agreement shall remain valid and binding as between the parties.

**26)    NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Agent) at their respective addresses as set forth below, unless otherwise agreed by the parties. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or holiday, the time for performance shall be extended to 5:00 p.m. the next business day. All notices between Buyer and Seller must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent via a nationally recognized overnight carrier, or sent by facsimile transmission to the parties' addresses set out as follows:

| Seller: | Rodney D. Tow, only in his capacity as Chapter 7 Trustee for Ventech Engineers, L.P. and its related debtor affiliates | Buyer: | Pasadena Mall 3D, LLC, a Texas Limited Liability Company |
|---|---|---|---|
| c/o: | Diamond McCarthy LLP Attn: Charles Rubio & Michael Fritz | c/o: | John Quinlan |
| Address: | Two Houston Center 909 Fannin, 37th Floor Houston, TX 77010 | Address: | 22310 Grand Corner Drive, Suite 140, Houston, TX 77494 |
| Telephone No.: | 713-333-5100 | Telephone No.: | 281-250-1560 |
| Fax No.: | 713-333-5199 | Fax No.: | |
| Email: | crubio@diamondmccarthy.com mfritz@diamondmccarthy.com | Email: | quinlanjo@aol.com |

**27)    ATTACHED ADDENDA:**
☑ Information About Brokerage Services
☑ Addendum A - Legal Description

**28)    AGENCY:** The Term "Agent" refers to Marcus & Millichap Real Estate Investment Services and/or Other Broker, if applicable as set forth below. Each Agent only has duties to the party they represent as identified below. If either Agent is acting as an Intermediary, then that Agent will only have the duties of an Intermediary and both Buyer and Seller consent by their signature below that Agent has provided all proper notices and disclosures to this sale:

Purchase Agreement, Page 10 of 14             Seller's Initials _____  Buyer's _____

Execution Version

| Marcus & Millichap Real Estate Investment Services: | | Other Broker: |
|---|---|---|
| c/o: | Keith E. Lloyd | c/o: |
| Address: | Three Riverway, Suite 800 Houston, TX 77056 | Address: |
| Telephone No.: | 713-452-4243 | Telephone No.: |
| Fax No.: | 713-452-4210 | Fax No.: |
| Email: | Keith.lloyd@marcusmillichap.com | Email: |

Buyer and Seller both acknowledge that they have been presented with the Information About Brokerage Services form prior to execution of this contract and have been advised of the below agency status.

Marcus & Millichap Real Estate Investment Services represents Seller only.

Seller will pay Agent the Commission specified by separate written Representation Agreement. Payment of the Commission will not alter the fiduciary relationships between the parties and the Agents.

**29)   CONSENT REQUIRED:**   Buyer, Seller, and Title Company agree that the Agents are third party beneficiaries of this Agreement with respect to the Commission established in the separate Representation Agreement, and that no changes may be made by Buyer, Seller, or Title Company as to the time of payment, amount of payment or the conditions for payment of the Commission without the written consent of the Agents.

**30)   RIGHT TO CLAIM A LIEN:** Pursuant to Chapter 62 of the Texas Property Code, the Agents hereby disclose their right to claim a lien based on the separate Representation Agreement and any other commission agreements referenced in this Agreement or applicable to the transaction contemplated by this Agreement. This disclosure is hereby incorporated in any such commission agreements.

**31)   AGREEMENT AS OFFER.** The execution of this Agreement by the first party constitutes an offer to purchase or sell the Property, subject to the terms and conditions set forth herein. Unless, within one (1) days after the date of execution of this Agreement by the first party, this Agreement is accepted by the other party by signing the offer and delivering a fully executed copy to the first party or Title Company, the offer of this Agreement will be deemed automatically withdrawn, and the Deposit, if any, will be promptly returned to Buyer.

**32)   OTHER TERMS AND CONDITIONS:**
A. Pursuant to this Agreement, Buyer is buying all personal property currently located on or in the Property; provided, however, that such personal property shall not include the books, records,

Purchase Agreement, Page 11 of 14          Seller's Initials _____   Buyer's _____

Execution Version

or business records of the Debtor nor the property of any third-parties (including but not limited to any postage machines or Comcast devices).
B. See attached Trustee's Addendum to the Sale of Real Property.

BUYER AND SELLER HEREBY ACKNOWLEDGE THAT AGENT HAS ADVISED THE PARTIES TO CONSULT WITH THEIR RESPECTIVE LEGAL COUNSEL CONCERNING THE LEGAL EFFECT AND VALIDITY OF THIS AGREEMENT PRIOR TO ITS EXECUTION.

PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM PARTIES' ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL.

Seller's Initials _____ Buyer's _____

Execution Version

**Executed below and to be effective as of the Effective Date.**

**BUYER:**

PASADENA MALL 3D, LLC, a Texas Limited Liability Company

Dublin, Inc., a Texas corporation
Member

By: _____

Name: _____

Title: _PRESIDENT_____

Telephone: _281-250-1560_____

Facsimile: _____

Date: _June 8 2018_____

**SELLER:**

By: _____

RODNEY TOW, in his capacity as
Chapter 7 Trustee for Ventech Engineers, L.P.
and its related debtor affiliates

Telephone: _281 429 8300_____

Facsimile: _rtow @ rtowtrustee, com_

Date: _6/8/18_____

Purchase Agreement, Page 13 of 14          Seller's Initials_____ Buyer's _____

Execution Version

**TITLE COMPANY RECEIPT:**  The title company acknowledges receipt of this contract on _____6/8/18_____(the Effective Date) and, upon receipt of the Deposit, accepts the Deposit subject to the terms and conditions in this Agreement.

**TITLE COMPANY:**

AMERICAN TITLE COMPANY OF HOUSTON

By: _____

Name: _Ginnie rogers_____

Title: _Escrow Officer_____

Telephone: _713 995 8200_____

Facsimile: _713 995 8894_____

Date: _6|8|8_____

Purchase Agreement, Page 14  of 14          Seller's Initials _____  Buyer's _____

Addendum A
Legal Description

Being an 8.320-acre (362,437 Square Foot) tract of land situated in the William Vince Survey, A-78, Harris County, Texas. Said 8.320-acre tract being all of a called 9.8925- acre tract of land (Save & Except 1.5750 Acres), conveyed to Ventech Engineers International, LLC, by deed recorded under Harris County Clerk's File No. 20130215729, Film Code No. ER 044-30- 0342 of the Official Public Records of Real Property, Harris County, Texas, and being more particularly described by metes and bounds as follows, with the basis of bearings being the Texas State Plane Coordinate System, South Central Zone No. 4204 (NAD 83), coordinates shown hereon are grid coordinates and may be  converted to surface by applying the combined scale factor of 1.000113904. All distances are surface distances;

BEGINNING (N=13,820,657.52; E=3,174,382.89) at a 5/8-inch iron rod with cap stamped "WEISSER ENG HOUSTON, TX" set in the east right-of-way line of Pasadena Boulevard (Right-of-Way Varies), for the southwest corner of a called 1.0743-acre tract of land conveyed to Portal LLC, by deed recorded under Harris County Clerk's File No. V05 1839, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, for the most westerly northwest corner of said 9.8928-acre tract and for the most westerly northwest corner of said tract herein described;

THENCE North 87 deg. 27 min. 24 sec. East, with the south line of said 1.0743-acre tract, with a north line of said 9.8928-acre tract and with a north line of said tract herein described, a distance of 175.00 feet to a 5/8-inch iron rod found for the southeast corner of said 1.0743-acre tract and for an interior angle point of said tract herein described;

THENCE North 02 deg. 28 min. 41 sec. West, with the east line of said 1.0743-acre tract, with a west line of said 9.8928-acre tract and with a west line of said tract herein described, a distance of 145.04 feet to a 5/8-inch iron rod (CM) found for the southwest corner of a called 2.2833-acre tract of land conveyed to Sears, Roebuck and Co., by deed recorded under Harris County Clerk's File No. S146981, Film Code No. 510-27- 3253 of the Official Public Records of Real Property, Harris County, Texas, for the most  northerly northwest corner of said 9.8928-acre tract and for the most northerly northwest  corner of said tract herein described;

THENCE North 87 deg. 29 min. 58 sec. East, with the south line of said 2.2833-acre tract, with a north line of said 9.8928-acre tract and with a north line of said tract herein described, a distance of 322.71 feet (called 322.50 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for a northwest corner of a called 26.89-acre tract  of land conveyed to 2015 Shopping Mall Business, LLC, by deed recorded under Harris County Clerk's File No. 20150349777, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, for the most northerly northeast corner of said 9.8928-acre tract and for the most northerly northeast corner of said tract herein  described;

THENCE South 02 deg. 25 min. 28 sec. East, with the west line of said 26.89-acre tract, with the east line of said 9.8928-acre tract and with an east line of said tract herein described, a

distance of 98.46 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 69.58 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.77 feet (called 60.65 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for the most easterly corner of said 9.8928-acre tract and for the most easterly corner of said tract herein described;

THENCE South 42 deg. 25 min. 54 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein described, a distance of 116.33 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 47 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 39.79 feet to a cut "X" (CM) found for an angle point of said tract herein described;

THENCE South 42 deg. 31 min. 35 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein



described, a distance of 64.74 feet (called 64.50 feet) to a cut "X" (CM) found for an angle point of said tract herein described;

THENCE North 47 deg. 28 min. 25 sec. West, with a northeast line of said 26.89-acre tract, with a southwest line of said 9.8928-acre tract and with a southwest line of said tract herein described, a distance of 44.88 feet (called 45.00 feet) to a cut "Arrow" set for an interior angle point of said tract herein described;

THENCE South 42 deg. 28 min. 10 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein described, a distance of 299.33 feet (called 299.55 feet) to a cut "X" (CM) found for the northeast corner of a called 1.5750-acre tract of land conveyed to The Variable Annuity Life Insurance Company, by deed recorded under Harris County Clerk's File No. S146979, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, and for the southeast corner of said tract herein described;

THENCE South 87 deg. 35 min. 52 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance of 72.05 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an angle point of said tract herein described;

THENCE North 02 deg. 32 min. 19 sec. West, over and across said 9.8928-acre tract, with the east line of said 1.5750-acre tract and with a west line of said tract herein described, a distance of 36.24 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE North 47 deg. 04 min. 07 sec. West, over and across said 9.8928-acre tract, with the northeast line of said 1.5750-acre tract and with a southwest line of said tract herein described, a distance of 22.33 feet (called 22.45 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE South 87 deg. 26 min. 05 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance of 269.05 feet to a mag nail with shiner stamped "Terra Surveying" found for the most northerly northwest corner of said 1.5750-acre tract and for an interior angle point of said tract herein described;

THENCE South 02 deg. 31 min. 46 sec. East, over and across said 9.8928-acre tract, with a west line of said 1.5750-acre tract and with an east line of said tract herein described, a distance of 69.08 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 87 deg. 28 min. 14 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance of 47.24 feet to a cut "X" set in the east right-of-way line of said Pasadena



Boulevard, for the most westerly northwest corner of said 1.5750-acre tract and for the southwest corner of said tract herein described;

THENCE North 02 deg. 35 min. 06 sec. West, with the east right-of-way line of said Pasadena Boulevard, with a west line of said 9.8928-acre tract and with a west line of said tract herein described, a distance of 552.05 feet to the POINT OF BEGINNING and containing 8.320 acres (362,437 Square Feet) of land.

Tract II:

Easement and other rights appurtenant to Tract I, as created in Operating Agreement filed for record under Harris County Clerk's File No. G951778; and being assigned to Dillard Texas Operating Limited Partnership now Dillard Texas, LLC by assignment filed for record under Harris County Clerk's File No. R771411 and change of name by Certificate of Merger; and being amended by agreement filed for record under Harris County Clerk's File No. S146982. Assignment and Assumption of Operating Agreements to Dillard Texas East, LLC as set forth by instrument dated December 31, 2010, recorded under Harris County Clerk's File No. 20130215727. Assignment and Assumption of Operating Agreements to Ventech Engineers International, LLC, a Texas limited liability company, as set forth by instrument dated May 1, 2013, recorded May 6, 2013, under Harris County Clerk's File No. 20130215730.





11-2-2015

## Information About Brokerage Services
*Texas law requires all real estate license holders to give the following information about Brokerage services to prospective buyers, tenants, seller and landlords.*

### TYPES OF REAL ESTATE LICENSE HOLDERS:
- **A BROKER** is responsible for all brokerage activities including acts performed by sales agents sponsored by the broker.
- **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

### A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):
- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.

### A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH – INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of *each party* to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with provide opinions and advice to, and carry out the instructions of each party to the transaction;

- •    Must not, unless specifically authorized in writing to do so by the party, disclose:
- o    That the owner will accept a price less than the written asking price;
- o    That the buyer/tenant will pay a price greater than the price submitted in a written offer; and
- o    Any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interest of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARY ESTABLISH:**
- •    The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- •    Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| | | |
|---|---|---|
| Marcus & Millichap     9002994 | | |
| tim.speck@marcusmillichap.com    972-755-5200 | | |
| Licensed Broker/Broker Firm Name or Phone | License No. | Email Address |
| Primary Assumed Business Name | | |

| | | |
|---|---|---|
| Tim A. Speck     432723 | | |
| tim.speck@marcusmillichap.com    972-755-5200 | | |
| Designated Broker or Firm Phone | License No. | Email Address |

| | | |
|---|---|---|
| David Luther     0599555 | | |
| david.luther@marcusmillichap.com    713-452-4200 | | |
| Licensed Supervisor of Sales Agent/ Phone | License No. | Email Address |
| Associate | | |

| | | |
|---|---|---|
| Keith E. Lloyd     037120 | | |
| keith.lloyd@marcusmillichap.com    713-452-4200 | | |
| Sales Agent/Associate's Name Phone | License No. | Email Address |

June 3, 2018

Buyer/Tenant/Seller/Landlord Initials _____ Date

Regulated by the Texas Real Estate Commission Information available at
www.trec.texas.gov

**Trustee's Addendum to Sale of Real Property**

Property: 100 Pasadena Boulevard, Pasadena, TX 77506

**THE PROVISIONS OF THIS ADDENDUM CONTROL OVER ALL TERMS OF THE EARNEST MONEY CONTRACT EVEN IF THE EARNEST MONEY CONTRACT SPECIFICALLY CONTRADICTS A PROVISION IN THIS ADDENDUM.**

1.      This property is being sold by a bankruptcy estate and Rodney Tow is the Trustee of that estate.  He has no personal knowledge of the property or its condition and is selling the property in as is condition with all faults, if any.  Neither Rodney Tow nor this bankruptcy estate makes any representations regarding the condition of the property.

2.      All sales from a Bankruptcy Estate must be approved by Court order, and despite any provision to the contrary, the Trustee and the Estate are not bound by the terms of the earnest money contract without express Bankruptcy Court approval.

3.      All disputes relating to this sale or the Earnest Money Contract must be determined by the Bankruptcy Court.  Without a Bankruptcy Court order, the Trustee may not attend a mediation or any form of alternative resolution for the purpose of resolving a dispute.  Once a dispute is resolved, the Trustee may be required to obtain a Bankruptcy Court order approving the resolution.

4.      The Trustee will provide a special warranty Trustee's deed and sell the property pursuant to a Bankruptcy Court order.

5.      The sale will be free and clear of all liens, claims and encumbrances.

6.      Although rare, in any sale in bankruptcy a party may make a competing offer in which instance a bidding process may be required.

7.      The Trustee may be authorized by the Bankruptcy Court order:

a.          To retain all proceeds from the sale pending distribution as authorized by the Bankruptcy Court;
b.          To pay the first mortgage or other mortgages while retaining funds which would otherwise go to taxing entities pending distribution as authorized by the Bankruptcy Court; or
c.          To pay all liens and encumbrances at closing.

8.      It typically takes thirty days from the date of the signing of the earnest money contract for the Trustee to obtain an order authorizing the sale.  In some instances, it may take longer.

9.      Any change that requires a Bankruptcy Court order may require an additional thirty days to obtain the needed order.  In exceptional circumstances it is possible the Trustee may be able to

Trustee's Addendum to Real Estate Sale                              Page 1 of 2

get an order sooner but these circumstances are rare and are left strictly to the Bankruptcy Court's decision.

10.     Any changes to the terms of the earnest money contract may require additional Bankruptcy Court approval. For example, occasionally there will be unexpected costs at closing not anticipated by the buyer or seller. If the estate is asked to pay some of the costs, an additional Bankruptcy Court order is necessary.

11.     Occasionally the title report will contain unknown or unexpected liens against the property. In the event that occurs, the Trustee will have to re-evaluate the sale. If there is no net profit to the estate after payment of liens, the Trustee may have to withdraw from the sale and allow the property to be foreclosed by lienholders. The Trustee has never had to withdraw from a sale for this reason but has had instances where unexpected liens or claims against the property have occurred.

12.     Texas law requires disclosures to be made by a seller which the Trustee cannot make. The Trustee will not sign disclosure affidavits regarding the condition of the property.

13.     Taxes are prorated at closing. In almost every instance, the Title Company requests a buyer and seller to agree that if the prorations are wrong that the buyer and seller will make adjustments as necessary to prorate the taxes. The Trustee will NOT agree to a proration adjustment because this is a bankruptcy estate and it is likely that all or some of the funds received from the sale will be distributed prior to the determination of the proration discrepancy. The Trustee never agrees to adjust prorations.

BUYER:

_____
PASADENA MALL 3D, LLC

SELLER:

_____
Rodney Tow, Trustee

Trustee's Addendum to Real Estate Sale                    Page 1 of 2

**Rogers, Ginnie (ATCO FA)**

| | |
|---|---|
| **From:** | Attendant@atctx.com |
| **Sent:** | Friday, June 08, 2018 4:53 PM |
| **To:** | Rogers, Ginnie (ATCO FA) |
| **Subject:** | File: 3094918-02472 - ICW $1,575,000.00 |

ICW $1,575,000.00

*Funds received 6/8/18*

**EXHIBIT B**

Form of Special Warranty Deed

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<u>**SPECIAL WARRANTY DEED**</u>

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

RODNEY D. TOW, solely in his capacity as chapter 7 trustee for the estate of Ventech Engineers International LLC ("**Grantor**"), a debtor in the bankruptcy cases jointly administered as *In re Ventech Engineers, L.P. et al*., pending before the United States Bankruptcy Court for the Southern District of Texas, Case No. 17-33203 (the "**Bankruptcy Case**"), for and in consideration of the sum of $10 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, BARGAINED, SOLD, and CONVEYED and by these presents does GRANT, BARGAIN, SELL, AND CONVEY unto [●] ("**Grantee**"), that certain property in Harris County, Texas, fully described in <u>Exhibit A</u> hereto, together with all improvements, if any, thereon and all rights appurtenances appertaining thereto (collectively, the "**Property**") pursuant to that certain *Order Approving Sale of Certain of the Debtors' Assets and Authorizing Payment of Certain Expenses Related To the Sale* [ECF No. ●] (the "**Bankruptcy Order**") entered in the cases styled as *In re Ventech Engineers, L.P. et al.* as Case No. 17-33203 in the U.S. Bankruptcy Court for the Southern District of Texas.

This Special Warranty Deed and the conveyance hereinabove set forth is made and accepted subject to all items on <u>Exhibit B</u> attached hereto, to the extent same are valid and affect the Property (the "**Permitted Encumbrances**").

TO HAVE AND TO HOLD the Property, subject to the Permitted Exceptions as aforesaid, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to WARRANT and FOREVER DEFEND, all and singular, the Property, subject to the Permitted Exceptions unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

Except as specifically stated herein, Grantor hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as, to, or concerning (i) the nature and condition of the Property, including but not by way of limitation, the water, soil, geology and the suitability thereof, and of the Property, for any and all activities and uses which Grantee may elect to conduct thereon or any improvements Grantee may elect to construct thereon, income to be derived therefrom or expenses to be incurred with respect thereto, or any obligations or any other matter or thing relating to or affecting the same; (ii) the manner of construction and condition and state of repair or lack of repair of any improvements located thereon; (iii) except for any warranties contained herein, the nature and extent of any easement,

right-of-way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise; and (iv) the compliance of the Property or the operation of the Property with any laws, rules, ordinances, or regulations of any government or other body.   THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" BASIS, AND GRANTEE ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY.

Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all outstanding ad valorem taxes pertaining to the Property.

[*signature page follows*]

EXECUTED as of _____ __, 2018.

RODNEY D. TOW, SOLELY IN HIS CAPACITY
AS CHAPTER 7 TRUSTEE FOR THE ESTATE
OF VENTECH ENGINEERS INTERNATIONAL
LLC

By: _____

Name: Rodney D. Tow

Title:   Chapter 7 Trustee


STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §


This instrument was acknowledged before me on this ___ day of _____, 2018, by Rodney D. Tow, solely in his capacity as chapter 7 trustee for the estate of Ventech Engineers International LLC.

_____
Notary Public, State of Texas

**Exhibit A**
**Property Description**

Tract I:

Being an 8.320-acre (362,437 Square Foot) tract of land situated in the William Vince Survey, A-78, Harris County, Texas. Said 8.320-acre tract being all of a called 9.8925-acre tract of land (Save & Except 1.5750 Acres), conveyed to Ventech Engineers International, LLC, by deed recorded under Harris County Clerk's File No. 20130215729, Film Code No. ER 044-30- 0342 of the Official Public Records of Real Property, Harris County, Texas, and being more particularly described by metes and bounds as follows, with the basis of bearings being the Texas State Plane Coordinate System, South Central Zone No. 4204 (NAD 83), coordinates shown hereon are grid coordinates and may be converted to surface by applying the combined scale factor of 1.000113904. All distances are surface distances;

BEGINNING (N=13,820,657.52; E=3,174,382.89) at a 5/8-inch iron rod with cap stamped "WEISSER ENG HOUSTON, TX" set in the east right-of-way line of Pasadena Boulevard (Right-of-Way Varies), for the southwest corner of a called 1.0743-acre tract of land conveyed to Portal LLC, by deed recorded under Harris County Clerk's File No. V05 1839, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, for the most westerly northwest corner of said 9.8928-acre tract and for the most westerly northwest corner of said tract herein described;

THENCE North 87 deg. 27 min. 24 sec. East, with the south line of said 1.0743-acre tract, with a north line of said 9.8928-acre tract and with a north line of said tract herein described, a distance of 175.00 feet to a 5/8-inch iron rod found for the southeast corner of said 1.0743-acre tract and for an interior angle point of said tract herein described;

THENCE North 02 deg. 28 min. 41 sec. West, with the east line of said 1.0743-acre tract, with a west line of said 9.8928-acre tract and with a west line of said tract herein described, a distance of 145.04 feet to a 5/8-inch iron rod (CM) found for the southwest corner of a called 2.2833-acre tract of land conveyed to Sears, Roebuck and Co., by deed recorded under Harris County Clerk's File No. S146981, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, for the most northerly northwest corner of said 9.8928-acre tract and for the most northerly northwest corner of said tract herein described;

THENCE North 87 deg. 29 min. 58 sec. East, with the south line of said 2.2833-acre tract, with a north line of said 9.8928-acre tract and with a north line of said tract herein described, a distance of 322.71 feet (called 322.50 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for a northwest corner of a called 26.89-acre tract of land conveyed to 2015 Shopping Mall Business, LLC, by deed recorded under Harris County Clerk's File No. 20150349777, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, for the most northerly northeast corner of said 9.8928-acre tract and for the most northerly northeast corner of said tract herein described;

THENCE South 02 deg. 25 min. 28 sec. East, with the west line of said 26.89-acre tract, with the east line of said 9.8928-acre tract and with an east line of said tract herein described, a distance of 98.46 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 69.58 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 67 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.65 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 27 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 60.77 feet (called 60.65 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for the most easterly corner of said 9.8928-acre tract and for the most easterly corner of said tract herein described;

THENCE South 42 deg. 25 min. 54 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein described, a distance of 116.33 feet to a mag nail with shiner stamped "Terra Surveying" found for an interior angle point of said tract herein described;

THENCE South 47 deg. 34 min. 06 sec. East, with a southwest line of said 26.89-acre tract, with a northeast line of said 9.8928-acre tract and with a northeast line of said tract herein described, a distance of 39.79 feet to a cut "X" (CM) found for an angle point of said tract herein described;

THENCE South 42 deg. 31 min. 35 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein described, a distance of 64.74 feet (called 64.50 feet) to a cut "X" (CM) found for an angle point of said tract herein described;

THENCE North 47 deg. 28 min. 25 sec. West, with a northeast line of said 26.89-acre tract, with a southwest line of said 9.8928-acre tract and with a southwest line of said tract herein described, a distance of 44.88 feet (called 45.00 feet) to a cut "Arrow" set for an interior angle point of said tract herein described;

THENCE South 42 deg. 28 min. 10 sec. West, with a northwest line of said 26.89-acre tract, with a southeast line of said 9.8928-acre tract and with a southeast line of said tract herein described, a distance of 299.33 feet (called 299.55 feet) to a cut "X" (CM) found for the northeast corner of a called 1.5750-acre tract of land conveyed to The Variable Annuity Life Insurance Company, by deed recorded under Harris County Clerk's File No. S146979, Film Code No. 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 of the Official Public Records of Real Property, Harris County, Texas, and for the southeast corner of said tract herein described;

THENCE South 87 deg. 35 min. 52 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance of 72.05 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an angle point of said tract herein described;

THENCE North 02 deg. 32 min. 19 sec. West, over and across said 9.8928-acre tract, with the east line of said 1.5750-acre tract and with a west line of said tract herein described, a distance of 36.24 feet to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE North 47 deg. 04 min. 07 sec. West, over and across said 9.8928-acre tract, with the northeast line of said 1.5750-acre tract and with a southwest line of said tract herein described, a distance of 22.33 feet (called 22.45 feet) to a mag nail with shiner stamped "Terra Surveying" (CM) found for an interior angle point of said tract herein described;

THENCE South 87 deg. 26 min. 05 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance of 269.05 feet to a mag nail with shiner stamped "Terra Surveying" found for the most northerly northwest corner of said 1.5750-acre tract and for an interior angle point of said tract herein described;

THENCE South 02 deg. 31 min. 46 sec. East, over and across said 9.8928-acre tract, with a west line of said 1.5750-acre tract and with an east line of said tract herein described, a distance of 69.08 feet to a mag nail with shiner stamped "Terra Surveying" found for an angle point of said tract herein described;

THENCE South 87 deg. 28 min. 14 sec. West, over and across said 9.8928-acre tract, with a north line of said 1.5750-acre tract and with a south line of said tract herein described, a distance

of 47.24 feet to a cut "X" set in the east right-of-way line of said Pasadena Boulevard, for the most westerly northwest corner of said 1.5750-acre tract and for the southwest corner of said tract herein described;

THENCE North 02 deg. 35 min. 06 sec. West, with the east right-of-way line of said Pasadena Boulevard, with a west line of said 9.8928-acre tract and with a west line of said tract herein described, a distance of 552.05 feet to the POINT OF BEGINNING and containing 8.320 acres (362,437 Square Feet) of land.

Tract II:

Easement and other rights appurtenant to Tract I, as created in Operating Agreement filed for record under Harris County Clerk's File No. G951778; and being assigned to Dillard Texas Operating Limited Partnership now Dillard Texas, LLC by assignment filed for record under Harris County Clerk's File No. R771411 and change of name by Certificate of Merger; and being amended by agreement filed for record under Harris County Clerk's File No. S146982. Assignment and Assumption of Operating Agreements to Dillard Texas East, LLC as set forth by instrument dated December 31, 2010, recorded under Harris County Clerk's File No. 20130215727. Assignment and Assumption of Operating Agreements to Ventech Engineers International, LLC, a Texas limited liability company, as set forth by instrument dated May 1, 2013, recorded May 6, 2013, under Harris County Clerk's File No. 20130215730.

**Exhibit B**
**Permitted Exceptions**

1.      Easements for ground, aerial and pad mounted transformer station, as granted to Houston Lighting & Power Company by documents filed for record under Harris County Clerk's File No. H068516, H208527, H697043 and S715745.

2.      A utility easement 7.5 feet wide along the most northerly easement line; a 7.5 foot utility easement along the most southerly north line and a 5 foot utility easement running east and west for approximately 170 feet beginning 130 feet from the south line of East Harris Avenue and the most northern property line, together with an unobstructed aerial easement 5 feet wide from a plane 20 feet above the ground upward adjacent to said easement as retained by Houston Lighting and Power Company, Houston Natural Gas Corporation, and Southwestern Bell Telephone Company and Pennzoil United, Inc., in instruments recorded in Volume 8409, Page 159, Volume 8409, Page 164, Volume 8409, Page 168 and Volume 8409, Page 172, respectively, all of the Deed Records of Harris County, Texas. Ordinances modifying easements in Clerk's File Nos. G331020 and G331021.

3.      Terms, conditions, stipulations and easements contained in Operating Agreement filed for record under Harris County Clerk's File No. G951778; and being assigned to Dillard Texas Operating Limited Partnership now Dillard Texas, LLC by assignment filed for record under Harris County Clerk's File No. R771411 and change of name by Certificate of Merger; and being amended by agreement filed for record under Harris County Clerk's File No. S146982. Assignment and Assumption of Operating Agreements to Dillard Texas East, LLC as set forth by instrument dated December 31, 2010, recorded under Harris County Clerk's File No. 20130215727. Assignment and Assumption of Operating Agreements to Ventech Engineers International, LLC, a Texas limited liability company, as set forth by instrument dated May 1, 2013, recorded May 6, 2013, under Harris County Clerk's File No. 20130215730.

4.      The restrictions and regulations imposed by Ordinance of the City of Houston, a certified copy of which is recorded in Volume 7940, Page 233 of the Deed Records of Harris County, Texas.